**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 22-1801 _____     _____ Caption [use short title] _____

**Motion for:** Emergency Injunction Pending Appeal

_____

EXPEDITED BRIEFING REQUESTED

Set forth below precise, complete statement of relief sought:

Appellants request an injunction enjoining enforcement of the

City's COVID-19 vaccine requirements against employees who assert

a religious objection, pending interlocutory appeal.

Appellants respectfully request expedited briefing.

New Yorkers For Religious Liberty, Inc. et al.

v.

The City of New York et al.

**MOVING PARTY:** New Yorkers For Religious Liberty, Inc., et al.          **OPPOSING PARTY:** The City of New York et al.

☑ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner          ☐ Appellee/Respondent

**MOVING ATTORNEY:** Barry Black          **OPPOSING ATTORNEY:** Susan Paulson

[name of attorney, with firm, address, phone number and e-mail]

Nelson Madden Black LLP          Corporation Counsel for the City of New York

475 Park Avenue S., Suite 2800, New York, NY 10016          100 Church Street, New York, NY 10007

212-382-4300, bblack@nelsonmaddenblack.com          212-356-0821, spaulson@law.nyc.gov

Court- Judge/ Agency appealed from: USDC EDNY - Hon. Diane Gujarati

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):

☑ Yes          ☐ No (explain):_____

_____

Opposing counsel's position on motion:

☐ Unopposed     ☐ Opposed ☑ Don't Know

Does opposing counsel intend to file a response:

☐ Yes     ☐ No     ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?          ☑ Yes ☐ No

Has this relief been previously sought in this court?          ☐ Yes ☑ No

Requested return date and explanation of emergency: 8/25/2022

Appellants seek emergency injunctive relief on or before 8/25/2022. Many

must decide before 9/5/2022 whether to violate their religious beliefs, uproot their families or face the

loss of homes, careers, and their lives. Three already had to violate their

sacred religious beliefs to survive. More face unbearable pressure to do the same.

Is oral argument on motion requested?          ☑ Yes ☐ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?          ☐ Yes ☑ No  If yes, enter date:_____

**Signature of Moving Attorney:**

/s/ Barry Black _____ **Date:** 8/18/2022 _____     Service by: ☑ CM/ECF     ☐

# 22-1801

# United States Court of Appeals

*for the*

# Second Circuit

NEW YORKERS FOR RELIGIOUS LIBERTY, INC., GENNARO AGOVINO, CURTIS
CUTLER, LIZ DELGADO, JANINE DEMARTINI, BRENDAN FOGARTY, SABINA
KOLENOVIC, KRISTA O'DEA, DEAN PAOLILLO, DENNIS PILLET, MATTHEW RIVERA,
LAURA SATIRA, FRANK SCHIIMENTI, and JAMES SCHMITT,

*Plaintiffs-Appellants,*

– v. –

THE CITY OF NEW YORK, ERIC ADAMS, in his official capacity as
Mayor of the City of New York, and DAVE CHOKSHI, in his official
capacity as Health Commissioner of the City of New York,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
HONORABLE DIANE GUJARATI

## PLAINTIFFS-APPELLANTS' EMERGENCY MOTION
## FOR INJUNCTION PENDING APPEAL AND EXPEDITED
## BRIEFING - RELIEF REQUESTED BY 5:00 P.M.
## THURSDAY, AUGUST 25, 2022

Barry Black
Nelson Madden Black LLP
475 Park Avenue S.
Suite 2800
New York, NY 10016
(212) 382-4310

Sujata S. Gibson
Gibson Law Firm PLLC
832 Hanshaw Rd.
Suite A
Ithaca, NY 14850
(607) 327-4125

John J. Bursch
Alliance Defending Freedom
440 First Street NW
Suite 600
Washington, DC 20001
(616) 450-4235

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF THE CASE ............................................................................... 3

PROCEDURAL HISTORY .................................................................................... 8

JURISDICTION ..................................................................................................... 9

ARGUMENT ......................................................................................................... 9

    I.      LEGAL STANDARD .............................................................................. 9

    II.    APPELLANTS ARE LIKELY TO SUCCEED ON THE MERITS ....... 10

        A. Appellants' Free Exercise Claims Are Subject to Strict Scrutiny
           Because They Are Not Generally Applicable .................................. 10

             1. The Mandates are not generally applicable because they
                include a mechanism for individualized exemptions ............. 11

             2. The Mandates are not neutral because they prefer secular
                conduct over religious conduct ............................................. 15

        B. Establishment Clause Violations Separately Trigger Strict Scrutiny  18

    III.   APPELLANTS ARE SUFFERING IRREPARABLE HARM, AND
         THE BALANCE OF INTERESTS WEIGHS IN FAVOR OF
         GRANTING AN INJUNCTION ............................................................ 21

CONCLUSION ..................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Agudath Isr. v. Cuomo*,
   983 F.3d 620 (2d Cir. 2020) ............................................................ 10

*Brown v. Bd. of Educ.*,
   347 U.S. 483 (1954) ...................................................................... 19

*Elrod v. Burns*,
   427 U.S. 347 (1976) ........................................................................ 2

*Emp. Div. v. Smith*,
   494 U.S. 872 (1990) .................................................... 10, 12, 19, 21

*Fulton v. City of Phila.*,
   141 S. Ct. 1868 (2021) ................................................ 11, 15, 16, 17

*Jolly v. Coughlin*,
   76 F.3d 468 (2d Cir. 1996) ............................................................ 21

*Kane v. De Blasio*,
   19 F.4th 152 (2d Cir. 2021) ................................................. 5, 13, 19

*Larson v. Valente*,
   456 U.S. 228 (1982) ...................................................................... 18

*N.Y. Progress & Prot. PAC v. Walsh* ,
   733 F.3d 483 (2d Cir. 2013) ....................................................... 9, 10

*Tandon v. Newsom*,
   141 S. Ct. 1294 (2021) .................................................................. 17

*We the Patriots USA, Inc. v. Hochul*,
   17 F.4th 266 (2d Cir. 2021) ...................................................... 10, 14

## Statutes

28 U.S.C. § 1292 ................................................................................ 9

## PRELIMINARY STATEMENT

On August 11, 2022, the CDC—recognizing that the worst of the Covid-19 pandemic is over—revised its Covid-19 prevention guidance to stop differentiating between the vaccinated and the unvaccinated.[1] Though it is no longer reasonable to argue that vaccination stops infection or transmission, New York City continues to impose its Covid-19 vaccine mandates (individually "Mandate," collectively "Mandates")—even against those who assert sincere religious objections. And on the same day the CDC issued its revised guidance, the district court denied Appellants injunctive relief against the Mandates. As a result, many Appellants must violate their religious beliefs on or before September 5, 2022, if they want to return to work this fall. Appellants seek expedited briefing and an emergency order enjoining the City's enforcement of the Mandates as applied to them pending appeal.

Appellants are likely to succeed. The district court abused its discretion by failing to apply strict scrutiny. The Mandates burden the free exercise of religion and are neither neutral nor generally applicable. They allow individualized exemptions, and even now, the City is allowing thousands of unvaccinated employees to continue to work in person for secular reasons while failing to accommodate similarly situated

---

[1] Massetti GM, Jackson BR, Brooks JT, et al. Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems — United States, August 2022. MMWR Morb Mortal Wkly Rep. ePub: 11 August 2022. DOI: http://dx.doi.org/10.15585/mmwr.mm7133e1

religious objectors unless they violate their faith. The City is free to exempt well-paid professional athletes, exercise enormous discretion to arbitrarily deny most applicants for religious accommodation, and openly prefer the religious beliefs of Christian Scientists over those of other religious denominations. But doing so subjects the City's Mandates to strict scrutiny.

The City's establishment clause violations also trigger strict scrutiny. In implementing these Mandates, the City adopted a facially discriminatory religious accommodation policy ("Stricken Standards") that expresses denominational preferences, among other problems. Worse, when this Court held that the Stricken Standards, the City did not disavow them, but began using them Citywide in most municipal departments. With some notable carve-outs for political favorites, the Mandates now cover nearly all sectors of public or private employment, making it impossible for Appellants to work in any field without violating their faith. Meanwhile, the City tightens the screws by periodically offering coercive conditional reinstatement for any religious objectors who "change their mind." Even temporary imposition of such unconstitutional conditions constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Here, the injury is abundant and the coercion ongoing: Appellants are losing their homes, health insurance, source of income, and dignity, and the clock is running out. With the start of a new school year, those who work in education or have

children must swiftly decide whether to uproot their families and become religious refugees in cities and states that will not discriminate against them. In the last month, several named Appellants had to violate their faith in order to put food on the table. Several more had to leave the state or the country to live with relatives because they lost their homes. All face irreparable harm from the daily unconstitutional coercion. All of this counsels strongly in favor of the modest emergency relief sought pending appeal.

## STATEMENT OF THE CASE

Appellants are firefighters, police officers, EMTs, teachers, sanitation workers, and other hard working New Yorkers in the public and private sector who cannot take a vaccine due to their sincerely held religious beliefs, and New Yorkers for Religious Liberty, Inc. ("NYFRL"), a New York State Not-for-Profit membership organization that includes Appellants and many others impacted by or concerned about the impact of the Mandates (named Appellants and members of NYFRL are referred to collectively as "Appellants").

Though Covid-19 vaccines cannot meaningfully prevent the spread of Covid-19 [*see e.g.*, ECF Nos. 40-1 to 40-17; ECF No. 81-28], the City continues to arbitrarily crusade against the unvaccinated.[2] Through a series of over 150

---

[2] Appellees offered no evidence to support an argument to the contrary on this point, and the point should be deemed conceded.

"emergency" Executive Orders, the City forced Mandates on nearly every employee in the City while adopting discriminatory religious exemption policies that resulted in the denial of most applicants. From the start, when asked how the City would handle accommodations, former Mayor de Blasio promised that the City would preference Christian Scientists and discriminate against employees who, in the City's view, held unorthodox religious views. The Mayor told the press he was persuaded by Pope Francis that "scriptures" do not conflict with vaccination and most religious objectors were wrong [ECF No. 40-22].

The City officially adopted a written policy ("Stricken Standards") that codifies these discriminatory ideas about what constitutes a "valid" religious objection to vaccines. [ECF No. 8-B]. On their face, the Stricken Standards define so-called "established" state-recognized religions and preference Christian Scientists, stating: "[e]xemption requests shall be considered for recognized and established organizations (e.g., Christian Scientists)." They also use the power of the government to resolve religious controversies, stating, "requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine . . .." *Id. . .*

Originally, the Stricken Standards were only applied to Department of Education ("DOE") employees. Last November, a merits panel of this Court vacated the district court's denial of injunctive relief to two separate sets of DOE plaintiffs,

holding that the Stricken Standards are unconstitutional and discriminatory. *Kane v. De Blasio*, 19 F.4th 152, 167 (2d Cir. 2021).

While the *Kane* appeal was pending, the City issued additional Mandates covering all municipal employees and all private employees. *See, e.g.,* [ECF Nos. 8-4, 8-5, 8-6]. Stunningly, the City did not disavow the Stricken Standards but instead *expanded their use*, now offering the discriminatory option to most municipal employees [ECF No. 44 at 19].

In response to litigation, the City also created a second religious exemption review option ("Citywide Panel") where Panel members get to decide which religious beliefs qualify for an exemption. The result? Two "separate but equal" religious exemption review options, one for the heretics and one for those whose religious views lined up with state-approved religions and dogma. In reality, the two tracks are not even equal. For one, those who qualify under the Stricken Standards cannot be subjected to undue hardship denials, whereas most applicants to the Citywide Panel are denied on that unsubstantiated basis.

For example, Appellant Kolenovic was originally denied accommodation under the Stricken Standards because the DOE alleged that a random Muslim "leader" (who Appellant Kolenovic does not follow) publicly announced he was vaccinated against Covid-19, which they asserted invalidated the claims of all other Muslims... [ECF No. 77]. Though the Citywide Panel found her beliefs sincere after

"fresh consideration," she was again denied accommodation on the basis of alleged "undue hardship." If Ms. Kolenovic had been a Christian Scientist or one of the City's other preferred religions, she would still have a job, just like the 162 lucky few that were accommodated under the Stricken Standards who are still working today. [ECF No. 81-31].

On May 24, 2022, Appellants deposed Eric Eichenholtz, architect of the Citywide Panel and Chief Assistant Corporation Counsel for Employment Policy and Litigation within the Office of the New York City Corporation Counsel. [ECF No. 81-29]. Mr. Eichenholtz confirmed that in contrast to the 162 accommodated under the Stricken Standards, he knows of only one teacher accommodated under the Citywide Panel process [ECF No. 81-29]. Most of the rest, like Appellant Kolenovic, were denied based on purported undue hardship.

Mr. Eichenholtz admitted that the Citywide Panel's undue hardship determinations are not supported by any objective evidence or any individualized assessment of direct threat. [ECF No. 81-29 at 271:22-272:2, 236:9-15, 257:18-21, 259:4-9, 259:21-260:3, 261:3-7, 262:6-22, 267:18-268:20, 273:3-7, 284:6-285:1, 284:15-20, 287:17-288:2, 298:20-299:18, 301:13-302:19, 308:18-315:4]. While the Stricken Standards are discriminatory on their face, Appellants met their burden of showing that both religious exemption tracks are infected with discrimination, riddled with discretion, and arbitrarily enforced. Expedited discovery showed that

6

Panelists were instructed to deny personally held beliefs and those rooted in an objection to abortion.

Rather than elucidate reasons for denials, both tracks simply result in decisions that say only "denied," or "does not meet criteria" with no explanation. [ECF No. 81-30]. Spreadsheet notes obtained in discovery show that Panelists routinely substituted their own judgment for the applicants' about what God or their religion required of them. [ECF No. 64-3; ECF No. 77 ¶¶ 329-30, 339, 342, 370-74, 451-52, 456-59, 472, 499-506, 519]. Similarly, Appellants' whose religious beliefs are grounded in prayer instead of church orthodoxy were most often denied on the ground that the applicant's religious beliefs, while sincere, allow for personal choice and thus are, in the Panelists view, not "religious" in nature. [ECF No. 64-3; ECF No. 77 at ¶ 388-95, 499, 503]. Enormous discretion was exercised in these arbitrary reviews.

The Mayor and other City actors also exercised enormous discretion in making carve outs or pausing enforcement against whole swaths of unvaccinated employees for secular reasons. Most egregiously, on March 24th, 2022, Mayor Adams issued Emergency Executive Order 62 ("EEO 62"), carving out athletes, entertainers, and their entourages for special exemption from the City's vaccine mandates, not because they posed any less risk but because the mayor felt that the City's economic health would benefit. [ECF No. 60-2 to 60-6] [ECF Nos. 81-3, 81-

16, 81-22, 81-23, 81-24]. Jay Varma, former health advisor to Mayor de Blasio, warned that the carve out "opened the city up to legal action on the grounds that the remaining mandate is 'arbitrary and capricious.'" *Id.*

Mayor Adams also admitted to the New York Times that he is not bothering to enforce most of the private sector mandates. Similarly, the New York Post reported that the City exercised discretion to quietly "pause" its review of appeals for 4,650 unvaccinated NYPD employees denied accommodation, allowing them to continue to work in person and receive pay and benefits indefinitely. [ECF No. 81-21]. But others, like Appellant Paolillo, are denied religious accommodation at the NYPD, due to "undue hardship" and other unconstitutional reasons. The City provided no explanation for why the 4,650 similarly situated NYPD employees can safely work in person but Appellant Paolillo cannot.

## PROCEDURAL HISTORY

Appellants filed for preliminary injunctive relief and a temporary restraining order on February 10, 2022. The district court denied the TRO on February 11, 2022, reserved decision on the preliminary injunction, and ordered supplemental briefing deadlines and limited expedited discovery. After expedited discovery concluded, the district court asked Appellants to file revised consolidated briefing incorporating new facts from discovery and the Amended Complaint, if applicable. The district court did not originally ask for a new motion, just consolidated briefing. [Text Order

dated June 16, 2022, and ECF No. 110, 6:24 – 7:14 and 11:5-14]. After filing the revised briefing as ordered on June 22, 2022, the district court requested an updated order to show cause [Text Order dated June 24, 2022] and a new memorandum of law referencing the new order to show cause [Text Order dated June 27, 2022]. Appellants promptly complied. [ECF Nos. 85-88].

On August 11, 2022, the court heard oral argument and denied preliminary injunctive relief through a decision read into the record. [ECF No. 107]. Appellants filed their notice of appeal on August 17, 2022 [ECF No. 109] and moved for injunctive relief pending appeal in the district court the same day [ECF No. 111].

## JURISDICTION

The Court has jurisdiction because this appeal involves the denial of a preliminary injunction. 28 U.S.C. § 1292(a)(1).

## ARGUMENT

### I. LEGAL STANDARD

The grant or denial of a preliminary injunction is reviewed for abuse of discretion. "Such an abuse occurs when the district court bases its ruling on an incorrect legal standard or on a clearly erroneous assessment of the facts." *N.Y. Progress & Prot. PAC v. Walsh, 7*33 F.3d 483, 486 (2d Cir. 2013).

When a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must

demonstrate "(1) a likelihood of success on the merits, (2) irreparable harm absent injunctive relief, and (3) public interest weighing in favor of granting the injunction." *Agudath Isr. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020). Where First Amendment rights are at issue (as here), the test reduces essentially to a single prong: "the likelihood of success on the merits is the dominant, if not decisive, factor." *N.Y. Progress & Prot. PAC, 7*33 F.3d at 488.

## II.   APPELLANTS ARE LIKELY TO SUCCEED ON THE MERITS

Appellants met their burden of showing likelihood of success because they established that the Mandates and implementing policies are subject to strict scrutiny. "If they succeed at that step, the burden shifts to the [government] to show that it is likely to succeed in defending the challenged Rule under strict scrutiny." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021). Appellees presented no evidence to show why their exclusionary policies are supported by even a rational basis, let alone a narrowly tailored compelling interest.

### A.   Appellants' Free Exercise Claims Are Subject to Strict Scrutiny Because They Are Not Generally Applicable

In *Emp. Div. v. Smith*, 494 U.S. 872 (1990), the Supreme Court limited the reach of the Free Exercise Clause by declaring that neutral, generally applicable laws do not burden religious exercise. But here, the City's Mandates are neither generally applicable nor neutral.

As this Court affirmed in *Kane*, "[a] law may not be generally applicable under *Smith* for either of two reasons: first, 'if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions'; or, second, 'if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.' *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021)." *02*. The district court erred by misreading this clear standard as requiring that *both* prongs be satisfied to defeat general applicability. Though Appellants met their burden under either, they need satisfy only one.

1.  **The Mandates are not generally applicable because they include a mechanism for individualized exemptions.**

The Mandates are not generally applicable because they are riddled with mechanisms for individualized exemptions. "A law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'" *Id.* (quoting *Emp. Div. v. Smith*, 494 U.S. 872, 884 (1990)).

First, the Mandates specifically allow for individualized religious-accommodation determinations. The district court abused its discretion by holding that this does not trigger strict scrutiny unless there is a showing that secular conduct was favored over religious. Such a standard, particularly in a religious discrimination case like this, leads to outrageous results. If that were true, governments could

persecute religious minorities and favor preferred religions or dogmas, as they have done here, and nothing could be done so long as secular causes weren't also preferenced.

The district court's holding conflicts with *Smith* itself, in which the Supreme Court specifically held that a law can only be generally applicable if it *does not* include any mechanism for religious exemption. *Emp. Div., Dep't of Human Res. v. Smith*, 485 U.S. 660, 672 (1988) ("Smith I"); *Smith*, 494 U.S. at 874 ("*Smith II*"). In the *Smith* decisions, the Supreme Court twice examined plaintiffs' claim that they were improperly denied unemployment compensation after being discharged as drug counselors for using peyote ceremonially. In deciding whether the *Sherbert* strict scrutiny test applied, the Court held in *Smith I* that it depended on whether Oregon state criminal drug laws afforded any mechanism for religious exemption for ceremonial use of peyote: "A substantial number of jurisdictions have exempted the use of peyote in religious ceremonies from legislative prohibitions against the use and possession of controlled substances. If Oregon is one of those States, respondents' conduct may well be entitled to constitutional protection." *Smith I*, 485 U.S. at 672. Only after determining on remand that no mechanism for religious exemption was allowed under Oregon law, did the Supreme Court go on to hold in *Smith II* that the drug law was thus "generally applicable" and able to be exempted from strict scrutiny analysis. *Smith,* 494 U.S. 872.

Here, there can be no debating that a mechanism for individualized exemption is present. The Mandates each acknowledge that "nothing in this order shall be construed to prohibit reasonable accommodation otherwise required by law" [*See, e.g.,* ECF 99-2 at ¶ 8]. Federal, state, and local statutes require religious accommodation, and the City did in fact engage in individualized—and highly discretionary—reviews to determine which religious objectors to accept or deny. Pursuant to *Smith* and its progeny, this means strict scrutiny applies to any free exercise challenge.

This Court's precedent is in accord. In *Kane,* this Court applied strict scrutiny to the Stricken Standards and vacated the district court's denial of injunctive relief, stating: "Plaintiffs have offered evidence that the arbitrators reviewing their requests for religious accommodations had substantial discretion over whether to grant those requests . . .. Plaintiffs have thus shown that they are likely to succeed on their claim that the Arbitration Award procedures as applied to them were not generally applicable." *Kane*, 19 F.4th 167, 167 (2021). So too here.

In deviating from this standard, the district court cited an inapposite section of the decision in *Kane* addressing the second prong of *Fulton,* not the first. Specifically, the quoted dicta were from a section in which this Court addressed arguments that the exceptions in the DOE Mandate for voters and other "objectively defined" categories of persons defeated general applicability. In rejecting this second

argument under the limited facts and arguments then before the Court, this Court held that because the secular carve outs were for groups that did not pose the same level or risk - i.e., who likely had very limited classroom exposure to students, Appellants had not yet met their burden of showing that any similarly situated secular conduct was treated more favorably than religious.

Similarly, the district court's reliance on *We the Patriots* is misplaced. There, the plaintiffs argued that the state's maintenance of a medical exemption but not a religious exemption to rules excluding unvaccinated healthcare workers from public facing work preferenced secular conduct over religious. This Court rejected the argument on the narrow ground that the medical exemption afforded "no meaningful discretion to the State or employers" because checking for a doctor's note was essentially a ministerial act. The discretion, if any, said this Court, was on the part of the "physicians and nurse practitioners," and not the government. *We the Patriots USA, Inc.*, 17 F.4th at 288-89.

In contrast, here Mr. Eichenholtz repeatedly testified that the panelists were not given *any* objective criteria to determine exemptions, and that the process is nothing but discretionary, stating: "these determinations truly are individualized," [ECF No. 81-29 at 326:8-15], and "[y]ou have to review the specifics of every individualized case." [Id. at 147:21-22]; see also [ECF No. 81-29 at 271:16-20; 101:4, 147:22, 148:20, 263:19, and 308:15].

The Mandates provide a second mechanism for individualized exemption through the Mayor's ability to issue exemptions and carve outs at his sole discretion. This was the fact pattern in *Fulton*, 141 S. Ct. at 1879. In *Fulton*, the Supreme Court held that because the Commissioner had the power to issue exemptions to the City of Philadelphia's non-discrimination regulations governing foster care placements, the regulations were not generally applicable. In that case, the Commissioner had never exercised the power, and no exemptions were ever made. Thus, there was no showing that secular reasons were ever favored over religious. Nonetheless, the fact that the Commissioner had the *power* to do so was enough to trigger strict scrutiny. *Id*. Here, the record not only confirms that the Mayor has the ability to issue discretionary exemptions, but that he and other City actors have used that power liberally as discussed below.

### 2. The Mandates are not neutral because they prefer secular conduct over religious conduct.

"A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* at 1877. Though Appellants do not need to meet this second option for defeating general applicability, they easily can.

In *Lukumi*, the City adopted four ordinances that functioned together to prohibit animal sacrifice, a central practice of the Santeria faith. The City claimed that the ordinances were necessary to protect public health, which was "threatened

15

by the disposal of animal carcasses in open public places." *Id.* at 544. But the regulations neglected to regulate hunters' disposal of kills or restaurant disposal, both of which presented a certain hazard. *Id.* at 544-45. The Court concluded that this and other evidence of "underinclusiveness" meant the regulations collectively were not generally applicable. *Id.* at 545-46.

Here, despite the professed goals to "potentially save lives, protect public health, and promote public safety," the Mayor carved out arbitrary exceptions that have nothing to do with health. Most egregiously, EEO 62 exempts the Mayor's favorite sports teams, millionaire athletes, and artists while refusing exemptions to similarly situated sincere religious objectors. In making these politically driven carve-outs, Mayor Adams *admitted* that there is no medical justification for the carve-outs. Instead, he decided that the economic interests of these industries are more important than the risk to the public from unvaccinated athletes, entertainers (including strippers) and their entourages. The outcry over these politically motivated exemptions has been substantial. [ECF No. 81-16]. Harry Nespoli, chair of the Municipal Labor Committee representing 102 unions and over 400,000 employees told the New York Times, "[t]here can't be one system for the elite and another for the essential workers of our city." [ECF No. 81-22]. Jay Varma, former health advisor to Mayor de Blasio, warned that the carve out "opened the city up to legal action on the grounds that the remaining mandate is 'arbitrary and capricious.'"

*Id.*

The New York Times pointed out that Adams was heavily lobbied and encouraged by big donors to issue the exemption. *Id*. But Mayor Adams claims "We're doing it because the city has to function. We're leading the entire country for the most part in unemployment." [ECF No. 81-24]. The political reasons do not matter. "Comparability is concerned with the risks various activities pose, not the reasons why people gather." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). The City has not even attempted to explain how strippers and make-up artists pose less risk to the public than sanitation workers or private office workers. Because the mayor has the power to exempt groups or individuals at no lesser risk of spreading disease than Movants, the Mandates are subject to strict scrutiny.

Another carve out is that many departments intentionally slowed down the selection process, so thousands of unvaccinated employees continue to work in person for months on end, while other religious objectors are told they cannot be accommodated due to undue hardship and other unconstitutional reasons. For example, NYPD adopted a policy to put 4,650 vaccination terminations on "hold" indefinitely. [ECF No. 81-21]. But others, like Appellant Paolillo, were terminated, many based on the assertion that it would be an "undue hardship" to accommodate them. No explanation has been offered for why Appellant Paolillo cannot be safely accommodated while thousands of his similarly situated co-workers can safely work

unvaccinated for the foreseeable future. [ECF No. 77 ¶ 460-62, 623, 653]; [ECF No. 81-29 at 259:4-9, 259:21-260:3, 261:3-7, 284:15-20, 287:17-288:2, 271:22-272:2]. It does not matter whether the thousands of pending employees "will be terminated" at some point. They are being accommodated now and have been for months, due to secular reasons like administrative backlog and staffing shortages, while religious objectors who pose no greater threat are not. If it were true that the NYPD cannot accommodate unvaccinated employees without imperiling public health, it should not matter why the unvaccinated employees are still coming to work.

## B.    Establishment Clause Violations Separately Trigger Strict Scrutiny

The district court also abused its discretion by ignoring Establishment Clause violations. The City's decision to continue to offer the Stricken Standards—which facially prefer Christian Scientists and require discrimination against applicants whose religious beliefs are not supported by the dogma of popular church leaders— triggers strict scrutiny independently from the free exercise analysis. Adopting such "denominational preferences" constitutes a square violation of the Establishment Clause under the *Larson* test. "In short, when we are presented with a state law granting a denominational preference, our precedents demand that we treat the law as suspect and that we apply strict scrutiny in adjudging its constitutionality." *Larson v. Valente*, 456 U.S. 228, 246 (1982).

The City's Establishment Clause problem is compounded by Mayor de

Blasio's comments to the press, in which he reiterated denominational preferences and an intention to discriminate against minority religious adherents whose views conflict with the Pope and other favored leaders. What's worse, after this Court held that the Stricken Standards are unconstitutional, *Kane*, 19 F.4th at 167, the City refused to denounce them, and instead adopted them as official policy Citywide.

The Fourteenth Amendment prohibits government from making *or enforcing* laws which infringe on constitutional rights. By adopting and enforcing the facially discriminatory Stricken Standards, the City "establishes" preferred religious dogma, "imposes special disability" on religious minorities who do not fall into that definition, "takes a position and lends its power to one side in controversies over religious authority or dogma," and "punishes the expression of religious doctrines it believes false," each of which squarely violates the Constitution and triggers strict scrutiny even if the Mandates were neutral and generally applicable. *Smith*, 494 U.S. 872 at 877.

Nor can the alternative option of the Citywide Panel solve the constitutional problems. The Constitution does not allow the government to provide "separate but equal" religious accommodation policies: one for Christian Scientists and another for religious objectors with beliefs that are not shared by "established and recognized" church leaders. *Brown v. Bd. of Educ.*, 347 U.S. 483 (1954), supplemented sub nom. *Brown v. Bd. of Educ.*, 349 U.S. 294 (1955). And here, the

options are not even equal. For those lucky few that qualify under the Stricken Standards, continued employment is guaranteed. But those reviewed under the Citywide Panel process will likely be denied accommodation even if they are found sincere based on unsupported assertion of "undue hardship."

Moreover, the evidence shows the Citywide Panel process is similarly infected with religious animus and denominational preferences. For example, emails produced in expedited discovery reveal that the Citywide Panel was specifically advised to deny applications that are personally held or that are based on an objection to the use of aborted fetal cells [ECF No. 81-30, DEF000001-2]. And the sworn declarations reveal that the City is routinely and improperly substituting their judgment for what an applicant's religion requires of them, in violation of well-settled precedent and denying applications based on factual disputes. [ECF No. 64-3; ECF No. 77 ¶¶ 329-30, 339, 342, 370-74, 451-52, 456-59, 472, 499-506, 519].

Mr. Eichenholtz admitted the City is crossing the line from a sincerity inquiry into a verity inquiry: "[i]t's not a religious belief. They cannot -- an employee cannot claim a vaccine contains something they don't claim. If the clergy says it, if -- regardless. If someone says the sky is green, that is -- you know, and we know the sky is blue, then the sky is blue." [ECF No. 81-29 at 195:6-12]. But under statutory and constitutional standards, it doesn't matter whether the religious objector is right. It is well-settled law that the government cannot "punish the expression of religious

doctrines it believes to be false." *Smith*, 494 U.S. 872 at 877. This Court has specifically held that factual disputes about the truth of a religious belief are not proper grounds for denying an exemption. *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996).

### III. APPELLANTS ARE SUFFERING IRREPARABLE HARM, AND THE BALANCE OF INTERESTS WEIGHS IN FAVOR OF GRANTING AN INJUNCTION.

The district court concluded that Appellants are unlikely to succeed on the merits, and Appellants' loss of income can be remedied with money damages. But as just explained, Appellants are likely to succeed on the merits. And their loss is irreparable.

When Appellants first filed for emergency relief on February 10, 2022, the City complained that their claims were "not yet ripe" since most religious-exemption applications were still pending. When Appellants renewed their long-pending motion in June, many Appellants were still only threatened with termination. Now, most have been terminated.

Because the Mandates cover nearly every job in the public or private sector in New York City, Appellants are precluded from working *anywhere* in the City unless they violate their sincerely held religious beliefs. The City plays on their desperation, continuing to announce new coercive schemes. In June, Mayor Adams announced that workers terminated for failing to get vaccinated can have their jobs back if they

were willing to get vaccinated in violation of their faith on or before June 30, 2022. [ECF No. 77 at ¶¶ 257-58, 262, 396-97, 455, 462, 511]. DOE employees must be vaccinated on or before September 5, 2022, if they want to return to work this fall. Three named Appellants have already had to violate their faith to try to avoid starvation and ruin.

Every day that passes increases the pressure on the rest of Appellants to capitulate, causing untenable stress and irreparable harm. With the start of a new school year fast approaching, Appellants with children must decide within a matter of days whether to move to feed their families. The constant coercion and daily adverse impacts are irreparable. And given the CDC's recent pronouncements, the balance of the harms and equities weighs definitively in favor of an injunction.

## CONCLUSION

Appellants respectfully request an emergency order enjoining the City's enforcement of the Mandates as applied to them pending appeal.

Dated: New York, New York
      August 18, 2022

**GIBSON LAW FIRM, PLLC**

/s/ Sujata S. Gibson

By: Sujata S. Gibson
832 Hanshaw Rd., Suite A
Ithaca, NY 14850
(607) 327-4125

**NELSON MADDEN BLACK LLP**

/s/ Barry Black

By: Barry Black
475 Park Avenue South, Suite 2800
New York, NY 10016
(212) 382-4300

**ALLIANCE DEFENDING FREEDOM**

*/s/ John J. Bursch*

By: John J. Bursch
440 First Street NW
Suite 600
Washington, DC 20001
(616) 450-4235

*Attorneys for Appellants*

To: All counsel via ECF