| | |
|---|---|
| GIBSON LAW FIRM, PLLC | NELSON MADDEN BLACK LLP |
| Sujata S. Gibson, Esq. | Barry Black, Esq. |
| 832 Hanshaw Rd., Suite A | 475 Park Ave. S., Suite 2800 |
| Ithaca, NY 14850 | New York, NY 10016 |
| (607) 327-4125 | (212) 382-4300 |

ALLIANCE DEFENDING FREEDOM
John J. Bursch, Esq.
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235

August 24, 2022

Clerk of the Court
U.S. Court of Appeals for the Second Circuit
40 Foley Square
New York, New York 10007

    *Re: New Yorkers for Religious Liberty, Inc. v. City of New York, No. 22-1801*

To the Hon. Clerk of the Court:

    As explained in the Plaintiffs-Appellants' application, Appellants are City employees and former employees who need to work to survive and support their families. But New York City's vaccine mandates—which collectively impose an employee vaccination requirement on virtually every municipal and private employee in the City—make it impossible for them to do so without violating their religious beliefs.

    When Appellants first moved for preliminary injunctive relief in February 2022, most were still employed. Now, after being improperly denied accommodation through discriminatory and arbitrary accommodation policies, six have been terminated or forced to resign. The Mandates not only prevent Appellants from returning to their prior positions, they also prevent Appellants' employment at *any* public or private employer—save strip clubs and a few other arbitrary carve outs. In its opposition, the City asks this Court to deny emergency relief based on the terminations and resignations, 8/23/2022 Opp. Ltr. 3-4, without even acknowledging that the City's policies cruelly prevent these Appellants from obtaining gainful employment *anywhere* in the City and thus cause continuing and irreparable harm.

1

In *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976), the Supreme Court held that conditioning employment on waiver of First Amendment rights, even for a short time, is *per se* irreparable harm and warrants a preliminary injunction. When the *Elrod* plaintiffs filed for preliminary injunctive relief, all but one had been terminated. By the time they got to the Supreme Court, none were employed, and there was no basis for any to regain their old jobs by meeting the coercive condition. *Id.* At 350-51. Nonetheless, the Supreme Court affirmed the court of appeals' grant of relief. Here, the case is much stronger. Unlike the sheriff in *Elrod*, the City did not impose a one-time condition, but continues to offer new chances for terminated workers to violate their faith and get their old jobs back. Such offers were extended in February, April, and June.

But these repeated new "deadlines" are not the only ongoing coercion. New York City faces unprecedented staffing crises in every department, and the staffing shortages in the private sector are well-documented. Appellants pointed out below, and the City did not contest, that they would have no trouble obtaining employment in the City if they were to violate their faith and get vaccinated, and that each day they are faced with the same unconstitutional choice – whether to hold out one more day or capitulate their beliefs to feed their hungry children and avoid losing their homes.

Contrary to the City's protestations, 8/23/2022 Opp. Ltr. 3-4, even the three Appellants who could not withstand the pressure and had to violate their faith during the pendency of these motions are not home free. The City acknowledges that "fully vaccinated" requires frequent boosters, as any arguable immunity wanes in a matter of weeks. It is only a matter of time before the next booster is required to keep employment. Thus, no claim is moot, as this unconstitutional condition is capable of repetition, yet easily can evade review w.

In opposition, the City does not respond to the merits. Nor can it. It is well settled that where an individualized exemption process is available under a law or policy, that law or policy is not generally applicable. *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1877 (2021); *Emp. Div. v. Smith*, 494 U.S. 872, 884 (1990)). And as the Application establishes, the City's policy includes not only individualized exemptions but numerous discretionary exceptions. If you are a professional athlete or artist, can claim the right medical exemption, or profess to practice an acceptable religion, you are entitled to an exemption. If you do not fall into one of these classes, the City denies an exemption, even though the exemptions impact the City's professed interests in the same way as extending an exemption to Appellants. As the Supreme Court has explained, the City's "creation of a system of exceptions  . . .

undermines the City's contention that its [mandatory vaccination] policies can brook no departures." *Fulton*, 141 S. Ct. at 1882.

The Appellants have all provided sufficient evidence that their religious beliefs are being burdened. ECF. No. 77 ¶¶ 326-522; ECF Nos. 47-59. They have also met their burden of showing that the Mandates, as applied to them, are subject to strict scrutiny because they were applied through discretionary exemption policies. Under binding precedent, that means Appellants are likely to succeed, since the City offered no evidence or argument to meet their high burden. *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021).

Indeed, not only did Appellants show they are likely to succeed, but they presented uncontested facts below that likely require summary judgment.

First, the City does not deny that it continues to offer the unconstitutional "arbitrators' policy" ("Stricken Standards") as an option in nearly every City department. This Court already held last November that the Stricken Standards are facially unconstitutional and preferences orthodox religions over minority views. The fact that the City *still* offers this discriminatory policy violates the Establishment Clause. And the fact that the Stricken Standards also provide preferential treatment to those who qualify under the discriminatory policy shocks the conscience. The City cannot justify why 162 applicants accepted under the discriminatory Stricken Standards are allowed to work in schools without any consideration of undue hardship, while Appellant Kolenovic and all but one other teacher whose religious beliefs are deemed sincere by the Citywide Panel are denied accommodation due to unsubstantiated "undue hardship."

Second, the City's decision to provide a separate and unequal religious accommodation policy for preferred faiths constitutes "direct evidence" of discrimination. And since the City offers no affirmative defense, Appellants are entitled to summary judgment in their favor. *TWA v. Thurston*, 469 U.S. 111, 121 (1985).

Appellants have also gone far beyond meeting their burden of showing that the Citywide Panel process itself is arbitrary and does not comply with statutory standards, let alone constitutional ones. For example, Mr. Eichenholtz, the founder, designer and leader of the Citywide Panel, admitted under oath that the Panel is making undue hardship determinations that (1) are unsubstantiated by any objective scientific or financial evidence, and (2) do not even consider whether Appellants constitute a direct threat and require segregation based on their religious need to opt out of a vaccine. This is a *Fulton* problem. *See* 141 S. Ct. At 1881-82 (criticizing

Philadelphia for failing to show that granting CSS an exception would put the City's goals at risk). And it is decidedly *not* the process "specifically endorsed and embraced by this Court" in *Kane*. Contra 8/23/2022 Opp. Ltr. 5.

Mr. Eichenholtz further admitted the Citywide Panel denies applicants whose views the City disagrees with—particularly those with objections to products using aborted fetal cell lines in testing or development. Whether Mr. Eichenholtz and his Panel members believe the connection is strong enough to merit concern, or whether they disagree with Appellants' facts, should be irrelevant to the determinations of the Panel. Factual disputes about the ingredients of a required pharmaceutical product are not proper grounds for denial. *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996).

Most important, Mr. Eichenholtz admitted that *there are no real governing standards* employed by Panel members; the process is completely discretionary and individualized. [ECF No. 81-29 at 326:8-15, 147:21-22; ECF No. 81-29 at 271:16-20; 101:4, 147:22, 148:20, 263:19, and 308:15]. As the Supreme Court has held, "a formal system of entirely discretionary exceptions . . . renders" the City's vaccination requirement "not generally applicable." *Fulton*, 141 S. Ct. at 1878.

Appellants have also been arbitrarily denied pursuant to this deeply flawed discretionary process. For example, Appellant Agovino, a 26-year employee of the Department of Corrections, was denied on the basis of "undue hardship," even though pursuant to the municipal mandate, "uniformed" unvaccinated DOC officers were able to continue working in person due to the secular concern of "staffing shortages," [ECF No. 99-2], inmates and visitors could remain unvaccinated, and Appellant Agovino had no contact with detainees and little contact with anyone. [ECF No. 77 ¶¶ 326-342].

Appellant Fogerty, who worked for the FDNY for almost 20 years and was a captain, was denied religious accommodation based on the "potential for undue hardship." Mr. Eichenholtz admitted that the FDNY had submitted nothing to support this determination. While the underlying motion was pending, Captain Fogerty was forced to retire. The FDNY, like all municipal departments, currently faces a staffing crisis. If Appellant Fogerty were to get vaccinated, he could easily return to his job. Without vaccination, he cannot work anywhere in NYC unless this Court intervenes.

Appellants O'Dea, and Pillet, also FDNY employees, worked until February and May 2022, respectively, all while engaging in period testing, daily temperature checks, and daily masking. During this time, O'Dea helped save the life of a patient in cardiac arrest. Nevertheless, their religious exemption requests were denied and

their employment deemed to constitute the "potential for undue hardship." O'Dea now works at the same job in New Jersey, where her employer does not consider her an undue hardship, and Pillet was vaccinated in violation of his sincerely held religious beliefs.

Appellant Cutler worked for the DSNY since 2014. Mr. Eichenholtz denied his religious exemption on the basis that he has received vaccines in the past. Appellant Cutler is a born-again Christian, a deacon at his church, and provided ample evidence of his deep religious commitments to his church and religious objections to vaccination. His application explained that since the date when he was born again, he has received no vaccine. Mr. Eichenholtz's decision to deny him based on vaccination acceptance before he was "born again" violates Title VII and the First Amendment. *See, e.g.*, *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018) ("the government . . . cannot act in a manner that passes judgment or presupposes the illegitimacy of religious beliefs and practices" because the "Free Exercise Clause bars even 'subtle departures from neutrality' on matters of religion").

DOE Appellant Kolenovic was denied accommodation under the Stricken Standards because her beliefs conflicted with religious leaders. [ECF No. 77]. Though the Citywide Panel found Kolenovic's statement of her beliefs to be sincere, she was denied again in that process due to alleged "undue hardship" even though the DOE acknowledged that they continued to accommodate her colleagues under the Stricken Standards. [ECF No. 81-31]. The DOE's "undue hardship" defense was further belied by its job postings of remote position throughout the pandemic, the fact that its remote worksite for employees with accommodations currently holds only 30 employees when it has capacity for more than 312, and Eichenholtz's testimony that the "undue hardship" standard under city and state human rights laws was not considered in the Citywide Panel's determinations, contrary to this Court's instruction.

Appellant Schimenti, a 25-year employee of the DOB, submitted an eight-page statement describing his spiritual mentors, reliance on prayer, and more than 25 different Scriptures. It explained that his previous use of over-the-counter medications was due to his ignorance about their connection to abortion and now that he has learned of it, he is seeking alternatives because of his religious beliefs regarding the sanctity of life. Nevertheless, the Citywide Panel denied him because they decided that his religious beliefs should be defined as "personal preferences" without authority. This violates the command that religious beliefs some reasonable observers would view as unreasonable are nonetheless entitled to protection if sincerely held. Indeed, the Supreme Court has "[r]epeatedly and in many different

5

contexts . . . warned that courts must not presume to determine . . . the plausibility of a religious claim." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014) (quotation omitted).

The City relies on arguments about "*laches*" that were not the basis of denial and are flatly inapplicable. The City's reliance on the district court's *dicta* regarding the confusing and contradictory procedural posture is irrelevant and also misguided, as explained at pages 8 and 9 of the application for emergency relief. The district court denied the motion on the merits through a clear error of law and did not include as part of its holding any argument about *laches*. Indeed, such a reliance would be an abuse of discretion.

The City is also off the mark in criticizing Appellants for waiting eight days to file their claim of appeal and an additional day to request emergency relief. The district court issued its decision orally from the bench, so a transcript was required for this Court to evaluate the appeal's merits. Appellants' counsel immediately requested the transcript's preparation but did not receive it until August 15, 2022, then filed promptly thereafter. What's more, Appellants are unemployed, blue-collar workers who are losing their homes and struggling to put meals on the table as a result of the unconstitutional mandates. They do not have deep pockets to secure an army of lawyers. The fact that they were able to file a lengthy and detailed emergency request for relief so quickly after receipt of the transcript shows true urgency, and it is shameful for the City to suggest otherwise.

The City fixates on the argument that while the motion for preliminary injunction was pending, the June 30 deadline for terminated employees to have "one last shot at getting vaccinated" and return to their former positions passed. 8/23/2022 Opp. Ltr. 3-4. But this date is one of many that has been offered, and does not change the daily, ongoing irreparable harm and coercion that Appellants face. All municipal departments face a staffing crisis. Appellants each argued, and the City did not deny, that if they were to get vaccinated *at any time* in violation of their religious beliefs, they would be able to return to work in their old departments.

Moreover, Appellants are prohibited by the private sector mandates from working nearly anywhere in the public or private sector. So, Appellants continue to face ongoing coercion. If they do not violate their religious beliefs, or in the alternative become strippers—one of the Mayor's arbitrary carve outs—they will lose their homes and be forced to leave the City. Many are already facing an imminent deadline of September 1st to move out of homes in foreclosure or with past due rents. Others face tough decisions about the upcoming school year as they appeal to the courts one last time before being forced to become religious refugees in cities and states that do not force them to violate their faith to feed their families.

Every Appellant faces ongoing unconstitutional harm from these arbitrary and coercive mandates and preserved their rights by filing the necessary paperwork well before the June 20, 2022 deadline. And the City's coercion is ongoing, as the City continues to offer the prospect of gainful employment given the well-documented and uncontested staffing emergencies citywide—if Appellants will only violate their religious beliefs and get vaccinated.

Accordingly, Appellants urgently ask this Court to enter an emergency injunction reinstating them to their *status quo ante* positions with the City or, at a bare minimum, staying the application of the Mandates against them so that they might be employed somewhere—*anywhere*—in New York City.

Respectfully submitted,

/s/ Sujata S. Gibson
Counsel for Appellants

/s/ Barry Black
Counsel for Appellants

/s/ John J. Bursch
Counsel for Appellants


cc: Counsel of Record (via ECF)