# 22-1801-cv(L), 22-1876-cv(CON)

## United States Court of Appeals

*for the*

## Second Circuit

———◆———

NEW YORKERS FOR RELIGIOUS LIBERTY, INC., GENNARO AGOVINO, CURTIS CUTLER, LIZ DELGADO, JANINE DEMARTINI, BRENDAN FOGARTY, SABINA KOLENOVIC, KRISTA ODEA, DEAN PAOLILLO, DENNIS PILLET, MATTHEW RIVERA, LAURA SATIRA, FRANK SCHIMENTI, JAMES SCHMITT, MICHAEL KANE, individually, and for all others similarly situated, WILLIAM CASTRO, individually, and for all others similarly situated, MARGARET CHU, individually, and for all others similarly situated, HEATHER CLARK, individually, and for all others similarly situated, STEPHANIE DI CAPUA, individually, and for all others similarly situated, ROBERT GLADDING, individually, and for all others similarly situated, NWAKAEGO NWAIFEJOKWU, individually, and for all others similarly situated, INGRID ROMERO, individually, and for all others similarly situated, TRINIDAD SMITH, individually, and for all others similarly situated, AMARYLLIS RUIZ-TORO, individually, and for all others similarly situated,

*Plaintiffs-Appellants,*

*(For Continuation of Caption See Inside Cover)*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFFS-APPELLANTS

BARRY BLACK
NELSON MADDEN BLACK LLP
475 Park Avenue South, Suite 2800
New York, New York 10016
(212) 382-4300

SUJATA SIDHU GIBSON
GIBSON LAW FIRM PLLC
832 Hanshaw Road, Suite A
Ithaca, New York 14850
(607) 327-4125

JOHN J. BURSCH
BURSCH LAW PLLC
9339 Cherry Valley Avenue SE, Suite 78
SE Calesonia, Michigan 49316
(616) 450-4235

*Attorneys for Plaintiffs-Appellants*

MATTHEW KEIL, JOHN DE LUCA, DENNIS STRK, SARAH BUZAGLO, BENEDICT LOPARRINO, JOAN GIAMMARINO, AMOURA BRYAN, EDWARD WEBER, CAROLYN GRIMANDO,

*Consolidated Plaintiffs-Appellants,*

– v. –

CITY OF NEW YORK, ERIC ADAMS, DAVE CHOKSHI, in his official capacity as Health Commissioner of the City of New York, NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*

ROBERTA REARDON,

*Defendant.*

## CORPORATE DISCLOSURE STATEMENT

Plaintiffs-Appellants state that New Yorkers for Religious Liberty, Inc. is a not-for-profit corporation organized under New York law, and that it neither issues stock nor has a parent company.

/s/ John J. Bursch
John J. Bursch
ALLIANCE DEFENDING FREEDOM
*Counsel for Appellants*

Dated: October 17, 2021

# TABLE OF CONTENTS

Corporate Disclosure Statement.............................................................. i

Table of Contents ...................................................................................... ii

Table of Authorities.................................................................................. v

Jurisdictional Statement.......................................................................... 1

Statement of the Issues............................................................................ 2

Introduction ............................................................................................... 3

Statement of the Case .............................................................................. 7

Procedural History ................................................................................... 20

Summary of Argument............................................................................. 24

Argument.................................................................................................... 27

I.     Standard of Review .................................................................... 27

II.    Appellants plausibly alleged, and will likely succeed in
showing, that New York City's vaccine mandate violates
their right to freely exercise their religion. .................................. 28

    A.    The Mandates are not generally applicable. ......................... 29

        1.    The Citywide Panel exercises substantial
discretion in deciding religious exemptions. ............... 30

        2.    The Mandates allow discretion to grant or deny
religious exemptions. ................................................... 32

        3.    The Mandate allows ample executive discretion to
make arbitrary additional exceptions. ........................ 37

    B.    The Mandate is not neutral. ................................................. 42

1. Neutrality is defeated if animus is evident facially or as applied. ................................... 42

2. Appellees adopted unconstitutional standards to implement the mandate. ............................... 43

3. The Citywide Panel decisions were infected with religious animus. ........................................ 44

III. Appellants plausibly alleged, and will likely succeed in showing, that New York City's vaccine mandate violates the Establishment Clause. ................................................ 47

IV. The district court in *Kane* abused its discretion by dismissing the as-applied claims. ................................... 51

A. "Undue hardship" cannot serve as the basis for dismissal. ............................................................ 52

B. COVID-19 Vaccination is not a Condition of Employment for Exemption-Eligible Employees. ............... 56

C. Michael Kane's claims were improperly dismissed. ............. 57

D. William Castro's claims were improperly dismissed. .......... 60

E. Margaret Chu's claims were improperly dismissed. ............ 62

F. Heather Jo Clark's claims were improperly dismissed. ........ 63

G. Stephanie DiCapua's claims were improperly dismissed. ............................................................ 65

H. Robert Gladding's claims were improperly dismissed. ........ 66

I. Nwakaego Nwaifejokwu's claims were improperly dismissed. ............................................................ 68

J. Ingrid Romero's claims were improperly dismissed. ............ 68

K. Trinidad Smith's claims were improperly dismissed. .......... 69

L.     Natasha Solon's claims were improperly dismissed. ...........71

M.    Amaryllis Ruiz-Toro's claims were improperly dismissed. ...............................................................73

N.    Matthew Keil's claims were improperly dismissed. .............75

O.    John De Luca's claims were improperly dismissed. .............77

P.    Sasha Delgado's claims were improperly dismissed. ...........78

Q.    Dennis Strk's claims were improperly dismissed ................80

R.    Sarah Buzaglo's claims were improperly dismissed. ...........82

S.    Eli Weber's claims were improperly dismissed. ...................84

T.    Carolyn Grimando's claims were improperly dismissed. ......86

U.    Amoura Bryan's claims were improperly dismissed. ...........88

V.    Joan Giamarrino's claims were improperly dismissed. .......91

W.    Benedict LoParrino's claims were improperly dismissed. ...............................................................93

V.    Appellees did not meet their burden of showing their policies can survive strict scrutiny. ..........................................................94

VI.    Appellants have established irreparable harm, and the balance of equities strongly favors them. .....................................95

Conclusion ...........................................................................................98

Certificate of Compliance....................................................................100

Certificate of Service ..........................................................................101

# TABLE OF AUTHORITIES

## Cases

*A.H. v. French,*
   985 F.3d 165 (2d Cir. 2021) ........................................................................ 26

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,*
   570 U.S. 205 (2013) .................................................................................... 26

*All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.,*
   651 F.3d 218 (2d Cir. 2011) ........................................................................ 26

*Burwell v. Hobby Lobby Stores, Inc.,*
   573 U.S. 682 (2014) .................................................................................... 30

*Cantwell v. Conn.,*
   310 U.S. 296 (1940) ........................................................................ 34, 44, 61

*CBOCS W., Inc. v. Humphries,*
   553 U.S. 442 (2008) .................................................................................... 50

*Church of Lukumi Babalu Aye v. City of Hialeah,*
   508 U.S. 520 (1993) ........................................................................ 27, 40, 41

*Consumers Union of U.S., Inc. v. New Regina Corp.,*
   664 F. Supp. 753 (S.D.N.Y. 1987) .............................................................. 34

*Elrod v. Burns,*
   427 U.S. 347 (1976) ........................................................................ 27, 93, 94

*Emp. Div. v. Smith,*
   494 U.S. 872 (1990) ........................................... 4, 6, 31, 32, 35, 36, 44, 45

*Engquist v. Or. Dep't of Agric.,*
   553 U.S. 591 (2008) .............................................................................. 38, 39

*Ferrelli v. Unified Ct. Sys.,*
   No. 22 Civ. 0068 (LEK) (CFH), 2022 WL 673863 (N.D.N.Y. Mar.
   7, 2022) ...................................................................................................... 32

*Forsyth Cnty. v. Nationalist Movement,*
   505 U.S. 123 (1992) ................................................................................. 39-40

*Fulton v. City of Phila.*,
141 S. Ct. 1868 (2021) ........................................ 4, 6, 28, 30-31, 31, 36, 90, 91

*Hargrave v. Vermont*,
340 F.3d 27 (2d Cir. 2003) ................................................................... 52

*Hernandez v. Comm'r*,
490 U.S. 680 (1989) ................................................... 10, 12, 16, 23

*In re Application of Am. Tobacco Co.*,
866 F.2d 552 (2d Cir. 1989) ................................................................ 34

*Intergraph Corp. v. Intel Corp.*,
253 F.3d 695 (Fed. Cir. 2001) ............................................................ 34

*Int'l Dairy Foods Ass'n v. Amestoy*,
92 F.3d 67 (2d Cir. 1996) ................................................................... 91

*Johnson v. Zerbst*,
304 U.S. 458 (1938) ........................................................................... 82

*Jolly v. Coughlin*,
76 F.3d 468 (2d Cir. 1996) ................................................ 30, 44, 67, 78, 79

*Kane v. de Blasio*,
19 F.4th 152 (2021) ........................................................................... 51

*Korematsu v. United States*,
323 U.S. 214 (1944) ........................................................................... 91

*Larson v. Valente*,
456 U.S. 228 (1982) ..................................................................... 44, 45

*Lynch v. City of N.Y.*,
589 F.3d 94 (2d Cir. 2009) ................................................................. 26

*MacDonald v. Safir*,
206 F.3d 183 (2d Cir. 2000) ................................................................ 40

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*,
138 S. Ct. 1719 (2018) ........................................................ 29-30, 41, 42

*McDonald v. City of Chi.*,
561 U.S. 742 (2010) ........................................................................... 82

*N.Y. Progress & Prot. PAC v. Walsh* ,
733 F.3d 483 (2d Cir. 2013) ............................................................... 27, 92

*O'Reilly v. Bd. of Educ.*,
2022 N.Y. Slip Op. 30173(U) (2022) ............................................. 54, 55

*Palin v. N.Y. Times Co.*,
940 F.3d 804 (2d Cir. 2019) ..................................................................... 26

*Patrick v. Le Fevre*,
745 F.2d 153 (2d Cir. 1984) ..................................................................... 43

*Patsy v. Bd. of Regents*,
457 U.S. 496 (1982) ................................................................... 68, 70, 82

*Paulsen v. Cnty. of Nassau*,
925 F.2d 65 (2d Cir. 1991) ............................................................... 91-92

*Rezzonico v. H & R Block, Inc.* ,
182 F.3d 144 (2d Cir. 1999) ..................................................................... 34

*Roman Catholic Diocese v. Cuomo*,
141 S. Ct. 63 (2020) ................................................................. 70, 73, 75

*Smith v. Bd. of Educ.*,
844 F.2d 90 (2d Cir. 1988) ..................................................................... 80

*Tandon v. Newsom*,
141 S. Ct. 1294 (2021) ............................................................................ 38

*Trump v. Hawaii*,
138 S. Ct. 2392 (2018) ..................................................................... 46, 91

*TWA v. Hardison*,
432 U.S. 63 (1977) ................................................................................... 49

*TWA v. Thurston*,
469 U.S. 111 (1985) ................................................................................. 46

*United States v. Seeger*,
380 U.S. 163 (1965) ................................................................... 43, 56, 61

*Vincenty v. Bloomberg*,
476 F.3d 74 (2d Cir. 2007) ..................................................................... 26

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) ................................................................ 40

*Warner v. Orange Cnty. Dep't of Prob.*,
968 F. Supp. 917 (S.D.N.Y. 1997) .............................. 82, 83, 84

*We the Patriots USA, Inc. v. Hochul* ,
17 F.4th 266 (2d Cir. 2021) ................... 4, 5, 23, 27, 29, 33

*Widmar v. Vincent*,
454 U.S. 263 (1981) ................................................................ 48

*Zavala v. Dovedale Sales Corp.*,
No. 2:05-cv-01825-ADS-ETB, 2006 U.S. Dist. LEXIS 112761
(E.D.N.Y. Mar. 11, 2006) ..................................................... 50

## Statutes

29 C.F.R. § 1605.1 ..................................................... 43, 56, 61

28 U.S.C. § 1291 ........................................................................ 1

28 U.S.C. § 1292 ........................................................................ 1

N.Y. Exec. Law § 296 (McKinney) ....................................... 51

N.Y. Exec. Law § 1983 (McKinney) ..................................... 82

# JURISDICTIONAL STATEMENT

This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether New York City's vaccine mandate is subject to strict scrutiny on a Free Exercise Clause challenge when it allows officials to exercise substantial discretion to create new carve outs and accept or deny religious exemptions.

2.      Whether New York City's vaccine mandate violates the Establishment Clause when it is regularly applied through official policies preferencing majority and organized religion over minority and private religion in religious accommodation decisions.

3.      Whether the City's decision to adopt a facially discriminatory accommodation policy violates the Equal Protection Clause.

**INTRODUCTION**

On August 11, 2022, the CDC revised its guidance to stop differentiating between vaccinated and unvaccinated persons due to the overwhelming scientific consensus that COVID-19 vaccines cannot stop infection and transmission.[1] Nonetheless, the City of New York continues to insist that Appellants—despite their religious objections—must be vaccinated to work for the City or, for that matter, *any* employer within the City's jurisdiction.

That decision might be afforded substantial judicial discretion if it allowed exceptions for no one. But the exact opposite is true. The City provides exemptions from its omnibus COVID vaccination requirements for athletes, entertainers, make-up artists and strippers, exempts thousands of unvaccinated municipal employees whose applications have been allowed to pend indefinitely since 2021, offers a medical exemption, and provides for a religious exemption—one that is granted only rarely in the unfettered and arbitrary discretion of City officials.

Appellants in these consolidated cases are New York City firefighters, teachers, police officers, sanitation workers, and other public employees, many of whom have lost their livelihoods, their careers, their

---

[1] Massetti GM, Jackson BR, Brooks JT, et al. Summary of Guidance for Minimizing the Impact of COVID-19 on Individual Persons, Communities, and Health Care Systems — United States, August 2022. MMWR Morb Mortal Wkly Rep. ePub: 11 August 2022. DOI: http://dx.doi.org/10.15585/mmwr.mm7133e1

homes, their families, and their mental health due to the City's discretionary and discriminatory vaccine policies.

In the *Kane* and *Keil* cases, this Court already held that Appellants are likely to succeed on the merits. *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021). Despite this holding, one district court dismissed the teachers' cases (*Kane* and *Keil*) on the pleadings after remand, and the other district court denied a preliminary injunction in the broader case on behalf of workers from all sectors (*New Yorkers for Religious Liberty, "NYFRL"*). Both courts mis-analyzed the constitutional claims under this Court's decisions in *Kane* and *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021), and the Supreme Court's decision in *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021).

In *Fulton*, the Supreme Court held that if a law provided *any* mechanism for individualized exemption, denials of religious accommodation must be strictly scrutinized, even if no exemptions have ever been granted for any reason: "a formal mechanism for granting individualized exceptions renders [a] policy not generally applicable, regardless of whether any exceptions have been given." *Fulton*, 141 S. Ct. at 1879 (citing *Emp. Div. v. Smith*, 494 U.S. 872, 884 (1990)).

In *We the Patriots*, this Court recognized a discretion requirement, holding that the State of New York's policy of offering only medical exemptions and no religious exemptions to a healthcare-workers vaccine requirement did not trigger strict scrutiny under the Free Exercise

Clause because the medical exemption procedure afforded state actors "no meaningful discretion" on the record before the Court. 17 F.4th at 289. In *Kane*, this Court clarified the line between discretionary and ministerial relief, *granting* relief on Appellants' as-applied challenge because they showed that the Arbitrators reviewing their claims often exercised "substantial discretion" in determining religious exemptions. 19 F.4th at 169.

The evidence that the City has unfettered discretion in determining religious exemptions to its vaccine mandates has only increased since Appellants were last before this Court. In his deposition testimony, Eric Eichholtz—the architect of the Citywide Panel that now decides whether to grant religious exemptions—testified that the Panel's determinations are not bound by any objective rule but are entirely based on the discretion of the individual panelists. "[T]hese determinations truly are individualized." [A474 at 14-15]. This alone is sufficient to show that the Mandates are not generally applicable.

But even without the City's admission, religious exemptions are, by nature and statute, highly individualized and carry the potential for intentional or unintentional religious discrimination. Indeed, the Supreme Court's decisions in the *Smith* cases specifically held that if a state allows for religious exemption from an otherwise generally applicable law, the law is not generally applicable, and any denials must be strictly scrutinized. *Emp. Div., Dep't of Human Res. v. Smith*, 485 U.S.

660, 672 (1988) ("Smith I"). *Emp. Div. v. Smith*, 494 U.S. 872, 874 (1990) ("Smith II"). Hence, it was an abuse of discretion for the district courts to fail to apply strict scrutiny to the religious exemption denials in these cases.

General applicability is also defeated by the Mayor's apparently unlimited discretion to grant exemptions to the City's vaccine mandates when he thinks it in the City's interest—such as his olive leaf for strippers and athletes due to economic interests, or his decision to exempt certain Department of Corrections officers due to staffing shortages. Yet the same grace has not been extended to Appellants, who seek exemption due to their sincerely held religious beliefs. This type of executive branch discretion was precisely the issue in *Fulton*, which resulted in the application of strict scrutiny. 141 S. Ct. at 1879.

Moreover, the City's history of discrimination requires ongoing strict scrutiny, especially since the City not only failed to refute its prior religious accommodation policies ("Stricken Standards") after this Court held that they were unconstitutional and discriminatory in *Kane – it decided to expand their use* Citywide, now offering the Stricken Standards in nearly every department. It does not matter that the City offers an alternative option of review by the Citywide Panel to those

whose religious beliefs do not meet the discriminatory Stricken Standards; the government cannot adopt one religious accommodation policy for Christian Scientists and another for Jews, Catholics, Muslims and all the other religions that the City has openly proclaimed to have invalid religious objections. This is especially so when the Stricken Standards offer more generous terms and do not allow for denial based on undue hardship, while the Citywide Panel routinely rejects sincere religious objectors on that basis. The City's policy triggers strict scrutiny under the neutrality prong of the Free Exercise Clause claim and violates the Equal Protection and Establishment Clause.

Because the City has not attempted to show that its mandates are the most narrowly tailored way to advance the City's compelling interests, Plaintiffs are likely to succeed. Accordingly, this Court should follow its decisions in *We the Patriots* and *Kane*, reverse, and enter a preliminary injunction that protects the public-employee Plaintiffs-Appellants in all three underlying lawsuits.

## STATEMENT OF THE CASE

Appellants are firefighters, building inspectors, police officers, EMTs, teachers, sanitation workers, and other hardworking New

7

Yorkers, including New Yorkers for Religious Liberty, Inc. (NYFRL), a New York non-for-profit membership organization that consists of Appellants and others affected by New York City's COVID-19 vaccine mandates. These heroes are dedicated to serving their neighbors. But the City has stopped their work because they cannot take the COVID-19 vaccine without violating their religious beliefs.

Through a series of "emergency" executive orders, the City forced most public and private sector employees to take the COVID-19 vaccine. First, in late August 2021, the Mayor and the Commissioner of the Department of Health and Mental Hygiene issued an order requiring all Department of Education ("DOE") employees and contractors to become fully vaccinated by September 27, 2021. [A93 ¶¶ 61-62]. The original mandate contained no medical or religious exemptions. [A93 ¶ 62]. Lawsuits ensued and a temporary restraining order was issued. [A101-02 ¶¶ 77-81]. The DOE was able to get the restraining order dissolved through an arbitration award (later held unconstitutional by this Court) granting religious and medical accommodation ["Stricken Standards," *Kane* ECF No. 1-2].

Appellants each have sincerely held religious objections that do not allow them to take a COVID-19 vaccine. [A123-24 ¶¶ 219-25; A128-29 ¶¶ 262-63, 66-67; A131-32 ¶¶ 289-90, 294; A134-35 ¶¶ 309-313, 320; A136 ¶¶ 327, 335-36, 338; A139-40 ¶¶ 356-62; A141 ¶ 381; A145 ¶¶ 406-07, 411; A147-48 ¶¶ 420-27; A150 ¶¶ 474, 479; A155-58 ¶¶ 496-98; A162-63 ¶¶ 518-21; A167-79 ¶¶ 542-52; A173-75 ¶¶ 575-81; A179-86 ¶¶ 601-12; A191-92 ¶¶ 635-49; A196-97 ¶¶ 671-78; A201-02 ¶¶ 703-10; A206-07 ¶¶ 735-40; A366 ¶¶ 328-39; A369 ¶ 343; A370 ¶¶ 353, 371-72; A374 ¶¶ 376, 390-91; A375 ¶ 403; A381 ¶ 427; A383 ¶ 446; A386 ¶ 463; A384 ¶¶ 491, 499; A393 ¶ 513; *NYFRL* ECF No. 9 ¶¶ 5-10, 16, ECF No. 10 ¶¶ 11-16, 18, 20, 28, ECF No. 11 ¶¶ 5-18, 20, 30, ECF No. 13 ¶¶ 6-12, 15, ECF No. 14 ¶¶ 5-26, 28, 35, ECF No. 15 ¶¶ 12-35, 38, ECF No. 16 ¶¶ 5-35, 37, 42, ECF No. 17 ¶¶ 7-15, 17, 25, ECF No. 20 ¶¶ 7-39, 41, ECF No. 21 ¶¶ 5-6, 19]. Most *Kane* and *Keil* Appellants and thousands of their colleagues timely applied for religious exemptions in September 2021. Others, like Appellant Trinidad Smith, elected to file or support a proposed class-action lawsuit because the Standards were discriminatory and designed to result in widespread denials. [*Kane* ECF No. 1]. As the lawsuit

foreshadowed, all applications were denied through an autogenerated boilerplate email that DOE issued. [A107; A226].

Appellants had one day to appeal to an arbitrator's Zoom hearing. [A108 ¶¶ 112-13]. DOE representatives aggressively engaged in heresy inquisitions during the appeals, discriminating even more zealously than the already unconstitutional policy required. For example, they argued that Appellant Michael Kane, a non-denominational Buddhist, should be denied because though sincere, his religious beliefs conflict with the Catholic Pope's. [A124 ¶¶ 221-22, 323]. Such comments were common and are well documented in the record. Out of thousands of applicants, only 165 were accommodated.

Originally, the City's discriminatory mandate applied only to DOE employees. Last November, on interlocutory appeal, this Court declared the DOE's religious exemption policies unconstitutional, holding that denying a religious exemption "based on someone else's publicly expressed religious views—even the leader of her faith—runs afoul" of the First Amendment. *Kane*, 19 F.4th at 168. The Court also held that government should not second-guess religious adherents' "interpretation

of [their] creeds." *Id.* (quoting *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989)).

While the *Kane* appeal was pending, the City issued dozens of additional vaccine mandates, which collectively require vaccination for nearly all private sector or municipal jobs in the City (collectively, "Mandate"). After this Court held that the Stricken Standards were unconstitutional, the City not only refused to disavow them but expanded their use to offer them to most municipal employees [A218 ¶ 805; A343-44 ¶¶ 192-97]. Alternatively, the City offers the Citywide Panel.

But this new Citywide Panel option only led to *more* religious discrimination. The Stricken Standards do not provide a mechanism for denial based on undue hardship. If an employee is lucky enough to qualify as having a valid religious objection under the discriminatory criteria, they are supposed to retain their jobs. [A-97 ¶ 70(i); *Kane* ECF No. 1-2 at 12]. Not so for the Citywide Panel, which tacks on "undue hardship" as an alternative unsupported reason for denial on most religious accommodation decisions. [A273-77; A299].

Consider *NYFRL* Appellant Sabina Kolenovic. The DOE denied her a religious exemption under the Stricken Standards because DOE

11

representatives alleged that some Muslim leader (whom Kolenovic does not follow) publicly said he was vaccinated against COVID-19. [*NYFRL* ECF No. 52 ¶ 37]. The DOE believed this announcement somehow invalidated religious exemption claims of *all* Muslims. When the City provided "fresh consideration" of Kolenovic's exemption request by the Citywide Panel, the City again denied her request, this time on the basis of "undue hardship." [*Id.* ¶ 52]. Conversely, if Appellant Kolenovic had been part of a religious organization whose leader publicly opposed the vaccine, the City would have approved her exemption under the Stricken Standards, as it has done for 163 other workers. So as applied, the City's vaccine mandate plays denominational favorites.

This result is not surprising. The Citywide Panel exercises substantial and unchecked discretion. At deposition, Eric Eichenholtz—the architect of the Citywide Panel and Chief Assistant Corporation Counsel for Employment Policy and Litigation at the Office of the New York City Corporation Counsel—testified that Panel decisions are truly "individualized" and are constrained by no objective criteria. [A432, A435-36, A452, A455, A466, A474]. Panelists are not even given any formal training, other than vague links to EEOC guidance which do not

reflect the heightened undue hardship standard that state and local statutes require in New York City. *See, e.g.,* N.Y. Exec. Law § 296 (McKinney) ("undue hardship" shall mean an accommodation requiring significant expense or difficulty). And Mr. Eichenholtz admitted that the Panel was not following any statutory standards for undue hardship: the Panel did not review or rely on objective evidence to establish that Appellants are a direct threat and need to be segregated based on their religious practices, nor any economic evidence to support the determination that they cannot be reasonably accommodated.

Appellants also submitted evidence that the Panel used that discretion to judge not only the sincerity of workers' religious beliefs but the *value* of those beliefs. For example, the City instructed the Panel to deny exemptions based on personal—as opposed to public institutional—beliefs and those rooted in opposition to participating in abortion, taking COVID-19 vaccines tested on or developed from aborted fetal cell lines. [A284].

Most Appellants were arbitrarily denied under this deeply flawed, discretionary process. Appellant Agovino, a 26-year employee of the Department of Corrections ("DOC"), was denied on the basis of "undue

hardship" even though, under the municipal mandate, "uniformed" unvaccinated DOC officers were able to continue working in person due to the secular concern of "staffing shortages," [A342 ¶¶ 186-89], inmates and visitors could remain unvaccinated, and Appellant Agovino had no contact with detainees and little contact with anyone [A368-69 ¶ 341].

Appellant Paolillo, a dedicated police officer who worked through the worst of the pandemic on the front lines, was terminated on March 25, 2022, after the Citywide Panel denied his application, stating only "does not meet criteria." Discovery revealed that two panelists found him sincere, one voted to deny because they disputed whether aborted fetal cells are in fact implicated in the production or testing of the vaccines (they are), and the Law Department voted to deny based on "undue hardship," which Mr. Eichenholtz admitted was not supported by any objective data or analysis [A385 ¶¶ 456-61]. Meanwhile, 4,650 of Paolillo's similarly situated unvaccinated colleagues are still working today due to secular considerations about staffing and administrative backlog. [*NYFRL*, ECF No. 81-21].

Appellant Fogarty, who worked for the FDNY for almost 20 years and was a captain, was denied religious accommodation based on the

"potential for undue hardship." [A369]. Mr. Eichenholtz admitted that the FDNY had submitted nothing to support this determination. [*NYFRL* ECF No 81-29 at 237:21-238:14; A446]. While the underlying motion was pending, Captain Fogarty was forced to retire. [A369]. The FDNY, like all municipal departments, now faces a staffing crisis. [A365]. If Appellant Fogarty were to get vaccinated, he could easily recover his job. Without vaccination, he cannot work anywhere in the City.

Appellants O'Dea, and Pillet, also FDNY employees, worked until February and May 2022, respectively, all while engaging in period testing, daily temperature checks, and daily masking. [*NYFRL* ECF Nos. 15, 17, 53, and 55]. During this time, O'Dea helped save the life of a patient in cardiac arrest. [*NYFRL* ECF No. 53 ¶ 51]. Nevertheless, their religious exemption requests were denied and their exemption deemed to constitute the "potential for undue hardship." [*NYFRL* ECF No. 53 ¶ 49 and ECF No. 55 ¶ 33]. O'Dea now works at the same job in New Jersey, and Pillet was vaccinated in violation of his sincerely held religious beliefs, causing him severe trauma.

Appellant Cutler worked for the Sanitation Department ("DSNY") since 2014. Mr. Eichenholtz denied his religious exemption because he

received vaccines before he became religious [A373]. Appellant Cutler is a born-again Christian, a deacon at his church, and provided ample evidence of his deep religious commitments to his church and religious objections to vaccination. [A372; *NYFRL* ECF No. 10-1, 10-2, 10-4]. His application explained that since the date when he was born again, he has received no vaccine. [A372-73]. His exemption was denied based solely on the fact that he got vaccinated *before* he was "born again" years ago, despite the fact that Mr. Eichenholtz stated in deposition that such a conversion would "compel a grant of an accommodation . . ." [*Id.*; A437-38]. The stories go on.

Time has made matters worse. As public views shifted, the Mayor exercised his discretion to exempt from the City's COVID mandates many more preferred workers. For example, in March, Mayor Adams issued Emergency Executive Order 62, which exempted from the City's blanket employee mandates athletes, entertainers, and strippers—not because they posed less risk of infection, but because the Mayor believed the City would benefit from this economically. [A304 ¶¶ 13-14]. So, while NBA star Kyrie Irving could return to the basketball court, Broadway entertainers could return to the stage (along with their make-up artists

and entourages who are also exempted), and strippers could return to airless, enclosed adult entertainment parlors, normal hardworking sanitation workers, building inspectors, police officers and other frontline workers could not go back to work. Not surprisingly, this favoritism worried Jay Varma, a physician, epidemiologist, and senior advisor to Mayor Bill de Blasio for public health and COVID-19, who warned that the new carve-outs would open the City to "legal action" on the basis that its remaining mandates were "arbitrary and capricious." [*NYFRL* ECF No. 81-22 at 5].[2]

Since then, the City has become even more lax. The New York Times reported that the City is enforcing very little of its private-employee mandates. Lola Fadulu, *Eric Adams Stopped Enforcing Covid Vaccine Mandate for NYC Business*, The New York Times (June 23, 2022), https://www.nytimes.com/2022/06/23/nyregion/nyc-vaccine-mandate-adams.html. And the New York Post reported that the City exercised discretion to "pause" its review of appeals for over 4,600 unvaccinated NYPD workers denied an exemption, allowing them to continue working. [NYFRL, ECF No. 81-21]. While this appeal was

---

[2] *See also*, https://en.wikipedia.org/wiki/Jay_Varma.

pending, the Mayor even announced that he plans to end mandates for all private sector employees next month. Yet, the City continues to refuse to reinstate municipal employees, including Appellants, with sincere religious objections to the vaccines on the unsupported claim of "undue hardship." [A273-77; A299]. No public health justification was ever used to explain this discrimination—each carve out was justified by secular concerns such as the "economic health of the city" or "staffing shortages" or "administrative backlog," not on the ground that the exempted workers somehow posed less risk to the public than those denied religious accommodation.

The coercion goes on. The City continually offers new "last chances" for terminated municipal employees to be reinstated if they take the vaccine. [A355-56 ¶¶ 257-58]. The June and September 2022 "last chances" have come and gone while motions for injunctive relief and appeal pended. But the City's staffing crisis persists. *E.g.*, Yoav Gonen, *One in Five Jobs Unfilled at Health and Buildings Departments, City Council Finds*, The City (Sept. 6, 2022), https://on.nyc.gov/3yy3sc9; Dana Rubinstein and Emma G. Fitzsimmons, *Why City Workers in New York Are Quitting in Droves*, The New York Times (July 13, 2022),

https://nyti.ms/3RUZgdB. These last-chance offers will likely continue. But no matter; every employee knows that with the staffing shortages, all they need to do is get vaccinated and they can go back to work for the City, if not in their same position, at least in some comparable position. The City's message is clear: get the vaccine, get your job. But Appellants should not have to trade their faith for a job.

When Appellants first moved for preliminary relief, all of them were still employed and able to work unvaccinated. [*E.g.*, NYFRL ECF No. 1 ¶¶ 266-67, 271-72, 278-79, 286, 295, 300-302, 306-307, 311, 328-29, 334-35]. Today, all but four of the NYFRL Appellants and three of the *Kane* and *Keil* Appellants have been terminated or forced to resign. Some already had to violate their faith to keep their jobs. [*E.g.*, *Kane* ECF No. 162]. Those Appellants are deeply traumatized, describing the experience in some instances as akin to "spiritual rape." [Id]. Each day this discrimination persists, the remaining Appellants are faced with the same unconstitutional choice—whether to hold out or capitulate their beliefs to avoid starvation and eviction. They each submitted sworn statements that the pressure to violate their faith is causing unbearable, irreparable harm. [*E.g.*, *NYFRL* ECF No. 47 ¶ 39, ECF No. 48 ¶¶ 45-49,

ECF No. 49 ¶¶ 41-42, ECF No. 51 ¶ 28, ECF No. 52 ¶¶ 60-64, ECF No. 54 ¶ 57, ECF No. 55 ¶ 46, ECF No. 58 ¶¶ 76-77, 80, ECF No. 59 ¶¶ 56-57; *Kane* ECF No. 123 ¶¶ 30-39, ECF No. 124 ¶¶ 10-14, ECF No. 125 ¶¶ 10-14, ECF No. 126 ¶¶ 21-23, ECF No. 127 ¶¶ 7-13, ECF No. 128 ¶¶ 27-28, 31, ECF No. 129 ¶¶ 35-37, 52, 55, ECF No. 130 ¶¶ 7-13, ECF No. 131 ¶¶ 14-17, ECF No. 132 ¶¶ 22, 38-39, 41, ECF No. 133 ¶¶ 10, 12, 18, 21-25, ECF No. 134 ¶¶ 42, 45-46, ECF No. 135 ¶¶ 13, 15-16, 18-22, ECF No. 136 ¶¶ 29-32, ECF No. 137 ¶¶ 17-25, ECF No. 138 ¶¶ 13-21, ECF No. 139 ¶¶ 24-33, ECF No. 140 ¶¶ 37-39, 42-44, 46-47, ECF No. 163 ECF. No. 163 at ¶¶ ECF. No. 163 at ¶¶ 5-9, 16-17].

## PROCEDURAL HISTORY

This is a consolidated appeal. Appellants recount the procedural history of the consolidated cases below separately for clarity.

### *NYFRL v. The City of New York*

On February 10, 2022, NYFRL Appellants filed a complaint alleging, among other things, that New York City had violated their right to freely exercise their faith by forcing them to choose between maintaining public employment or taking the COVID-19 vaccine against their sincere religious beliefs. [*NYFRL* ECF No. 1]. Appellants then

moved for a preliminary injunction and temporary restraining order. [*NYFRL* ECF No. 7, 7-1]. The district court denied the restraining order but reserved its ruling on the preliminary injunction, ordering supplemental briefing and eventually allowing limited discovery. [*NYFRL* ECF No. 34, 3/29/22 Text Order, 5/13/22 Text Order]. After discovery, the district court asked Appellants to submit new briefing and an amended complaint. [*NYFRL* 6/16/22 Text Order]. Appellants did so, then the court requested a new order to show cause and new memoranda to support that order. [A477]. Appellants promptly complied. [*NYFRL* ECF Nos. 85 and 88].

On August 11, 2022, the district court heard oral argument and denied Appellants' request for preliminary relief, reading its ruling into the record that same day. [SPA43 and A506-518]. The court held that Appellants were unlikely to succeed on their First Amendment claims, believing the City's mandates were neutral and generally applicable rules, evenly applied to religious and secular workers alike, and upholding those rules on rational-basis review. [A515-16]. The court also held that Appellants showed no irreparable harm, as "employment consequences" typically trigger compensable damages. [A517-18].

Appellants timely appealed, [A521], and moved for injunctive relief pending appeal in the district court [*NYFRL* ECF No. 111]. Appellants then moved this Court for the same relief [22-1801 ECF No. 13] which was denied on October 11, 2022 [22-1801 ECF No. 110].

### *Kane v. De Blasio* & *Keil v. The City of New York*

In late 2021, DOE Appellants filed complaints alleging, among other things, that the City had violated their right to freely exercise their faith by forcing them to choose between maintaining public employment or taking the COVID-19 vaccine against their sincere religious beliefs. [*Kane* ECF No. 1; *Keil v. City of New York*, 1:21-cv-08773, ECF No. 10 (S.D.N.Y. 2021)]. They then moved for emergency injunctive relief. [*Kane* ECF No. 12; *Keil* ECF No. 8]. Those motions were denied, [*Kane* ECF No. 60; *Keil* 10/28/21 Text Order], and Appellants promptly appealed, [*Kane* ECF No 67; *Keil* ECF No. 33]. This Court consolidated the appeals, and reversed, holding that DOE Appellants are likely to succeed and remanding the case for further proceedings. *Kane*, 2d Cir., 21-2678, ECF No. 98.

The next month, DOE Appellants moved again for emergency relief after the City failed to obey this Court's order, [*Kane* ECF No. 85; *Keil*

ECF No. 50], unconstitutionally denying DOE Appellants' request for a religious exemption. The district court denied that motion, [*Kane* ECF No 90, *Keil* ECF No 54], and DOE Appellants appealed, [*Kane* ECF No 91, *Keil* ECF No. 55]. This Court denied that appeal on procedural grounds only. [*Kane*, 2d Cir., 21-3043, ECF No. 163].

In February of this year, the City moved to dismiss. Two months later, DOE Appellants moved again for preliminary injunctive relief, providing a fuller record as this Court requested. But in August, the district court denied DOE Appellants' motion and dismissed their claims. SPA1. The court held that DOE Appellants failed to state First Amendment claims, despite this Court holding that Appellants are likely to succeed and reversing an earlier injunction ruling. [SPA28]. DOE Appellants timely appealed [A282] and moved for injunctive relief pending appeal in the district court [*Kane*, ECF No. 187]. That request was denied, as was DOE Appellants' request for a stay. Appellants then moved this Court for emergency relief [2d Cir., 22-1876, ECF No. 12], which was denied on October 11, 2022. [22-1801 ECF No. 110]. This Court ordered expedited merits briefing the same day. [*Id.*]

## SUMMARY OF ARGUMENT

The First Amendment forbids government from burdening the free exercise of religion absent necessity. Laws that are not generally applicable or laws that are not neutral trigger strict scrutiny. *We The Patriots*, 17 F.4th at 281. Appellants are municipal and private sector employees who have sincere religious objections to vaccines. The City's vaccine mandate, facially and as applied, is not generally applicable. It allows "government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions" and "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Kane*, 19 F.4th at 165.

What's more, the City evidenced an egregious lack of neutrality in implementing the mandate, which triggers strict scrutiny under the Free Exercise Clause and also violates the Establishment and Equal Protection Clauses. On their face, the Stricken Standards preference Christian Scientists and allow the City to resolve religious disputes against religious minorities whose views conflict with the City's preferred religion. By adopting the facially discriminatory standards as an official policy, the City establishes preferred religion, and punishes the expression of doctrines it believes false—both of which violate the Establishment Clause and trigger strict scrutiny. Appellants submitted evidence that the Citywide Panel also exercises enormous discretion and

continues to discriminate against unorthodox religious beliefs and beliefs grounded in abortion, failing to adhere even to the most basic statutory standards in determining which religious accommodations to grant. The district court in *Kane* abused its discretion by dismissing Appellants claims, and both courts erred by failing to award preliminary injunctive relief.

The City cannot satisfy strict scrutiny, or even rational basis review. It offers no evidence showing why it must selectively punish religion generally, and certain religious objectors in particular. Because the City has not justified preferring some religions over others, and exercising broad discretion to allow unvaccinated athletes, performers, and strippers to work but not unvaccinated religious officers, firefighters, teachers, and other public servants, the City cannot deny Appellants an exemption. This is underscored by the scientific consensus that vaccines cannot meaningfully stop the spread of COVID-19, rendering the denial of religious accommodation based on undue hardship irrational.

Finally, Appellants have shown irreparable injury, and the balance of equities strongly favors them. When Appellants first moved for preliminary relief, they were all still employed and able to work unvaccinated. Now, after being denied an exemption through the City's discriminatory scheme, most have been terminated or forced to resign. They face ongoing pressure to violate their religious beliefs so that they can return to work and avoid losing their homes and lives in the City.

There is no public benefit from allowing the government to engage in religious discrimination. This Court should reverse and enter a preliminary injunction that protects Appellants in all three cases.

# ARGUMENT

## I.  Standard of Review

This Court reviews dismissals on a motion to dismiss de novo, and it construes the complaint liberally—accepting all factual allegations as true and drawing all reasonable inferences in the Appellants' favor. *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).

This Court "review[s] the denial of a preliminary injunction for abuse of discretion." *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009). A district court abuses its discretion when (1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision" cannot be found "within the range of permissible decisions." *Vincenty v. Bloomberg*, 476 F.3d 74, 83 (2d Cir. 2007) (cleaned up). Because this case involves First Amendment questions, this Court should "review the core constitutional facts de novo." *A.H. v. French*, 985 F.3d 165, 176 (2d Cir. 2021).    When appellants "seek to stay government action," they need only "establish (1) a likelihood of success on the merits, and (2) irreparable harm in the absence of an injunction." *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 230, 239-40 (2d Cir. 2011) (cleaned up), *aff'd sub nom. Agency for Int'l Dev. v. All. for*

*Open Soc'y Int'l, Inc.*, 570 U.S. 205 (2013). Where First Amendment rights are at issue, the test reduces essentially to a single prong: "the likelihood of success on the merits." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). The deprivation of rights "for even minimal periods of time, unquestionably constitutes irreparable injury," protection of First Amendment rights is per se "in the public interest," and the "the Government does not have any interest in enforcing an unconstitutional law." *Elrod v. Burns*, 427 U.S. 347, 373 (1976)

Appellants bear the burden of establishing that strict scrutiny applies. "If they succeed at that step, the burden shifts to the state to show that it is likely to succeed in defending the challenged Rule under strict scrutiny." *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021).

## II. Appellants plausibly alleged, and will likely succeed in showing, that New York City's vaccine mandate violates their right to freely exercise their religion.

The First Amendment forbids laws that curb "the free exercise of religion." U.S. Const., amend I. Here, Appellants faced adverse employment actions because their sincere religious beliefs kept them from taking the COVID-19 vaccine. Laws and regulations that are not

28

generally applicable or lack neutrality facially or as applied trigger strict scrutiny. *We the Patriots*, 17 F.4th at 281 (citing *Church of the Lakumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993)). Facially and as applied to Appellants, the mandates are neither neutral or generally applicable and must be strictly scrutinized.

**A.    The Mandates are not generally applicable.**

As this Court affirmed in *Kane*, "[a] law may not be generally applicable under Smith for either of two reasons: first, 'if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions'; or, second, 'if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.'" *Kane*, 19 F.4th at 165 (citing *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021)). The district court in *NYFRL* erred by misreading this clear "either or" standard as requiring that *both* prongs be satisfied to defeat general applicability. [A515-16]. Though Appellants need satisfy only one prong, they have shown that the mandate violates both, which triggers strict scrutiny two ways.

29

### 1. The Citywide Panel exercises substantial discretion in deciding religious exemptions.

First, the mandate is not generally applicable because the Citywide Panel exercises substantial discretion in deciding religious exemptions. This is consistent with *We the Patriots*, where this Court held that the State of New York's policy of offering medical exemptions only was not a free-exercise violation because the exemption procedure afforded the State "no meaningful discretion." 17 F.4th at 289. And it follows *Kane*, where this Court *granted* relief on DOE Appellants' as-applied challenge because the Arbitration Panels reviewing the educators' religious exemption requests had "substantial discretion." [19 F.4th at 169].

Here, the Panel's discretion can hardly be questioned. As noted, Mr. Eichenholtz, the Panel architect, admitted that the Panel makes undue hardship determinations that (1) are unsubstantiated by any objective scientific or financial evidence, and (2) does not even consider whether Appellants are a threat and require segregation based on their religious need to decline a vaccine. This is a constitutional problem. *See Fulton*, 141 S. Ct. at 1881-89 (criticizing Philadelphia for not showing that giving CSS an exception would put the City's goals at risk).

This problem is seen in the Panel's improper denials of Appellants' exemption requests. But it also appears on the Panelists' notes, which show that Panelists routinely substituted their own judgment for the applicants' about what their faith requires. [A299; A273-77]. The spreadsheet notes even show that Panelists denied applicants whose religious beliefs are formed by prayer instead of orthodoxy. To the Panel, these applicants had personal choice, so their decision could not be "religious." [*Id*.] That's wrong. *E.g.*, *Masterpiece Cakeshop*, 138 S. Ct. at 1731 (2018) ("the government . . . cannot act in a manner that passes judgment or presupposes the illegitimacy of religious beliefs and practices" because the "Free Exercise Clause bars even 'subtle departures from neutrality' on matters of religion").

Mr. Eichenholtz further admitted the Citywide Panel denied applicants whose views the City disagrees with—particularly those with objections to products using aborted fetal cell lines in testing or development. Whether Mr. Eichenholtz and his Panel members believe the connection is strong enough to merit concern, or whether they disagree with Appellants' facts, is irrelevant to the determinations of the Panel. The Panel's decisions violate the command that religious beliefs are entitled to protection if sincerely held, even if some reasonable observers would view them as unreasonable or illogical. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014). And factual disputes about the ingredients of a required pharmaceutical product are not

31

proper grounds for denial. *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996). Sincerity is what counts.

Most important, as noted above, Mr. Eichenholtz admitted that *there are no real governing standards* employed by Panel members; the process is completely discretionary and "individualized." [A432, A435-36, A452, A455, A466, A474]. As this Court has held, a formal "system" of "discretionary, individualized exemptions," which allows "individualized government" assessments of "relevant conduct," is "not generally applicable." *Kane*, 19 F.4th at 169; *accord Fulton*, 141 S. Ct. at 1878 (holding that "a formal system of entirely discretionary exceptions … renders" a government policy or scheme "not generally applicable"). Adoption of the Citywide Panel has not changed this Court's prior holding that these religious exemption decisions involve the exercise of discretion and denials must be strictly scrutinized. *Kane*, 19 F.4th at 169.

## 2. The Mandates allow discretion to grant or deny religious exemptions.

Next, the Mandates are not generally applicable because they provide mechanisms for individualized religious and medical exemptions. It is well-settled law that "[t]he creation of a formal mechanism for granting exceptions renders a policy not generally applicable." *Fulton*,

141 S. Ct. at 1879. Because the Mandates authorize religious and medical exemptions on their face, they are not general laws.

This was the precise issue in the *Smith* cases, which specifically noted that a law could not be "generally applicable" if the state allows religious exemptions, even if no secular reasons for exemption are ever favored. *Smith I*, 485 U.S. at 672; *Smith II*, 494 U.S. at 874. There, the Supreme Court twice addressed whether plaintiffs were improperly denied unemployment benefits after being fired for ceremonial peyote use. In *Smith I*, the Court held that the *Sherbert* strict scrutiny test would apply if Oregon drug laws had a mechanism for exemption for ceremonial peyote use. 485 U.S. at 672 ("A substantial number of jurisdictions have exempted the use of peyote in religious ceremonies from [state drug laws…]. If Oregon is one of those States, [plaintiffs'] conduct may well be entitled to constitutional protection."). Only after the state court decided there was *no* mechanism for religious exemption for ceremonial drug use did the Supreme Court define the drug law as generally applicable and allow a lesser standard of review. *Smith II*, 494 U.S. at 877-90.  So, if a state allows religious exemptions, the Supreme

Court has already held that the law is not generally applicable and denial of religious accommodation must be strictly scrutinized. *Id.*

This case presents a straightforward application of *Smith*. There is no dispute that the City's mandate offers a religious-exemption mechanism, guaranteed not only under federal law but also state and city statutes, and even on the face of the mandates themselves, and strict scrutiny must therefore be applied to any denials. Nonetheless, neither district court applied strict scrutiny, or even addressed the clear holding in *Smith,* both electing instead to cite a non-precedential lower court opinion stating that if "*Fulton* [and presumably *Smith* which *Fulton* rests on] required strict scrutiny for every religious exception, 'such an interpretation would create a perverse incentive for government entities to provide no religious exemption process in order to avoid strict scrutiny." [ECF No. 184 at 25; citing *Ferrelli v. Unified Ct. Sys.*, No. 22 Civ. 0068 (LEK) (CFH), 2022 WL 673863, at *7 (N.D.N.Y. Mar. 7, 2022)].

That reasoning is flawed. Strict scrutiny is not a barrier to providing religious accommodation; it merely ensures a principled application of that accommodation. Moreover, such reasoning does not render *Smith* and *Fulton* bad law.

34

Similarly, the district court in *Kane* made a clear error of fact in arguing that the Citywide Panel's religious accommodation determinations are somehow ministerial in nature, and can avoid strict scrutiny pursuant to this Court's holding in *We the Patriots USA, Inc*., 17 F.4th at 290 n.29. That's because *We the Patriots USA, Inc.* is inapposite. There, this Court held that medical exemptions do not trigger strict scrutiny for two reasons. First, the Court noted that the drug laws in *Smith* did not apply to those prescribed controlled substances by their physicians, and yet the Court still found the law generally applicable. Second, the decision clarified that, like in *Smith*, medical exemptions in that case provided "no meaningful discretion to the State or employers" to issue exemptions since checking for a doctor's note was essentially a ministerial act. *We the Patriots USA, Inc.*, 17 F.4th at 288-89. The individualized determinations, if any, said this Court, was on the part of the "physicians and nurse practitioners," and not the government. *Id*. In so holding, the Court distinguished the situation where the government is afforded discretion in medical and religious exemption determinations, such that there exists a potential for religious discrimination or arbitrary results. *Id.* at 290 n.29.

There can be no serious question that religious accommodation denials involve discretion and carry the risk of arbitrary or even discriminatory denial. This issue was examined in depth in *Cantwell v.*

*State of Connecticut*, 310 U.S. 296, 305 (1940), where the Supreme Court expressly rejected the claim that a state actor's religious exemption decision could be deemed ministerial in nature. Because the mandates themselves contain a mechanism for individualized review, the mandates are not generally applicable.[3]

---

[3] Insofar as Kane held that the religious accommodation policies were not generally applicable, but the mandate was, that distinction is not the law of the case. First, the arguments about the significance of the mandate's facial offer of a religious exemption were not made during the interlocutory appeal last year. Second, significant facts have emerged, such as the revelation that the Mayor has total discretion to implement exceptions, expansions and carve outs to the mandates. The law of the case doctrine is often inapposite upon "the discovery of new and different material evidence that was not presented in the prior action." *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001). Courts must give particular consideration to the impact of new facts on rulings made in the context of preliminary injunction motions. *Consumers Union of U.S., Inc. v. New Regina Corp.*, 664 F. Supp. 753, 760 (S.D.N.Y. 1987) (holding that the Second Circuit's decision on a preliminary injunction did not constitute the law of the case). Significant new facts have emerged here that require fresh consideration of this issue. Indeed, Kane is, on its face, a limited holding "based only on the record developed to [that] date." [ECF No. 77 at 44]. Moreover, "the law of the case doctrine does not deprive an appellate court of discretion to reconsider its own prior rulings, even when the ruling constituted a final decision in a previous appeal." *Rezzonico v. H & R Block, Inc.*, 182 F3d 144, 149 (2d Cir 1999). Finally, no law of the case is established by interim orders, without-prejudice. *In re in re Am. Tobacco Co.*, 866 F2d 552, 555 (2d Cir 1989).

### 3. The Mandate allows ample executive discretion to make arbitrary additional exceptions.

Another significant factual development has occurred since this case was last before this Court. Last year, the only mandate in the record was the DOE Mandate. Since then, the Mayor has issued over 150 new executive orders, which function collectively to impose the mandate on nearly every employee in New York, with some notable exceptions. *E.g.*, *Keil*, EFF No. 57-2. These mandates and exemptions clarify that the City's vaccine mandate cannot be deemed a generally applicable "across the board" law.

*General* applicability involves "general laws" that govern society at large, not a multitude of *specifically* applicable ever-changing executive branch edicts tailored to differently govern various arbitrary groups and individuals at the whim of a mayor or health commissioner. Indeed, *Smith* itself distinguishes its facts from the strict scrutiny decisions like *Sherbert* and *Thomas* by noting that they "have nothing to do with an *across-the-board* criminal prohibition on a particular form of conduct." *Emp. Div. v. Smith*, 494 U.S. 872, 884 (1990) (emphasis added). The Mandate falls plainly short in this context. That a municipality, through executive orders no less, would create 150 (and counting) vaccine

37

regulations in the course of months, subject to extension, modification or repeal at the mayor's whim, is hardly generally applicable and is subject to strict scrutiny facially and as applied.

Nor is the notion that the mayor can "peel away" his own promulgations at his discretion—effectively applying the law at his whim—consistent with general applicability. In *Fulton*, the Court held that because the Commissioner could issue exemptions to the city's public-accommodation law governing foster-care placement, the law was not generally applicable. 141 S. Ct. at 1879. This was true no matter whether the Commission had ever "granted one." *Id.* Here, Mayor Adams has granted many exceptions and exercises substantial discretion in deciding "which reasons" justify bucking the City's mandate. *Id.* That triggers strict scrutiny.

Just as the Citywide Panel used its discretion to prefer some religions over others, Mayor Adams used his discretion to prefer secular conduct over religious. That too violates the First Amendment. *Fulton*, 141 S. Ct. at 1877 ("A law lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.").

For example, in March, Mayor Adams issued Emergency Executive Order 62 ("EEO 62"), which exempted from the City's mandate athletes, entertainers, and strippers—not because they posed less risk of infection, but because the Mayor believed the City would benefit economically. [A304 ¶¶ 13-15]. So, while strippers could return to their venues, and NBA star Kyrie Irving could return to the basketball court, normal hardworking citizens were denied religious exemptions to work anywhere, even in the same stadium where athletes and their entourages were exempted.

Mayor Adams admitted he had no public health justification for these carve-outs. [*E.g.*, NYFRL ECF No. 81-24]. As noted above, the decision was economically motivated. And the public took notice. For example, Harry Nespoli, chairman of the Municipal Labor Committee, which represents over 100 unions and over 400,000 employees citywide, told the New York Times, "[t]here can't be one system for the elite and another for the essential workers of our city." [*NYFRL* ECF No. 81-22].

And that's not all. The municipal mandates allow most municipal employees to continue working unvaccinated indefinitely until the Citywide Panel issues a final decision. [*E.g.*, A387 ¶¶ 470-71]. Facing an

extreme staffing crisis in many departments, City officials intentionally paused reviewing many appeals of unvaccinated public employees. [*E.g.*, *NYFRL*, ECF No. 81-21]. So, to this day, thousands of unvaccinated City workers remain on the job, while Appellants and other religious individuals unlucky enough to have been formally denied accommodation are unable to work or get paid. Nothing explains why religious objectors cannot be accommodated while thousands of others can continue to report to work for months on end without compromising public health. An unvaccinated police officer poses no greater risk to the public after he receives his denial. If thousands who have not been processed can safely work in person each week, Appellant Paolillo can as well. Because "[c]omparability is concerned with the risks various activities pose, not the reasons why people gather," the City cannot preference its economic or administrative concerns over the religious concerns of Paolillo and other Appellants. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

These arbitrary carve-outs show that City officials, including Mayor Adams, have limitless discretion to grant exemptions to anyone. That triggers strict scrutiny under both prongs of *Fulton*. *Fulton*, 141 S. Ct. at 1879. Yet, in *Kane*, the lower court failed to apply strict scrutiny on this

basis, holding that the government faces different burdens when it acts as a manager as opposed to a lawmaker. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 598 (2008). Even if Appellees had been acting as managers, not lawmakers,[4] *Fulton* flatly rejected the argument that *Engquist* would allow a lesser standard of review to religious exemption denials, holding "these considerations cannot save the City here [because] principles of neutrality and general applicability still constrain the government in its capacity as manager. . .. No matter the level of deference we extend to the City, the inclusion of a formal system of entirely discretionary exceptions . . . renders the contractual non-discrimination requirement not generally applicable." *Id.* at 1878-79. So too here. Accordingly, strict scrutiny must be applied.

---

[4] This point is contested. A recent state court decision held that the Mayor and DOH lack the authority to issue employment conditions, specifically the vaccine requirement, on municipal employees outside of the collective bargaining process. *Police Benevolent Ass'n of the City of N.Y. v. City of New York,* Index No.151531-2022, NYSCEF Doc. No. 88 (Sup. Ct. N.Y. Cnty. 2022). And, the City did not issue these mandates as employee policies, but instead issued them as laws, which covered not only municipal employees, but departments outside of the City's technical control and even most of the private sector.

## B. The Mandate is not neutral.

Strict scrutiny is also triggered because the Mandate is not neutral facially or as applied.

### 1. Neutrality is defeated if animus is evident facially or as applied.

As a threshold matter, neutrality is defeated whether the animus is detected on the face of the Mandates or in their implementation. Laws which appear neutral on their face, but which are regularly implemented in an unconstitutional manner, are not neutral and thus must be strictly scrutinized when they function to burden religious rights. *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) ("in evaluating respondent's facial challenge, we must consider the county's authoritative constructions of the ordinance, including its own implementation and interpretation of it."); *MacDonald v. Safir*, 206 F.3d 183, 191 (2d Cir. 2000).

For this reason, textually neutral policies that function with other implementing or related policies to burden religious exercise cannot be considered "neutral" and must be analyzed in context. *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 540 (1993). Appropriate

42

guidance to avoid discriminatory implementation can insulate a regulation from facial challenge in some circumstances.

Reasonable guidance against discrimination from protects city ordinance against facial attack. *Ward v. Rock Against Racism*, 491 U.S. 781, 793-95 (1989). But, as discussed *infra*, rather than provide such guidance, Appellees actively encouraged discrimination and animus.

### 2. Appellees adopted unconstitutional standards to implement the mandate.

First, Appellees adopted facially discriminatory religious accommodation standards to implement the mandate. "The minimum requirement of neutrality is that a law not discriminate on its face." *Lukumi*, 508 U.S. at 533. Clearly, the Stricken Standards do not even meet that minimal requirement. Among other problems, they openly express denominational preferences for Christian Scientists and other denominations the City "recognizes" as "established," causing this Court to hold that strict scrutiny applies, and the *Kane* and *Keil* Appellants are likely to succeed. *Kane*, 19 F.4th at 168.

Shockingly, the City did not disavow the Stricken Standards. Ater this Court held that the Stricken Standards are unconstitutional, the City refused to disavow them. Instead, the City adopted them as official

policy and is now offering them in almost every department Citywide. This bold endorsement of the discriminatory Stricken Standards is proof of widespread animus. *See Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,* 138 S. Ct. 1719, 1721 (2021) (failure to disavow anti-religious conduct violated the Free Exercise Clause).

### 3. The Citywide Panel decisions were infected with religious animus.

Other evidence of animus towards some or all religion also infects the mandates' implementation. In addition to textual neutrality, courts must examine whether there are "subtle departures" from religious neutrality as evidenced by "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decision-making body." *Lukumi*, 508 U.S. at 533-40 (1993); *Masterpiece Cakeshop,* 138 S. Ct. at 1731. "Animus" is not just hostility but any indication that shows taking sides. The government "cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices," *Id*. at 1731.

On interlocutory appeal in *Kane*, Appellants raised the Mayor's incendiary comments about religion and the City's intent to discriminate. 19 F.4th at 165. le in religious accommodations at DOE. Now, the City

controls that process, and the evidence of religious animus is even stronger.

For example, emails produced in discovery and submitted in all cases to the district courts show that the Panel was instructed to deny religious objections based on the use of aborted fetal cell lines in vaccine testing or development. [*See, e.g.*, A284]. Specifically, the City produced an email to Panelist to Mr. Eichenholtz, stating: "I'm mostly seeing folks expressing their view that all Covid vaccines contain or were tested using fetal stem cells...My understanding from our conversation is that those would not constitute sincerely held religious beliefs, but what would?" Mr. Eichenholtz did not deny that this was the instruction in his responsive email and in depositions could point to no evidence that he ever disabused panelists of this instruction if it was a mistake. [*Id.*; *see also* A299]. Indeed, as discussed *infra* in discussion of individual applications, for all but one Appellant who was raised Jehovah's Witness, the Panel arbitrarily rejected applications focused on religious objections to use of aborted fetal cells, substituting their judgment about what each person's faith requires, and impermissibly denying applicants because they disagree with their facts. As further proof, Appellee Chokshi provided a letter to decision-makers in the appeals stating that he felt such concerns are invalid, which the Citywide Panel referred to in denying relief. [A170-71 ¶¶ 564, 569; A188 ¶626].

45

Similarly, the individual denials show that the Citywide Panel continued to discriminate against personally held religious beliefs, particularly those arising from prayer, or guidance from the Holy Spirit or one's moral conscience, denying all such applications on the ground that the beliefs "while sincere" allegedly allow the applicant "to choose to take or abstain from vaccination based on his view of the facts and circumstances." [*See, e.g.*, *Kane* ECF No. 134], [*Kane* ECF No. 136], [ECF No. 128], [ECF No. 139], [ECF No. 140], [ECF No. 132].

These reasons violate Appellants' religious rights. Religious beliefs are "safeguarded against secular intervention." *Patrick v. Le Fevre*, 745 F.2d 153, 158 (2d Cir. 1984). Title VII tracks these standards, defining defines religious beliefs to include any "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional views . . ." 29 C.F.R. § 1605.1. The government's assessment of what is religious or not is limited to "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." *United States v. Seeger*, 380 U.S. 163, 185 (1965).

When Appellees castigate Appellants' views as sincerely held but "not religious" because they were derived from a personal relationship with Spirit or God rather than denominational dogma, Appellees violate the Constitution. Such determinations indicate impermissible entanglement with religious questions, *Cantwell v. Connecticut*, 310 U.S. at 310, and violate other statutory and constitutional standards. And it

does not matter whether the religious objector is right, about the use of aborted fetal cells in vaccine development, or any other fact guiding their religious decision; the government cannot "punish the expression of religious doctrines it believes to be false." *Smith*, 494 U.S. at 877; *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996).

## III. Appellants plausibly alleged, and will likely succeed in showing, that New York City's vaccine mandate violates the Establishment Clause.

The Establishment Clause violations independently triggers strict scrutiny, regardless of whether the mandates are neutral or generally applicable. The "clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another," and that the government may "effect no favoritism among sects." *Larson v. Valente*, 456 U.S. 228, 244-246 (1982).

First, on their face, the Stricken Standards preference Christian Scientists and lend the government's power to resolve religious disputes against religious minorities whose views conflict with the City's preferred established and recognized religious leaders. For example, the Stricken Standards are only "considered for *recognized* and *established* religious organizations (e.g., Christian Scientists)." [A95 ¶ 70(c) (emphasis added)]. By adopting this position, the government must then violate the Establishment Clause by deciding which religious it will "recognize" as "established" versus those it will not, and it also expresses a

47

denominational preference for Christian Scientists and others who belong to the category of "established" religions.

Similarly, by requiring that personally held religious exemption requests be denied, and demanding a clergy letter, *id.* the government also expresses denominational preferences for orthodox religious beliefs. This is further solidified by the requirement that "[r]equests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine." *Id.* Not only does this requirement express denominational preferences for orthodoxy, it places the government in the unconstitutional role of resolving religious disputes.

By applying the facially discriminatory standards, the City "establishes" preferred religion, "imposes special disability" on religious minorities who do not fall within the definition, "takes a position and lends its power to one side in controversies over religious authority or dogma" and "punishes the expression of doctrines it believes false," any one of which violates the Establishment Clause and triggers strict scrutiny. *Smith II*, 494 U.S. at 877.

Adoption of these standards also violates the Equal Protection Clause. This is a case involving direct evidence of discrimination, in the form of a written policy that required discrimination against unorthodox religious beliefs. Defendants assert that because they would have denied many accommodations anyway based on "undue hardship," that they are not liable for these facially discriminatory policies. However, when, as

48

here, an employment policy is facially discriminatory, and Plaintiffs have presented direct evidence of discrimination, the employer cannot "rebut" a claim by demonstrating the existence of a non-discriminatory reason for reaching the same result – rather, they are subject to summary judgment unless they can present a valid affirmative defense. *TWA v. Thurston*, 469 U.S. 111, 121 (1985). None are available here, as religious discrimination is *per se* unconstitutional. *See generally* Melissa L. Saunders, *Equal Protection, Class Legislation, and Colorblindness*, 96 Mich. L. Rev. 245, 262 (1997); *Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018) (overruling Korematsu v. United States, 323 U.S. 214 (1944)).

Second, these policies have the effect of burdening unorthodox religious denominations, as did the policies in *Larson*, but the problem is compounded here because in addition, the City openly announced its intention to target unorthodox religious denominations and individuals for discriminatory treatment and to prefer Christian Scientists. [A102-06 ¶¶ 82-101; *see also* A81 ¶15, A105 ¶ 95]. As discussed *supra* and *infra*, so did representatives of the City and the DOE during the religious accommodation process. These facts establish denominational preference and trigger strict scrutiny under the Establishment Clause.

Shockingly, the City did not disavow these unconstitutional policies after this Court held they are unconstitutional, but rather admits that they instead extended them Citywide, and offer the unconstitutional policy in nearly every department. Thus, what might have once been

limited to a DOE Establishment Clause problem, has now become a Citywide violation.

Offering the Citywide Panel alternative to most (though as discussed below, not all) Appellants does not solve this problem. The City concedes that the options are not equal, arguing in the briefing before the motions panel that "at least some of the plaintiffs would seemingly have fared just as well, if not better, had they opted to go to arbitration." [*NYFRL* 22-1801 ECF No. 30 at 27]. Nor can it refute that the Stricken Standards use a more generous undue-hardship standard. On its face, the arbitrator's award requires accommodation for those deemed to belong to "established" and "recognized" religions without any mechanism for undue hardship denial. Rather, if applicants meet the discriminatory criteria, they "shall be permitted the opportunity to remain on payroll" with no provision for undue hardship exception. [A-97 ¶ 70(i); *Kane* ECF No. 1-2 at 12]. To the extent that the DOE or certain individual arbitrators may have exercised discretion to violate this policy and deny based on undue hardship anyway, that does not change the fact that the policy itself is facially set up to provide a more favorable result to those that qualify under its discriminatory definition of what constitutes a valid religious belief.

Not so with the Citywide Panel, which arbitrarily tacked on a pretextual and unsupported assertion of "undue hardship" as an alternative reason for denial to most applicants, even those that already

were approved to work remotely, such as Amoura Bryan. [*Kane* ECF No. 123 ¶¶ 12-14, 21, 23]. In fact, the City admitted that the Panel did not rely on any objective evidence to make these decisions and did not even follow the New York State and New York City Human Rights Laws, which impose a higher undue hardship standard than Title VII, in violation of this Court's orders. [*NYFRL* ECF No. 81-29 at 65:23-67:5; A428:19-A430:12]. Nor did the City apply Title VII standards on religious accommodation.

Last, equal or not, the City cannot maintain one policy for Christian Scientists and another for Jews and others whose religious views are deemed unacceptable. To survive an Establishment Clause challenge, the City would need to show that the exclusion of most religions from eligibility is necessary to serve a compelling state interest and narrowly drawn to achieve that end. *Widmar v. Vincent*, 454 U.S. 263, 263 (1981). And this Court has already held that the City cannot meet this burden. *Kane*, 19 F.4th at 169.

## IV. The district court in *Kane* abused its discretion by dismissing the as-applied claims.

The district court in *Kane* further abused its discretion by dismissing and denying relief on the as-applied challenges, even though this court already held that the *Kane* Appellants are likely to succeed on

the merits of their claim. In dismissing these cases, the lower court failed to correctly apply burdens, drew improper inferences, and relied on clear errors of law.

### A. "Undue hardship" cannot serve as the basis for dismissal.

First, the lower court in *Kane* abused its discretion by dismissing most *Kane* and *Keil* Appellants' cases on the ground that the Citywide Panel properly denied accommodation based on undue hardship, because "Plaintiff's inability to teach their students safely presents more than a de minimis cost." [ECF No. 184 at 39].

But, "on a motion to dismiss the issue of undue hardship is irrelevant. The concept of 'undue hardship' is a substantive defense employed in the context of a motion for summary judgment or at a trial on the merits." *Trans World Airlines Inc v. Hardison*, 432 U.S. 63 (1977). Appellants established a prima facie case alleging improper denial of accommodation.[5] It was improper to dismiss their case based on

---

[5] Appellees did not argue, and the district court did not find, that Appellants failed to make a prima facie case under statutory standards. To state a claim for religious discrimination under both the NYSHRL and the NYCHRL, plaintiffs must allege that "'(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement.'" *Stavis v. GFK Holding, Inc.*, 769 F. Supp. 2d 330, 335 (S.D.N.Y. 2011) (quoting *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)). Nor could they, given that Appellants pled them comprehensively in the Complaint. ECF

Appellees conclusory and unsupported claim that they could not reasonably accommodate them. *Zavala v. Dovedale Sales Corp.*, No. 2:05-cv-01825-ADS-ETB, 2006 U.S. Dist. LEXIS 112761, at *10-11 (E.D.N.Y. Mar. 11, 2006).

To the extent that undue hardship can be considered in the preliminary injunction motion, the standard is not *de minimis* burden. Government employers are subject to First Amendment and statutory standards in assessing undue hardship. "Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 455 (2008). In *Kane,* this Court already held that the First Amendment also applies to the "fresh consideration." "It is, of course, true that the citywide panel must abide by the First Amendment. By ordering the citywide panel's proceedings to abide by other applicable law, the Motions Panel Order does not (and could not) suggest that the First

---

No. 102 ¶¶ 262, 289, 313, 327, 479, 498, 507, 509, 519-21, 527, 532, 549-51, 565, 577-81, 586, 588, 610-12, 618 642, 644-47, 672-79, 703-710, 737-40, 763-68 (alleging bona fide religious beliefs conflicting with employment requirement); *Id*. ¶¶ 263, 265, 292, 294, 297, 314, 318, 320, 327, 480, 483, 500, 522, 553, 582, 613, 616-618, 642, 669-70, 693, 712, 715, 748, 769-71 (alleging that plaintiffs informed the DOE of this belief); *Stavis*, 769 F. Supp. 2d 330, ¶¶ 272, 276, 281, 300, 306, 321, 330, 510, 513, 535, 537, 567-68, 571, 591, 596, 621, 625, 630, 650, 657, 683-85, 687, 721, 729, 753-54, 777, 780, 489-91, 493-94 (alleging that Plaintiffs were disciplined for failing to comply with the vaccine mandate).

Amendment is somehow inapplicable to those proceedings." *Kane v. de Blasio*, 19 F.4th 152, 175 (2021).

This Court also commanded the Citywide Appeals Panel to adhere not just to Title VII standards, but also the New York State and City Human Rights Laws, which have a far more onerous "undue hardship" standard than Title VII and must be analyzed independently. [N.Y. Exec. Law § 296 (McKinney); A248-49, 51-52 ¶¶ 936-42, 48-54] ("undue hardship" shall mean an accommodation requiring significant expense or difficulty). Mr. Eichenholtz admits the Panel did not follow this command, instead assessing undue hardship only under the less rigorous *de minimis* burden standard. [*NYFRL* ECF No. 81-29 at 65:23-67:5; A428:19-A430:12].

Under any of the statutory standards, the City did not meet its burden of showing through the best available objective evidence that it would be an undue hardship to accommodate any of the employees at DOE or the other departments. Mr. Eichenholtz admitted that the Panel did not rely on *any* objective evidence to support undue hardship determinations. [A432, A435-36, A452, A455, A466, A474]. Moreover, Mr. Eichenholtz admitted that none of the departments even provided any individualized assessment of undue hardship to the panel. [*NYFRL* ECF No 81-29 at 237-39; A446].

For example, the City provided *no* evidence that religious employees posed a direct threat because of their religious need to opt out

of COVID-19 vaccination and thus need to be segregated. *Contra Hargrave v. Vermont*, 340 F.3d 27, 35–36 (2d Cir. 2003) (in a direct threat analysis, employers must consider the best available objective evidence, and, after employing a four-part test, show that the harm is serious and "likely" to occur, not remote or speculative). By contrast, in support of their motions for injunctive relief, Appellants in each case provided the lower courts with extensive evidence and offers of testimony reflecting the fact that they pose *no* direct threat based on their need to remain unvaccinated. [*See, e.g.*, *Kane* ECF No. 17-6 to 17-8, 18, 19, 85-2 to 85-8].

The Citywide Panel also denied applicants who already worked remotely based on "undue hardship" [*Kane* ECF No. 123 ¶¶ 12, 14], and failed to demonstrate why at least 162 employees (many of them classroom teachers) were able to be accommodated under the Stricken Standards, while Appellants cannot be. Nor has the DOE explained why more teachers cannot teach remotely. Thousands of students are still engaging in remote instruction and need teachers, and the various off-site remote accommodation sites for the unvaccinated have ample space to accommodate more teachers, including one site currently only being used to accommodate approximately 30 DOE employees when it has the capacity to accommodate up to 312. [*Kane* ECF No. 137 ¶¶ 26, 28-30].

The Citywide Panel's unsupported undue-hardship determinations are so arbitrary that they cannot even survive Article 78 review, as evidenced by recent state court decisions reinstating teachers and other

municipal employees denied by religious accommodation by the Panel. *See, e.g.*, *Loiacono*, Index No. 154875/2022, NYSCEF Doc. No. 46 at 5 (Sup. Ct. New York Cnty. 2022) (reinstating DOE employee denied based on undue hardship and finding the Citywide Panel's determinations arbitrary and capricious). They certainly fail strict scrutiny.

### B. COVID-19 Vaccination is not a Condition of Employment for Exemption-Eligible Employees.

The district court in *Kane* also erred dismissing the as-applied challenges on the theory that vaccination is a condition of employment. DOE policy, and the Mandate itself, permit exemption from vaccination on medical and religious grounds. Thus COVID-19 is *not* a condition of employment for exemption-eligible employees.

In *Broecker v. N.Y.C. Dep't of Education*, the Court affirmed that vaccination was not required as a "condition of employment" for persons who received exemptions because "the City amended the Vaccination Mandate to allow for reasonable medical and religious accommodation" after "City unions[ ] brought a challenge to the Vaccination Mandate, including the omission of religious and medical exemptions on constitutional and other grounds." *No. 21-CV-6387(KAM)* (*LRM*), 2022 U.S. Dist. LEXIS 25104, at *44 n.13 (E.D.N.Y. Feb. 11, 2022) (emphasis

supplied). Similarly, in *O'Reilly v. Bd. of Educ.*, 2022 NY Slip Op 30173(U), ¶ 4 (Sup. Ct., N.Y. Cnty. Jan. 20, 2022), which the district court also cites, the court dismissed the case because, unlike here, the petitioner "[did] not allege that respondents improperly denied her requested exemption or accommodation." *Id*. Not so here.

### C. Michael Kane's claims were improperly dismissed.

Before he was placed on leave without pay last October, Michael Kane worked as a special education teacher in the New York City public School system for over 14 years. [A82 ¶ 20]. His religious beliefs, which the DOE and City acknowledged are sincerely held, are grounded in personal communion with God, prayer, and the sacred teachings of Buddha, Christ and other spiritual guides. [A124 ¶ 222-25]. Through his spiritual work, and guidance from prayer, Kane was able to free himself from addiction by giving up pharmaceutical interventions that he had been using to unsuccessfully treat his conditions and rely on his relationship to God instead to guide him. *Id*. He continues to turn to God, and in accordance with his guidance from prayer, has not had any vaccines for over twenty years. *Id*.

In his initial hearing before the arbitrator's panel, DOE officials argued that Kane should be denied accommodation because his religious beliefs are not supported by Pope Francis. [A125 ¶232]. He was denied accommodation last October and placed on leave without pay. In his "reevaluation" by the Citywide Panel, he and all other original Appellants save one, was denied again, after being issued a boilerplate email that stated, "does not meet criteria." Summaries purporting to show reasons provided by the City's attorneys in anticipation of litigation allege that the reason for denial was that: "[t]he record before the Panel demonstrated that the employee's sincerely held religious beliefs, which the panel does not question, are not preventing the employee from vaccination. Indeed, the appellant explains his under-standing of the religious doctrine articulated is that it is ultimately the appellant's choice to take or abstain from food and medication based on his factual determination as to whether he considers the item to contain pollutants..." [A125 ¶236; ECF No. 122-2 at 4].

Kane's religious accommodation application explained that the determination of whether something was a pollutant came from direct guidance from prayer. [A125 ¶235]. It is hostile to religion to characterize

reliance on guidance from prayer as non-religious personal choice. For many religious people, guidance from prayer is not a choice – it is a requirement. Yet, despite great personal sacrifice and pain, Kane continues to follow the guidance from prayer, which is a testament to how religious he is. The Panel's reasons violate constitutional and statutory standards and show impermissible animus. *Seeger*, 380 U.S. at 185; 29 C.F.R. § 1605.1. Nor does the Panel's backup assertion that "even assuming appellant had established a valid basis for a reasonable accommodation, the panel believes the DOE satisfied what is necessary under the law to demonstrate undue hardship" (as discussed *supra*). Such defenses are irrelevant on a motion to dismiss and were not supported by objective non-conclusory evidence in any event.

Last, even if he was properly denied accommodation in late December, he has damages from the months before, when he was suspended without pay under the facially discriminatory policy. Kane and his colleagues are entitled to damages from October (when they were placed on leave without pay pursuant to the Stricken Standards) through at least December of 2021 (when they received the new denial), as well

as declaratory relief that the DOE applied an unconstitutional policy to them and attorneys' fees.

### D. William Castro's claims were improperly dismissed.

William Castro is an administrator in the Bronx Borough Office who has been educating New York City public school children for over twelve years. [A126 ¶ 5]. Castro grew up in public housing and attended New York City public schools. [*Id.*]. His dream was to become an educator and serve as a role model and inspire disadvantaged children to succeed in life. [A126-27 ¶¶ 243-49]. Now he is unable to interact with any students.

Castro was denied under the Stricken Standards. Though acknowledging that his beliefs were sincere, and that he met all of the defined criteria from the Stricken Standards, the DOE representatives argued that he should nevertheless be denied because his church, which is not a Catholic church, holds belief contrary to those of the Catholic Pope. [A129 ¶ 265]. The DOE also argued that because former Appellee Commissioner Chokshi says that aborted fetal cells were not used in testing or development of the vaccines (which is incorrect), Castro's religious concerns in that regard were invalid. [*Id.* ¶¶ 266-67]. Castro

was denied accommodation and removed from the payroll on October 18, 2021. [*Id.* ¶ 269].

In his application to the Citywide Panel, Castro explained that his abortion related concerns did not form the sole basis of his religious objection. The Citywide Panel admitted that Castro's beliefs were sincere, and he should have been accommodated; it reinstated him, with the condition that he be segregated from students. [A129 ¶ 271].

The district court improperly held that because he was finally accommodated months after the initial improper denial, Castro's case should be dismissed. But Castro asserted damages resulting from the three months suspension, including severe health consequences resulting from the stress, and severe financial and emotional damages resulting from his inability to elect appropriate health care coverage during his suspension, which meant that his pregnant wife could not get the care she otherwise would have been able to receive had the improper suspension never occurred. [A130-31 ¶¶ 273-283]. Moreover, Castro properly alleged that his continued segregation from students is not supported by direct evidence and is having adverse consequences on his

career and fulfillment. [*Id.*] And, at the very least, Castro is entitled to declaratory relief for the improper suspension and attorneys' fees.

### E.    Margaret Chu's claims were improperly dismissed.

Before she was suspended, Margaret Chu taught ENL in East Harlem. Previously, she taught special education for 12 years. [A130-31 ¶¶ 274-87]. Chu is a devout Catholic, whose religious beliefs regarding COVID-19 vaccination are grounded in her objection to indirect participation in abortion and her responsibility, as a Catholic, to follow her moral conscience. [A131-32 ¶¶ 289-94]. Chu's parish wrote a letter in support of her sincere religious objection. [A131 ¶ 290]. DOE representatives and the arbitrator harassed Chu about her beliefs in the arbitration hearing, stating that she must be denied because the views of Pope Francis were more likely to be correct than Chu's moral conscience. [A131-32 ¶¶ 289-94]; *Kane* ECF No. 22 ¶ 12]. She was denied accommodation and suspended without pay in October 2021.

Though the Citywide Panel found her beliefs sincere, they too denied her application on the ground that following one's moral conscience is not "religious in nature" for the same reasons stated in Kane's denial – to wit, that because the belief is derived from direct guidance from the Holy Spirit, rather than the dictates of dogma, it allows personal choice and is thus undeserving of accommodation. [A132 at ¶298]. Essentially, the Citywide Panel denied her request on the same unconstitutional basis as the arbitrators had originally. [A132-33 ¶299].

**F.    Heather Jo Clark's claims were improperly dismissed.**

Heather Jo Clark was a DOE Central Offices Employee. Raised as a devout Christian, Clark left the church after learning about horrific sexual abuse and the related cover-ups. Long ago, however, after becoming seriously ill, Clark visited a Christian healer, who healed her by laying hands on her and renewing her commitment to Christ and God. Clark has been a devoted Christian since, but has opted to follow a primarily personal path to Christ given her concerns about the church. Clark's sincere religious objection to vaccines is grounded in guidance form the Holy Spirit as well as her objection to the use of aborted fetal cell-lines in the production and testing of vaccines [A133-34 ¶¶308-13].

Clark timely submitted her application under the Stricken Standards and received back the autogenerated email from the DOE stating that it would be an undue hardship to accommodate her since it would not be safe for her to enter any school building. [A134 ¶315]. This does not make any sense. Clark was already working remotely for the DOE since 2020. Moreover, she is not a classroom teacher, and her physical worksite, when not working remotely, did not require her to enter any school building where children attend. [A134 ¶¶314-16]. Clark

timely filed an appeal but was denied, without even being given a zoom hearing, without explanation. [A134-35 ¶317].

The Citywide Panel also denied Clark. While acknowledging that her beliefs are sincere, they reasoned that beliefs derived from the Holy Spirit are not "religious in nature" because such a religious creed allows Clark to follow individual guidance. [A135 at ¶319]. No undue hardship claim was tacked on.

The district court made a clear error of law in holding that this reasoning was sufficient under statutory or constitutional standards. [ECF No. 184 at 38 n. 30]. When Appellees castigate Appellants' views as sincerely held but "not religious" because they were derived from a personal relationship with Spirit or God rather than denominational dogma, Appellees violate the Constitution. Such determinations indicate impermissible entanglement with religious questions, *Cantwell*, 310 U.S. at 310, and violate other statutory and constitutional standards. *See, e.g.,* S*eeger,* 380 U.S. at 185; 29 C.F.R. § 1605.1. The district court's reliance on *Bind v. City of New York,* 2011 W.L. 4542897 at *10 (S.D.N.Y. September 20, 2011) is confusing. That case held that in certain cases, an employer is justified in questioning an applicant's sincerity. Here,

sincerity was not at issue, as the panel conceded sincerity – the issue is whether guidance from the Holy Spirit is religious in nature or not, a question which the government clearly has no right to second guess.

Clark is suffering serious irreparable harm. She lost her rent-controlled apartment as a result of her suspension and termination, and had to move out of state to live with family. A135 ¶¶ 322-24. She is deeply depressed and suffering adverse health consequences from the lack of health insurance. *Id*. ¶ 324. Like her colleagues above, she is likely to succeed on her claims, and her case should never have been dismissed.

## G. Stephanie DiCapua's claims were improperly dismissed.

Stephanie DiCapua taught physical education in Staten Island. Due to her deeply held religious beliefs, DiCapua is unable to take a COVID-19 vaccine. Her beliefs against vaccines are long-standing, and are also reflected in the teachings of her Christian church. DiCapua's pastor sent a letter in with her application affirming her sincerity and pointing out scripture that the church believes supports their religious position on this issue. [A136 ¶¶ 326-27].

DiCapua's application was summarily denied, and despite her timely appeal, she was denied the right to a hearing without explanation as well. On October 4, 2021, she was suspended without pay. [A136 ¶¶328-30]. After this Court ordered fresh consideration, DiCapua

submitted a six-page, heartfelt letter detailing her sincere religious beliefs and the position of her church regarding vaccination. Her objections are long-standing, well-documented, and grounded in her reading of her obligations under the Bible and her understanding of what her faith requires of her, and what her Church requires of her. [A137 ¶¶335-37]. The Citywide Panel does not appear to have read her application; it denied her on the basis that her decision was allegedly about opposition to the Mandate, and an allegation that she "did not provide, beyond the most general response, any examples of other medication or specific vaccines she has refused due to her articulated religious beliefs." [A137 at ¶338]. Nothing in her submissions reference any opposition to the mandate. And, her letter was full of examples of other vaccines and medications that she avoids due to her religious beliefs, including, for example, her decision to forego the flu vaccine. *Id.* The Citywide Panel never interviewed Ms. DiCapua (or any other applicant) or had any reason to suspect that her opposition was not related to the religious concerns she detailed in her letter. Moreover, the Panel conceded that her religious beliefs were sincerely held. [ECF No. 122-2 at 4].

### H.    Robert Gladding's claims were improperly dismissed.

Robert Gladding taught for 20 years in the New York City public school system before he was denied religious accommodation in October 2021.  [A139 ¶¶354-55]. His mother lived in Germany during World War

66

II, where she witnessed the horrific effects of religious intolerance and adherence to church dogmas over the direct teachings of Christ. She raised Gladding to find God personally, rather than through the dictates of fallible human leaders [A139 ¶358].

Gladding is deeply religious, and makes all important decisions in accordance with the guidance he receives from God through prayer and meditation. He became a teacher in response to a calling he received from God. He has also long declined all vaccination due to his religious guidance from God, and been guided to fast and pray through illnesses rather than take medication. [A139-40 ¶359-367]. He noted in his religious exemption applications that the most important reason for his objection to vaccination came from direct guidance from God: "Most importantly, I have sought guidance directly from God, and He has answered me through prayer clearly and unequivocally – it is a sin to get vaccinated, and I cannot do it. I have learned to listen when God guides me this way and I must do so now." [A140-41 ¶367].

Gladding was summarily denied under the Stricken Standards, and also denied the right to an appeal hearing without explanation. Like Kane, Chu, Clark, among others, Gladding was also denied by the Citywide Panel on the ground that his religious opposition, derived from direct guidance from God, was not religious in nature because it allegedly allowed personal choice. [A141 ¶368]. For the reasons articulated above,

the reasons for denial do not meet statutory standards, show animus and are unconstitutional.

## I. Nwakaego Nwaifejokwu's claims were improperly dismissed.

Nwakaego Nwaifejokwu was a First-Grade teacher in the Bronx and taught in the New York City public school system for 12 years. Before that, she worked for many years with Head Start. [A141 at ¶375-76]. She was summarily denied under the Stricken Standards, and also denied the right to have a zoom hearing without any explanation. [A142 ¶382]. The Citywide Panel acknowledge that Nwaifejokwu "holds a sincerely held religious belief sufficient to justify a reasonable accommodation" but denied her nonetheless on the unsupported claim that it would be an undue hardship to accommodate her. For the reasons detailed above, it was an error of law to dismiss Nwaifejokwu's claim on this basis, as claims of undue hardship are not a basis for dismissal. And, the conclusory undue hardship statements are not contradicted by the Amended Complaint and supporting documents, and do not meet the statutory standards in any event.

## J. Ingrid Romero's claims were improperly dismissed.

Ingrid Romero taught for over 18 years at the same elementary school in Queens that she attended as a child. [A144 at ¶396]. She has always been a deeply religious person. But, in or around 2018, after her husband got cancer, she recommitted to God on a very deep level. [*Id.* at

¶406]. Romero was summarily denied religious accommodation under the Stricken Standards, and also denied a zoom hearing without any explanation. [*Id.* at ¶408]. The Citywide Panel also denied her application, citing as the main reason that Romero got a flu shot years before she recommitted to God, and before she learned about the use of aborted fetal cells in vaccines, which is her primary objection to the COVID-19 vaccine. [*Id.* at ¶409]. Mr. Eichenholtz acknowledged that where an employee is born again, or has a recommitment to religion, prior inconsistent conduct is not a valid basis of a finding of insincerity under governing standards. [A436:22-A437:17]. Yet, the Citywide Panel violated statutory and constitutional standards by finding that it was sufficient to deny relief here.

## K. Trinidad Smith's claims were improperly dismissed.

Trinidad Smith was a special ed teacher for over 20 years. Though she remains a devout Catholic, Smith decided to leave the Church due to the sex abuse scandals and practices her Catholicism through direct communion with spirit and God. [A147 ¶421]. She objected to the Stricken Standards, which facially discriminate against her and others with personal religious practices. Rather than submit to the unconstitutional standards, she joined this lawsuit demanding that the City provide a constitutional process for religious accommodation. [*Id.* at ¶422-23]. This Court held that she was likely to succeed on her claims, though she had not filed an application under the Stricken Standards.

Accordingly, Smith was allowed to submit an application to the Citywide Panel, demonstrating her sincere religious beliefs.

Smith's letter demonstrates sincere religious objections to the COVID-19 vaccine. Adopted from an orphanage in Bogota, Colombia as a child, Smith explained that she was raised by devout Catholics. As a child, she was never taken to a doctor but healed instead through faith and food. As an adult, Smith "continues to turn to prayer for any medical decision" and has received clear guidance from prayer not to take any vaccines, including the COVID-19 vaccine. [A146-48 ¶¶416-428]. She noted that she does not even take any medication and has never been vaccinated.

The Citywide Panel denied her application, holding that her beliefs, while sincere, were not preventing her from taking a vaccination because she allegedly "refused to rule out the use of such medications if ultimately it was a necessary medical intervention for him *[sic]* instead noting, thus far, he *[sic]* has had no such occasions to require medication and had not previously been vaccinated." [A148 ¶ 428]. This basis for denial shows an unconstitutional substitution of judgment about what Smith's religion requires of her, crossing the line from a sincerity inquiry into a verity inquiry. *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir. 1996). Smith already explained that she makes these decisions pursuant to guidance from

prayer, and thus far, has always been instructed to decline vaccines and even medicine.

The district court erred by dismissing Smith's claim on the ground that she failed to apply under the Stricken Standards. [ECF No.184 at 37.] This Court already held Smith is likely to succeed, despite the fact that she did not submit to the unconstitutional Stricken Standards. And that policy was found unconstitutional, as Smith alleged. Employees are not required to submit to a facially discriminatory policy that they do not qualify for when it is clear such application would be futile. Smith had every right to seek court intervention rather than submit to the facially discriminatory policy, and the district court abused its discretion in holding otherwise. Moreover, exhaustion is not required in civil rights suits, and, Smith's constitutional rights were violated by the Citywide Panel as well as the original policy, under which she was suspended. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 507 (1982).

## L. Natasha Solon's claims were improperly dismissed.

Natasha Solon is an Assistant Principal in the Bronx. She was denied accommodation under the Stricken Standards, denied a hearing without explanation, and suspended without pay on October 4, 2021. Solon is a deeply religious person. Her grandfather presided over the Mt.

71

Olivet Baptist Church in Brooklyn until his death, and Solon was raised in that church. [A150 ¶¶ 448-54]. Solon prays about all major medical decisions and consults the Bible to determine her religious responsibilities. She has declined life-saving treatments including blood transfusions and other vaccines on the basis of guidance from prayer in the past. [A150 ¶451].

Solon was not originally a plaintiff in this lawsuit. Nonetheless, after this Court remanded the *Kane* case, the Citywide Panel purported to give her application "fresh consideration." But they declined to issue a decision, keeping her on leave without pay for months while a decision pended. [ECF No. 162 at 2]. Solon applied to over 60 jobs while suspended without pay. Though she is eminently qualified, she barely received a callback, much less any offer. Finally, an interviewer told her that while she would love to hire her, she could not, because the DOE had attached a problem code indicating that she was ineligible due to "misconduct." This code is typically attached to people who have committed serious crimes, like child abuse. Solon investigated and confirmed that the Code was indeed attached to her file by the DOE [A151 ¶¶458-64; ECF No. 162 at 2-3].

The coercive effect of being deprived of income or even of the ability to work outside of New York City at neighboring schools unless she violated her faith was staggering. Solon tried desperately to withstand it, as her home went into foreclosure, and she had to pull her son out of

college because she could not afford the parental contribution. Finally, as she and her family were on the brink of eviction, and literally starving, she submitted to the coercion and violated her faith to keep her job and save her family. [ECF No. 162 at 2-3]. Her problem code was immediately removed. [*Id.*]. She describes the trauma that this coercion caused and continues to cause as "spiritual rape." She does not feel safe at her job or in society, especially while the DOE is allowed to continue imposing the coercive conditions. [*Id.*]

The district court erred as a matter of law by dismissing her claims as "moot" because she had to violate her faith to keep her job. This is precisely the type of claim that is capable of repetition but able to evade review and Solon lives under constant threat that booster shots or other invasive requirements will be imposed, forcing her through the nightmare again. *Roman Cath. Dioceses of Brooklyn v. Cuomo,* 141 S. Ct. 63, 68 (2020). Moreover, Solon was deeply harmed. She is entitled to declaratory relief and damages—including back-pay for the months she was suspended under the Stricken Standards.

## M. Amaryllis Ruiz-Toro's claims were improperly dismissed.

Amaryllis Ruiz-Toro is an Assistant Principal who has been educating children for almost two decades. In her zoom appeal, which took place after the initial TRO hearing in her lawsuit, DOE

representatives argued that she should be denied because her Christian beliefs conflicted with those of Pope Francis. Ruiz-Toro is not a Catholic. The arbitrator said that many of his colleagues on the panels were following the DOE's advice and denying people who belong to minority churches, like Ruiz-Toro, but that he, as a Southerner, appreciated that there were independent and non-denominational churches. He granted her an exemption. [A154 ¶¶482-87].

Though she remains on the payroll, Ruiz-Toro has been segregated from students and suffers ongoing discrimination, harassment, and retaliation as a result of her request for religious accommodation. [A154-55 ¶¶ 490-94]. Worse, she is on the brink of losing her ability to become a principal, because the window to get her mentoring and supervisory hours closed, and she is barred from entering school buildings to obtain them. [*Id*]. Also, she is barred from ELI trainings, necessary for completion of her SBL license, because she is not allowed into classrooms and they will not make an accommodation. [A155 ¶ 491].

Ruiz-Toro has had COVID and poses no danger to anyone around her. She is willing to test regularly. No evidence was submitted to support a finding of undue hardship justifying her exclusion from classrooms and

trainings. While she may not be entitled to her preferred accommodation, neither can the DOE segregate and retaliate against her, especially without meeting their burden of proof that she constitutes a direct threat.

## N.    Matthew Keil's claims were improperly dismissed.

Mathew Keil worked for the DOE for over 20 years. He is an ordained deacon in the Russian Orthodox Church, and serves as such in the Saint Sergius Chapen at the Synodal Headquarters of his denomination in New York City. He has spent many summers living in Monastery and has made many religious pilgrimages. [A155-56 ¶¶ 495-97]. Keil submitted a lengthy, well-articulated religious exemption letter. [A155-60 at ¶ 495-505]. As described in the letter, in 2007, Keil's religious objection to all vaccinations arose after learning that Geronda Ephraim, the spiritual head of many Orthodox monasteries in North America, enjoined monks from getting vaccinated. After studying Scriptures, prayer, and engaging in other spiritual disciplines, Keil agreed and has not had a vaccination or given any vaccinations to any of his six children since. [*Id*].

Keil was summarily denied under the Stricken Standards. At his hearing, the DOE representative questioned Keil's sincerity, alleging

that Tylenol and Advil are manufactured using aborted fetal cell lines. Keil said he was unaware of the connection. [A159-60 ¶¶503-505]. In fact, Mr. Eichenholtz later admitted in depositions that the City has no evidence that the City's position on Advil or Tylenol is true. [*NYFRL* ECF No. 81-29 at 213:19-214:8]. But Keil stated that he *was* aware of several other products that are manufactured or tested using aborted fetal cell lines, and he *does* avoid those because of his sincerely held religious objections. [*Id.* at ¶505]. The DOE representative said that these beliefs could not be religious in nature, only personal, because some other Orthodox Christians do choose to get vaccinated. [A160 ¶508].

The Citywide Panel also denied his application, stating that "[o]ne panel member found that appellant articulated a sincerely held religious belief that precludes vaccination and be *[sic]* entitled to a reasonable accommodation . . .." and the others denied based on undue hardship. [A273]. No objective evidence has ever been provided for this finding, and no explanation given for why 162 DOE employees, including many classroom teachers, could be accommodated under the Stricken Standards but others, like Keil could not be similarly accommodated. "Undue hardship" is also a defense, not a basis for dismissal.

**O.  John De Luca's claims were improperly dismissed.**

John De Luca was a teacher who worked remotely from 2020-2021. He is a devout Catholic and opposes COVID-19 vaccines because of their use of aborted fetal cell lines in testing and development. [A162-63 ¶¶516-21]. With his timely application for religious accommodation, De Luca submitted a letter from the Catholic pastor of his church, affirming the central Catholic teaching that everyone has the right and responsibility to follow their moral conscience, and that De Luca's objection to vaccination arose from his religious moral conscience. [A163 ¶523]. De Luca was summarily denied.

At his hearing, the DOE representative stated that denial was proper because De Luca's religious beliefs differ from the Pope's and he is wrong about the use of fetal cell lines [A163-64 ¶¶525-30]. Arbitrator Peek stated that despite evidence submitted by De Luca to the contrary, that "the research" "definitely proves" that the vaccines were not produced using any fetal cell lines (he is wrong) and stating to De Luca, "when you find out I'm right, you'll understand." [A164 ¶526]. Despite De Luca's explanation that his religious obligation was to follow his moral conscience, regardless of what the Pope or any other person believed,

Peek harassingly asked De Luca, "If the leader of the Catholic Church, or one of the major leaders of the Catholic Church, says you have a moral obligation to be vaccinated, how do you, in your mind, say that that would be against the Word of God, and you would be condemned for that  and deemed a murderer, when your religious leader says you should do it?" [A165 at ¶532]. He then questioned the legitimacy of De Luca's beliefs, stating that documents he had provided containing Church positions on the centrality of moral conscience were from the 1990's and "none of them dealt with vaccination" so De Luca must be wrong. [*Id.* at ¶533]. De Luca was denied accommodation.

The Citywide Panel denied his same application on the grounds of undue hardship, which is improper, as discussed *supra*.

### P.  Sasha Delgado's claims were improperly dismissed.

Sasha Delgado worked for the DOE for 15 years and was an Individualized Education Program ("IEP") teacher. From 2020-2021, she worked remotely. [A167 at ¶¶540-41]. Delgado is a devout born-again Christian with sincere religious objections to vaccination. [A167-68 ¶¶540-49]. One reason, shared by her pastor, is that she does not believe in defiling the sacred blood of Christ with vaccines developed with mRNA vaccine technology, or vaccines that are tainted by connection to aborted fetal cell lines, such as the Johnson and Johnson vaccine. [A168 ¶550-

51]. Delgado takes her religious beliefs against defilement of God's temple (her body) so seriously that she does not eat pork, drink alcohol, or consume anything that could pollute her mind and body, as she understands from prayer and reading of scripture.

The DOE denied her application under the Stricken Standards. At the hearing, DOE representatives admitted they applied a "very narrow" view of what constituted a valid religious exemption—in violation of the law, which requires a broad understanding of what constitutes valid religious views. Because the DOE took the position that "there's no theological objection raised by many if not all of the denominations in Christianity to the vaccine," Delgado should be denied, even though her Pastor's letter noted that her Pastor agrees with her position against vaccines. [A169-70 ¶¶557-63].

The DOE representative then stated that the Appellee Chokshi had submitted a letter to the arbitration panel stating "I don't believe that is a basis to support this exemption request" because he believed that "no fetal cells, tissue, or cell lines are used in the production of Pfizer or Moderna vaccines" and any fetal cell lines used in the others were "only used in the early research phases" in a similar manner to other popular drugs such as Tylenol so were too indirect to merit religious objection. [A170-71 ¶564]. Accordingly, Delgado was denied.

The letter from the Commissioner shows unconstitutional animus and violation of the Establishment Clause, as it shows that the policy

makers issuing the mandate were passing judgment on the legitimacy of religious beliefs, and were involved in the DOE's original denials under the Stricken Standards. This fact was not argued before this Court in the interlocutory appeal.

The Citywide Panel also denied accommodation, stating in the Summaries that the record "casts doubt on appellants claim that the religious belief she articulated would preclude her from vaccination" because she was not aware whether Tylenol and other drugs identified by Appellee Chokshi as potentially using aborted fetal cell lines. [A171-72 ¶569]. Nothing in the record showed she ever even took Tylenol. And, such an adverse inference is improper. The use of fetal cell lines in COVID vaccines was widely publicized. Many reasonable and intelligent members of society researched the issue before deciding whether to take it. [A172 ¶570].

### Q.    Dennis Strk's claims were improperly dismissed.

Dennis Strk was a social studies teacher in Queens for 13 years. He has well-documented and sincere religious objections to vaccines, including COVID-19 vaccines. [A173-78 ¶¶574-94]. One basis is religious obligation to safeguard the sanctity of the blood against defilement with vaccinations that contain or were produced or tested using aborted fetal cells, animal blood or other impure and sinful substances. [*Id.*] He was

denied relief under the Stricken Standards, and the DOE accused him of being "wrong" about his belief that the vaccines used aborted fetal cell lines in testing or development during his hearing. The Citywide Panel also denied relief. In the Summaries, attorneys claimed that this was because he allegedly "does not deny using medications that are tested on fetal cell lines, only that he tends to 'avoid' them and pursues alternatives if available. The submissions demonstrate that the appellant is making fact-based decisions...and...relying on incorrect facts regarding COVID-19 vaccines, such as that all COVID vaccines contain fetal cells." [A176-77 ¶592].

This reasoning violates Constitutional and statutory standards for several reasons. First, even if Appellant Strk believed that COVID vaccines directly contain fetal cells (which is not what he said) it is unlawful for the government to deny religious accommodation based on a factual dispute. This issue arose in *Jolly v. Coughlin* where this Court held that the state's dispute about whether a tuberculosis test contained "artificial" ingredients was not a valid basis for denial of a religious exemption. 76 F.3d at 476.

Second, counsel mischaracterizes Strk's beliefs, stating that he was denied because he "tends to avoid" using "medical products and food" connected to abortion but "he does not deny using them." In fact, Strk's submissions are clear: "I avoid medical products and food that are

researched, developed, tested and/or produced using aborted human fetuses" [A177-78 ¶594]. Requiring the words "I deny" rather than "I avoid" is the type of absurd hairsplitting prohibited by the First Amendment, and violates statutory and constitutional standards.

### R. Sarah Buzaglo's claims were improperly dismissed.

Sarah Buzaglo is a dedicated teacher who worked for the DOE since 2017, much of the time remotely. [A179 ¶¶ 599-600]. She is an Orthodox Jew with sincere religious objections to vaccination, which were articulated in great detail. [A179-87 ¶¶601-17]. Her rabbi submitted a letter in support of her exemption request, stating that she cited authentic scriptural sources that underlie valid objections under Torah law, and he and the congregation "categorically oppose this vaccine as a matter of religious tenet." [A187 ¶617].

She was denied relief under the Stricken Standards. At her hearing, the DOE shared a link from the Jerusalem Times stating that the Sephardic Chief Rabbi of Israel had spoken in favor of vaccination, and therefore Buzaglo asserted should be denied. [*Id*. ¶619]. Though Buzaglo patiently explained that she did not follow that rabbi, and the

great diversity in the Jewish faith [*Id*. ¶618], she was denied accommodation.

Buzaglo submitted her 12-page letter, detailing her sincere religious objections, and including her rabbi's letter to the Citywide Panel. The Summaries assert the Panel denied her because she mentioned at one point in the letter that she believed that the Mandate was unconstitutional towards sincere religious objectors like herself, which they said many courts refuted [A188 ¶ 626]. The Panel further allege that her factual beliefs about vaccination conflict with those of Commissioner Chokshi. [*Id*]. These reasons violate constitutional and statutory standards. Buzaglo's beliefs about the constitutional harm she was suffering do not undermine her sincere religious beliefs based on a detailed articulation of Judaic law, Scriptures, and her advice from her rabbi, who agrees with her interpretation. Religious people are entitled to understand and assert their constitutional rights.

And it is impermissible to deny her accommodation on the ground that Commissioner Chokshi disagrees with her factually about the relevance of the vaccine's use of aborted fetal cells. Commissioner Chokshi has no religious authority to define the relevance of this

connection to religious people. And he violates the Establishment Clause by attempting to resolve this religious dispute. Moreover, it is improper to "evaluate the truth or correctness of an individual's sincerely held religious beliefs." *Smith v. Bd. of Educ.,* 844 F.2d 90, 93 (1988). Buzaglo faces severe ongoing unconstitutional harm from these actions. She lost her home in New York City, and was forced to become a religious refugee, moving to Israel, where family was willing to take her in so that she would not starve.

### S. Eli Weber's claims were improperly dismissed.

Eli Weber was a teacher with the DOE for 20 years. He is a devout Chassidic Jew with a well-documented commitment to his faith and well documented religious objections to vaccination. [A190-93 ¶¶633-53]. For example, Weber attends synagogue every day and prays three times a day, beginning the day at 3 a.m., and studying Jewish books for at least an hour before he attends synagogue then goes to work. [A191 ¶¶636-37]. Under Jewish law, and according to his sincerely held religious beliefs, Weber is bound by the authority of his rabbi. In his letter accompanying application for religious exemption, his rabbi wrote: "it is categorically forbidden by Jewish religious law to be injected with said vaccine...The

prohibition is Halachically binding, as it involves various serious breaches of Shulchan Aruch (Jewish Code of Religious Law). [A191-92 ¶ 642]. His union representative told him his rabbi's letter was the strongest he'd ever seen. [A192 ¶ 643].

Weber was denied accommodation and placed on leave without pay on October 2, 2022. He believed appeal was futile, since other Jews were being arbitrarily denied on the ground that some Jewish leaders were vaccinated, and the City had announced that Jews who oppose vaccination have invalid beliefs. Instead, Weber supported the proposed class-action lawsuit, hoping the courts would decry the unconstitutional standards. When the motions panel of this Court declared the DOE's religious exemption policies unconstitutional, Weber immediately wrote to the DOE on November 19, 2021, asking to be given the opportunity to have fresh consideration by the Citywide Panel. He noted that he had not appealed because it was futile under the Stricken Standards. [A193-94 ¶¶ 650-55]. The DOE has never provided him fresh consideration, so he remains harmed by the determination made under the facially unconstitutional Stricken Standards.

The district court erred by dismissing Weber's claims on the ground that his failure to exhaust his appeals under the Stricken Standards constitutes some type of waiver of his right to challenge the violation of his First Amendment and Equal Protection clause rights by the DOE. It is well-settled that exhaustion of state administrative remedies is not a prerequisite to an action under § 1983. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 507 (1982). Nor can waiver be inferred. S*ee, e.g., United States v.* Morgan, 561 U.S. 861 (1995); *Johnson v. Zerbst*, 304 U.S. 458, 64 (1938). Failure to file an administrative appeal does not typically result in waiver of the right to file a civil lawsuit challenging the constitutionality of a decision unless it can be proven that the applicant was aware that he was waiving his constitutional rights. *Warner v. Orange Cnty. Dep't of Prob.*, 968 F. Supp. 917, 923 (S.D.N.Y. 1997), *aff'd*, 173 F.3d 120 (2d Cir. 1999). No such intent to waive is apparent here.

Weber was denied under facially unconstitutional religious accommodation policies that burden his First Amendment rights. And he has suffered damages.

### T. Carolyn Grimando's claims were improperly dismissed.

Carolyn Grimando worked for the DOE for 18 years. She had COVID-19 when the mandate was issued. The DOE's SOLAS system would not accept both a medical and religious exemption. Because the arbitrators award stated that those who had COVID-19 were supposed

to be medically exempt for 90 days, she applied for a medical exemption. Inexplicably, though she qualified under the clear rules, she was twice denied. On her third try, the DOE granted her medical exemption request, though for a shorter period than their rules required. [A194-95 ¶¶ 658-66]. When her medical exemption expired in late October, the DOE allowed her to submit a religious exemption request under the Stricken Standards. [A196-97 ¶¶667-80].

Grimando has sincerely held religious beliefs that prevent her from taking a COVID-19 vaccine. [Id. ¶¶670-679]. She is a devout Catholic, and follows the Catechism of the Catholic Church, which instructs that following one's consciences is following Christ Himself, and must supersede instruction from any earthly authority. [*Id.* at ¶¶ 670-673]. For several religious reasons, including concerns about abortion and sanctity of the blood, Grimando's moral conscience does not allow her to take any COVID-19 vaccine. [*Id.* at ¶¶670-679]. Due to Grimando's sincerely held religious beliefs, she has not been vaccinated since childhood, follows a vegetarian diet, and eschews most pharmaceutical products. [*Id.* at ¶679]. Grimando's priest submitted a letter in support of her exemption request. [*Id.* at ¶670].

Grimando was denied by the DOE and was never given an opportunity to appeal or submit a fresh application to the Citywide Panel. [A197-98 ¶¶ 680-81]. Her denial provided no further information other than a conclusory statement that she "failed to meet the criteria for a

religious based accommodation." [A197]. The district court erred as a matter of law by holding that Grimando somehow waived her right to sue by applying for a religious exemption in October, after her medical exemption expired. [ECF No. 182 at 37 n. 28]. As discussed, *supra*, waiver of constitutional rights must be knowing and conscious, and exhaustion is not a prerequisite to a civil rights lawsuit.

Moreover, Grimando did exhaust her administrative options. Those, like Grimando, who had medical exemptions in place last September were not given the opportunity to appeal to an arbitrators panel. And, the DOE never gave Grimando a chance to receive fresh consideration from the Citywide Panel, despite their promises to this Court that they would do so. [A198 ¶682].

## U.  Amoura Bryan's claims were improperly dismissed.

Amoura Bryan worked as a special education teacher with the DOE for 13 years. At the time the mandate was issued in fall of 2021, she worked as a remote special education teacher. [A199-200 ¶¶690-91]. Bryan, a Seventh Day Activist, has sincere religious beliefs that prevent her from taking a COVID-19 vaccine. [A199-204 ¶¶ 690-719]. She believes firmly what it says in Exodus 15:26, that if she keeps God's commands and laws and if some sickness does come upon her (like COVID-19), that God is "the Lord that heal[s]" her, even though she also believes that true healing may not always come in this life, but is promised after life in eternity with God. [A202].

The DOE denied her initial timely request for accommodation on the ground of "undue hardship," stating, as it did on all of the autogenerated emails, that "unvaccinated employees cannot work in a school building without posing a direct threat to health and safety" and "this application was reviewed in accordance with applicable law as well as the [Stricken Standards]." [A200 ¶¶694-95]. Bryan was shocked by this reason for denial because she was, at the time, a remote teacher who worked in an isolated, non-school building workspace, where she did not interact with any staff or students. [A200-201 ¶697]. Her job was to teach students with medical accommodations, who could not come to school, through Google Classroom. [*Id*]. Bryan timely appealed.

At her hearing, Bryan explained that she was a remote teacher already, with no interactions with students or staff. Her UFT representative confirmed this at her hearing. [A203 ¶712-13]. DOE representatives changed tack, asserting that Bryan's affiliation with Seventh Day Adventism required her denial, since they believe the Church does not oppose the vaccine. [*Id*. at ¶714]. Bryan explained that it was her belief that her faith *did* require her to abstain, regardless of what any particular Church officials might have said. [*Id*. at ¶715]. On October 5, 2022, her exemption was denied and she was placed on leave without pay. [A204 ¶721].

Bryan was given the opportunity to submit an application to the Citywide Panel, which she timely did on December 2, 2021. She also promptly and thoroughly responded to supplemental questions. When the Amended Complaint was filed in January 2022, she still had received no response. [A205 ¶¶727-29]. On March 28, 2022, Bryan was summarily denied by the Citywide Panel with an autogenerated email stating: "the employee has failed to establish a sincerely held religious belief that precludes vaccination. DOE has demonstrated that an accommodation to the employee would be an undue hardship given the need for a safe environment for in-person learning." [*Kane* ECF No. 123 at 3]. On April 11, 2022, she was terminated, though the SOLAS system still gives her the option to "return to work" if she gets vaccinated [*Id.* at 4].

Bryan's denial illustrates that the Citywide Panel's undue hardship determinations are, as alleged, arbitrary and pretextual. She was already approved for a remote job and was working remotely. And it is not as if Bryan's position was eliminated. There is no evidence of that, and DOE has continuously posted job listings for remote teaching throughout the pendency of this suit. [Gold-Dvoryadkin Decl. ECF No. 141 ¶27]. The district court dismissed Bryan's claim without any explanation or even

mention of her name. [ECF No. 184 ¶¶37-39]. Appellees submitted nothing to defend their dismissal in the underlying papers. Bryan was never provided with any additional reason beyond the conclusory denial, nor were any other teachers other than the original named Appellants, whose "Summaries" appear to have been generated in anticipation of the then-pending appeal.

Bryan's conclusory denial does not meet statutory or constitutional standards and cannot legally form the basis for dismissal.

## V.     Joan Giamarrino's claims were improperly dismissed.

Joan Giamarrino worked for the DOE for almost 15 years. A practicing Catholic, she objects to the COVID-19 vaccines because of their use of aborted fetal cell lines in testing and development. [A205-207 ¶¶732-40]. In reliance on her sincerely held religious beliefs, Giamarrino has not taken any vaccine for 20 years. [*Id*].

As a Catholic with views that differ from Pope Francis, Giamarrino does not qualify for accommodation under the Stricken Standards. Understanding that an application would be futile, as it indeed was shown to be, she did not apply and was placed on leave without pay.

However, after the Second Circuit held that the Stricken Standards were unconstitutional, she immediately took steps to try to apply under the new process. On December 6, 2021, she submitted by certified mail a formal exemption request to DOE, setting forth her sincerely held religious beliefs. [A207-08 ¶¶ 743-48]. With the application, she sent a letter explaining that she did not qualify under the discriminatory standard, and that is why she had not originally applied until the Second Circuit struck it down as unconstitutional and a new process was announced. [*Id.*].

DOE never responded to Giamarrino's application for religious accommodation, even though she was still an employee at the time she made the application. Nor was she ever afforded the chance to have her application reviewed by the Citywide Panel. The EEOC advises that "Title VII requires an employer, once on notice that a religious accommodation is needed, to reasonably accommodate an employee whose sincerely held religious belief, practice, or observance conflicts with a work requirement, unless doing so would pose an undue hardship." The DOE was required to attempt to reasonably accommodate Giamarrino as soon as they learned that she sought religious accommodation, which occurred on December 6, 2022.

**W.    Benedict LoParrino's claims were improperly dismissed.**

Benedict LoParrino worked for the DOE as an elementary school teacher for 17 years. Like Giamarrino, he is a devout Catholic, and did not originally apply for accommodation because the Stricken Standards required denial of Catholic applicants, so he believed it would be futile. [A210-11 ¶¶757-68]. He struggled with this choice. On November 3, 2022, while still on leave without pay, he decided to send in an application for religious accommodation by certified mail. [A211-12]. He received no response.

After the Second Circuit held that the Stricken Standards were unconstitutional, LoParrino received an email on December 13, 2021, informing him that his paper "medical exemption" request had been received, but should be resubmitted online through SOLAS. LoParrino never submitted a medical exemption. Nonetheless, in case it was an error, and was meant to address his religious exemption, he attempted to apply through SOLAS online. The system did not allow him to apply, stating "You have been identified as being noncompliant to the vaccine mandate. You cannot submit an application for religious accommodation at this time." [A212 ¶¶773-75]. LoParrino emailed DOE for help, but was

refused any decision on his application for religious accommodation or review by the Citywide Panel.

For the same reasons that Giamarrino was improperly dismissed, the district court erred in dismissing LoParrino's claims and denying injunctive relief.

## V. Appellees did not meet their burden of showing their policies can survive strict scrutiny.

A law will only pass strict scrutiny against a religious burden if the government proves the burden is necessary to achieve an "interest[ ] of the highest order." *Fulton*, 141 S. Ct. at 1881. "Put another way, so long as the government can achieve its interests in a manner that does not burden religious, it must do so." *Id.* "[B]roadly formulated interests" likely do not suffice; they must be "properly narrowed" to "the asserted harm of granting specific exemptions to particular religious claimants." *Id.*

Here, the City offers no sufficient evidence showing why it needs to selectively punish religion—or any of the individual Appellants. Indeed, targeting religious minority groups, including those who hold personal religious objections rather than orthodox ones, in response to real or perceived threats, no matter how well-intentioned the reason, is

94

forbidden under our laws, triggers strict scrutiny, and cannot withstand strict scrutiny review as a matter of law. *Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018) (overruling *Korematsu v. United States*, 323 U.S. 214 (1944)). Because the City cannot justify preferring some religion over others, and exercising broad discretion to allow unvaccinated athletes, performers, and strippers to work but not unvaccinated religious officers, firefighters, teachers, and other public servants, the City cannot "deny" Appellants "an exception." *Fulton*, 141 S.Ct. at *1881*. Accordingly, the mandate cannot be constitutionally applied religious Appellants or any other religious objectors.

## VI.  Appellants have established irreparable harm, and the balance of equities strongly favors them.

The loss of First Amendment rights "for even minimal periods" of time is "irreparable injury." *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 71 (2d Cir. 1996); *accord Paulsen v. Cty. of Nassau*, 925 F.2d 65, 68 (2d Cir. 1991). So in this case, "the likelihood of success on the merits is the dominant, if not the dispositive, factor." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). While Appellants have made that showing, the equities strongly favor them here anyway.

When Appellants first moved for preliminary relief earlier this year, most were still employed and able to work unvaccinated. Now, after being denied an exemption through the City's discriminatory review scheme, nearly all have been terminated or forced to violate their religious beliefs. The City also continues to offer new "last chances" for terminated employees to be reinstated if they take the vaccine. Critically, the mandate not only keeps Appellants from their prior posts, it bars employment within *any* public or private employer in the City—except for sports teams, strip clubs, and a few other, arbitrary exceptions. Next month, the Mayor alleges it will only bar them from municipal employment, but as municipal employees, this is still a coercive condition that presents ongoing irreparable harm.

It is well settled that "[c]onditions on public benefits, in the form of jobs or otherwise, which dampen the exercise … of First Amendment rights, however slight the inducement to the individual to forsake those rights, are prohibited." *Elrod v. Burns*, 427 U.S. 347, 358 n.11 (1976). And here the coercion is substantial. Many Appellants are already facing deadlines to move out of homes in foreclosure or with past-due rents. Others face the possibility of becoming religious refugees in cities and

96

states that do not force them to violate their faith to feed their families. Each day, as their situation becomes more desperate, they have to choose whether to violate their faith to return to work. To prevent this irreparable harm, this Court should reverse the decisions below denying injunctive relief, as the Court did in *Elrod*.

Appellants have also alleged harms from the City's unconstitutional conduct that go far beyond mere economic loss. Appellant Buzaglo, who could not afford to treat a worsening cough once she lost her health insurance, developed a severe case of asthma. [*Kane* ECF No. 163 at ¶¶ 5-8]. She was forced to accept charity to afford an inhaler and almost required hospitalization. [*Id*. ¶¶ 8-9]. Unable to pay her rent, she had no choice but to decide whether to go to a homeless shelter or leave the country. [*Id*. ¶¶ 16-17]. Buzaglo was forced to move to Israel after she lost her home, leaving behind the life and career she built here.

As a result of being placed on leave without pay, Appellant Cutler had no health insurance to support his son when he suffered a collapsed lung earlier this year. [*NYFRL* ECF No. 48 ¶ 47]. He and his wife were later forced to sell their first home and move out of state, leaving his son

here to finish high school. [*Id*. ¶ 45]. He was deeply distressed at splitting his family up, as well as leaving behind his beloved church community, of which he was the sole deacon. [*Id*.]

Appellant Schimenti was forced to apply for Medicaid and had to obtain a forbearance on his mortgage to keep from losing his home. [NYFRL ECF No. 58 ¶ 76]. The stress of losing his job has caused him to have high blood pressure and cardiac issues—both of which he has never experienced before. *Id*. ¶ 77.

Appellant Keil, a Deacon in the Russian Orthodox Church, was forced to go on food stamps to feed his family of seven, including his child with Downs Syndrome. *Kane* ECF No. 133 ¶¶ 9-10, 23.

These are just a few of the many examples of harm the City is causing Appellants that cannot be remedied merely by an award of damages.

## CONCLUSION

Plaintiffs-Appellants ask this Court to reverse the decisions below and remand, instructing the lower court to issue a preliminary injunction, allowing them to retake their prior posts, or at a bare minimum, free them to be employed somewhere—*anywhere*—in New York City.

Respectfully submitted,

*/s/ John J. Bursch*

SUJATA S. GIBSON
GIBSON LAW FIRM PLLC
832 Hanshaw Rd.
Suite A
Ithaca, NY 14850
Tel. (607) 327-4125
sujata@gibsonfirm.law

JOHN J. BURSCH
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Ste. 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org

BARRY BLACK
JONATHAN ROBERT NELSON
SARAH E. CHILD
NELSON MADDEN BLACK
475 Park Avenue South
Suite 2800
New York, New York 10016
Tel. (212) 382-4310
bblack@nelsonmaddenblack.com
jnelson@nelsonmaddenblack.com
schild@nelsonmaddenblack.com

*Counsel for Appellants*

October 17, 2022

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word limit of Local Rule 32.1(a)(4)(A) because, excluding the portions exempted by Fed. R. App. R. 32(f), this brief contains 20,212 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ John J. Bursch*
John J. Bursch

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2022, this brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ John J. Bursch*
John J. Bursch

*Counsel for Appellants*

Dated: October 17, 2022

**SPECIAL APPENDIX**

**i**

## TABLE OF CONTENTS

**Page**

Memorandum and Order of the Honorable Naomi
  Reice Buchwald, dated August 26, 2022
    (21-cv-07863) ........................................................   SPA-1

Minute Order, dated August 11, 2022 (22-cv-00752)   SPA-43

U.S. Const. amend. I ................................................   SPA-44

SPA-1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
MICHAEL KANE, et al.,

              Plaintiffs,

        - against -

BILL DE BLASIO, et al.,

              Defendants.
--------------------------------------X
MATTHEW KIEL, et al.,

              Plaintiffs,

        - against -

THE CITY OF NEW YORK, et al.,

              Defendants.
--------------------------------------X
```

**MEMORANDUM AND ORDER**
21 Civ. 7863 (NRB)
21 Civ. 8773 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Since the novel coronavirus emerged two and a half years ago, over a million people in the United States have died from COVID-19, including over 40,000 residents of New York City (the "City").[1] Due to the rapid spread of COVID-19, City schools were abruptly compelled in the spring of 2020 to operate remotely.[2] In order to combat the further spread of the coronavirus and to allow schools

---

[1]  Covid Data Tracker Weekly Review, Centers for Disease Control (Aug. 19, 2022) https://www.cdc.gov/coronavirus/2019-ncov/covid-data/covidview/index.html; COVID-19: Data, City of New York (Aug. 24, 2022), https://www1.nyc.gov/site/doh/covid/covid-19-data-totals.page.

[2]  New York City to Close All School Buildings and Transition to Remote Learning, Office of the Mayor (Mar. 15, 2020), https://www1.nyc.gov/office-of-the-mayor/news/151-20/new-york-city-close-all-school-buildings-transition-remote-learning.

to reopen as safely as possible, in August 2021, following the Food and Drug Administration's ("FDA") full approval of a COVID-19 vaccine, the New York City Commissioner of Health and Mental Hygiene issued an order requiring Department of Education ("DOE") staff, along with other City employees and contractors working in person in school settings, to provide proof of vaccination against COVID-19, which was restated with minor amendments in September 2021 (the "Vaccine Mandate" or "Mandate"). Plaintiffs are 21 teachers, administrators, and other DOE staff who challenge this Mandate on behalf of themselves and a purported class because they believe its requirement that they be vaccinated against COVID-19 violates, inter alia, their religious freedoms guaranteed by the First Amendment.[3] Presently before this Court are defendants' motion to dismiss the complaint for failure to state a claim, ECF No. 111, and plaintiffs' fourth motion for a preliminary injunction, which seeks an injunction "barring enforcement of the Mandate against [p]laintiffs and any other DOE employee who has applied for religious accommodation and offering each reinstatement of pay and benefits pending resolution on the merits," ECF No. 121 at 25.[4]

---

[3] The above-captioned cases were both originally assigned to Judge Caproni and consolidated by her. After consolidation, plaintiffs filed an amended consolidated complaint, ECF No. 102 ("ACC"), alleging injuries on behalf of themselves and a purported class.

[4] Plaintiffs in both cases filed motions for a preliminary injunction and a temporary restraining order at the outset of their case. Judge Caproni denied the motions, and the plaintiffs appealed. The Second Circuit considered the appeals together and granted a preliminary injunction, as discussed infra.

The present motions are the first before this Court. After Judge Caproni repeatedly denied plaintiffs' motions for preliminary injunction, plaintiffs filed a motion asking Judge Caproni to recuse herself, arguing that Judge Caproni had held Pfizer stock, which could theoretically be impacted by the outcome of this litigation. While Judge Caproni doubted the resolution of the merits of the case would have any meaningful impact on Pfizer stock, she decided to recuse herself "out of an abundance of caution and to avoid even the possible appearance of any bias or prejudice[.]" ECF No. 175 at 2-3. For the following reasons, this Court joins the long list of other courts who have upheld COVID-19 vaccine mandates,[5] and holds that the defendants' motion

_____

After consolidation, the plaintiffs filed an additional motion for a preliminary injunction, which was denied. Thus, this present motion is the fourth motion for a preliminary injunction filed in this case.

[5]   See, e.g., We the Patriots, USA, Inc. v. Hochul, 17 F.4d 266 (2d Cir. 2021) (denying preliminary injunction of vaccine mandate for healthcare workers), op. clarified, 17 F.4d 368 (2d Cir. 2021), cert. denied sub nom. Dr. A. v. Hochul, 142 S. Ct. 2569 (2022); Maniscalco v. New York City Dep't of Educ., 563 F. Supp. 3d 33 (E.D.N.Y. 2021) (denying preliminary injunction of vaccine requirement for teachers and other DOE employees), aff'd, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021), cert. denied, 142 S. Ct. 1668, 212 L. Ed. 2d 578 (2022); Broecker v. New York Dept. of Educ., No. 21 Civ. 6387 (KAM) (LRM), 2022 WL 426113 (E.D.N.Y. Feb. 11, 2022) (denying preliminary injunction of vaccine mandate for other DOE employees); Marciano v. de Blasio, No. 21 Civ. 10752 (JSR), 2022 WL 678779, (S.D.N.Y. Mar. 8, 2022) (dismissing challenge to vaccine requirement for City employees); O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 NY Slip Op 30173[U] (N.Y. Sup. Ct., N.Y. Cnty. Jan. 20, 2022) (denying preliminary injunction of vaccine mandate for other DOE employees); New York City Mun. Lab. Comm. v. City of New York, 73 Misc. 3d 621, 628, 156 N.Y.S.3d 681, 687 (N.Y. Sup. Ct., N.Y. Cnty. 2021) (denying preliminary injunction of vaccine mandate and dismissing case); Ferrelli v. Unified Ct. Sys., No. 22 Civ. 68 (LEK) (CFH), 2022 WL 673863, (N.D.N.Y. Mar. 7, 2022) (denying injunction of vaccine mandate in the New York State Court system); Brock v. City of New York, No. 21 Civ 11094 (AT) (SDA), 2022 WL 479256, at *1 (S.D.N.Y. Jan. 28, 2022) (denying preliminary injunction and temporary restraining order blocking vaccine mandate for City employees); Garland v. New York City Fire Dep't, 574 F. Supp. 3d 120 (E.D.N.Y. 2021) (E.D.N.Y. 2021) (denying preliminary injunction of vaccine mandate for City employees); Andre-

to dismiss is GRANTED and plaintiffs' motion for a preliminary injunction is DENIED.[6]

## I. Background[7]

### A.   The Vaccine Mandate and the Arbitration Award

On August 23, 2021, the FDA approved the Pfizer-BioNTech COVID-19 vaccine for individuals 16 years and older.[8]  On August 24, 2021, the Commissioner of the Department of Health and Mental Hygiene (the "Commissioner") promulgated an order (the "Original Vaccination Mandate" or "Original Mandate") requiring all DOE staff, along with all City employees and staff of contractors of the DOE and City who work in person at a DOE school setting or DOE building, to provide proof that they were fully vaccinated or on track to become fully vaccinated by September 27, 2021 or prior to beginning employment.  See ACC ¶ 63; Declaration of Lora Minicucci, ECF No. 113-2 ("Ex B") at 2-3.  The Original Mandate defined "fully

---

Rodney v. Hochul, No. 21 Civ. 1053 (BKS) (CFH), 2022 WL 3027094, (N.D.N.Y. Aug. 1, 2022) (dismissing challenge to vaccine mandate for hospital employees).

[6]     Plaintiffs requested oral argument on the motion to dismiss.  ECF No. 119.  The Court has concluded that oral argument is unnecessary in light of the extensive briefing submitted by the parties, the numerous prior decisions in this case, and because the issues before the Court are purely legal.

[7]     The following facts are primarily drawn from the operative complaint, ECF No. 102.  Where noted, certain facts of which the Court takes judicial notice or which are incorporated by reference in the ACC are drawn from exhibits attached to the Declaration of Lora Minicucci, ECF No. 113, and the Declaration of Sujata S. Gibson, ECF No. 122.  For the purposes of the Court's ruling on the instant motion, the Court draws all reasonable inferences in plaintiffs' favor.  See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

[8]     FDA Approves First COVID-19 Vaccine, FDA.gov, (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine.  The Court takes judicial notice of the FDA's press release announcing the full approval of the Pfizer-BioNTech vaccine.  See Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 60 (2d Cir. 2016) (finding that Court may properly take judicial notice of publicly available FDA guidance).

SPA-5

vaccinated" to mean "at least two weeks have passed after an individual received a single dose of a one-dose series, or the second dose of a two-dose series, of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization." Ex. B at 2.

The Original Mandate explained that the U.S. Centers for Disease Control ("CDC") "has recommended that school teachers and staff be 'vaccinated as soon as possible' because vaccination is 'the most critical strategy to help schools safely resume] full operations . . . [and] is the leading public health prevention strategy to end the COVID-19 pandemic;'" Id. at 2 (alterations and quotation marks in original). It further stated that "a system of vaccination for individuals working in school settings or other DOE buildings will potentially save lives, protect public health, and promote public safety," and noted that the DOE "serves approximately 1 million students across the City, including students in the communities that have been disproportionately affected by the COVID-19 pandemic and students who are too young to be eligible to be vaccinated." Id. The Original Mandate contained no medical or religious exemptions. Id.

On September 1, 2021, the United Federation of Teachers, Local 2, AFT, AFL-CIO ("UFT") filed a Declaration of Impasse, and shortly thereafter entered into arbitration with the City and the Board of Education of the City School District for the City of New York

SPA-6

(the "BOE").  ACC ¶¶ 66; 70(a).  On September 10, 2021, following arbitration, the City, the BOE, and the UFT reached an agreement (the "UFT Award") that provided for, "as an alternative to any statutory reasonable accommodation process," a procedure and criteria for religious exemptions.  Id. ¶¶ 67; 70(a).  With respect to religious exemptions, the UFT Award stated that:

> Religious exemptions for an employee to not adhere to the mandatory vaccination policy must be documented in writing by a religious official (e.g., clergy).  Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an on line source), or where the objection is personal, political, or philosophical in nature.  Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

Id. ¶ 70(c).  Employees who wished to submit applications for this exemption were required to submit their requests via an online system, SOLAS, by September 20, 2021 at 5 p.m.  Id.  ¶ 70(b).  Staff in the Division of Human Capital in the Office of Medical, Leaves and Benefits; the Office of Equal Opportunity; and Office of Employee Relations were to issue decisions in writing by September 23, 2021, and, if the request was denied, set forth a reason for a denial.  Id. ¶ 70(d).  Thereafter, those employees whose requests were denied had one school day from the issuance of the decision to appeal, with an additional 48 hours after the filing of the appeal to submit any additional documentation.  Id.

¶ 70(e).  The UFT Award noted that if the reason for the denial
was a lack of documentation, an arbitrator could permit additional
time to submit the documentation.  Id.  Appeals were to be
conducted by a panel of arbitrators identified by Scheinman
Arbitration and Mediation Services.  Id. ¶ 70(f).  The UFT Award
provided that if an employee was granted a religious exemption,
they were permitted to remain on the payroll, but were "in no event
required/permitted to enter a school building while unvaccinated,
as long as the vaccine mandate is in effect."  Id. ¶ 70(i).

The UFT Award also provided that if an unvaccinated employee
chose not to request an exemption or was denied an exemption, the
employee could be placed on leave without pay effective September
28, 2021 or upon denial of their appeal, whichever was later,
through November 30, 2021.  Id. ¶ 70(k).  The UFT Award also
created two options for employees to leave the DOE rather than be
vaccinated.  First, during the period of September 28, 2021 through
October 29, 2021, any employee who was on leave without pay due to
their vaccination status and wished to separate from the DOE was
permitted to do so on the understanding that they would be deemed
to have resigned involuntarily and would waive the right to
challenge their resignation.  Id. ¶ 70(m).  In exchange, they would
receive a reimbursement for their unused CAR days,[9] and would be

---

[9]     Plaintiffs do not define the term "CAR days", but it appears to refer to
"Cumulative Absence Reserve" days, which are the equivalent of sick days.  See

SPA-8

eligible for health insurance through September 5, 2022, unless they were eligible for health insurance from a different source. Id.

Second, the UFT Award provided that during the period from November 1, 2021 through November 30, 2021, any employee could alternately opt to extend their leave without pay until September 5, 2022, provided they waived the right to challenge their voluntary resignation. Id. ¶ 70(n). Any employee who decided to get vaccinated had the right to return to their same school within two weeks. Id. The UFT Award also stated that, beginning December 1, 2021, the DOE would seek to unilaterally separate employees who had not opted into one of these two options. Id. ¶ 70(o).

On September 15, 2021, an arbitrator announced an arbitral award between the DOE and the Council of Supervisors and Administrators ("CSA"), which mirrored the UFT Award in all relevant respects (the "CSA Award"). Id. ¶ 71. On September 12 and September 15, 2021, the Commissioner issued slightly revised versions of the vaccine mandate. ECF No. 113-3 ("Ex. C" or "Vaccine Mandate") at 2. The September 15, 2021 order is currently in effect. Id. It provides the same justifications as the Original Mandate, id. at 1-2, and required that:

> No later than September 27, 2021, or prior to beginning employment, the following individuals must provide proof of vaccination as described below:

_____

Cumulative Absence Reserve (CAR), United Federation of Teachers, https://www.uft.org/your-rights/know-your-rights/cumulative-absence-reserve-car.

SPA-9

   a. DOE staff must provide proof of vaccination to the DOE.
   b. City employees who work in-person in a DOE school setting, DOE building, or charter school setting must provide proof of vaccination to their employer.
   c. Staff of contractors of DOE or the City, as defined below, must provide proof of vaccination to their employer, or if self-employed, to the DOE.
   d. Staff of any charter school serving students up to grade 12, and staff of contractors hired by charter schools co-located in a DOE school setting to work in person in a DOE school setting or DOE building, must provide proof of vaccination to their employer, or if self-employed, to the contracting charter school.

Id. at 2. The order further defined "proof of vaccination" as proof that an individual:

   a. Has been fully vaccinated;
   b. Has received a single dose vaccine, or the second dose of a two-dose vaccine, even if two weeks have not passed since they received the dose; or
   c. Has received the first dose of a two-dose vaccine, in which case they must additionally provide proof that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

Id. It also defined "fully vaccinated" to mean "at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine approved or authorized for use by the Food and Drug Administration or World Health Organization." Id.

   **C. Plaintiffs Refuse to Be Vaccinated and Commence This Suit**

   Plaintiffs are DOE employees who refuse to be vaccinated due to their religious beliefs. The majority of plaintiffs in both

cases timely applied for religious exemptions before the September 20, 2021 deadline, pursuant to the process set out in the UFT Award.[10] See, e.g., ACC ¶¶ 226, 263, 292, 314, 362, 382, 408, 452, 553, 582, 613. Their applications were subsequently denied.[11] See, e.g., id. ¶¶ 234, 264, 292, 315, 328, 363, 382, 408, 453, 483, 554, 583, 614. Plaintiffs Kane, Castro, Chu, Clark, Di Capua, Gladding, Nwaifejokwu, Romero, Ruiz-Toro, and Smith (collectively, the "Kane plaintiffs") filed a lawsuit on September 21, 2021 - the day after the deadline for applying for a religious exemption under the UFT Award - seeking a preliminary injunction. ECF No. 1. They subsequently moved for a temporary restraining order on October 4, 2021. ECF No. 12. The Kane plaintiffs' motion for a temporary restraining order was denied on October 5, 2021, ECF No. 33, and their motion for a preliminary injunction was denied on October 12, 2021, ECF No. 60. Plaintiffs Keil, De Luca, Delgado, Strk,

_____

[10]     Plaintiffs Grimando, Giammarino, LoParrino, Weber, and Smith did not timely apply for a religious exemption. Plaintiffs Giammarino, LoParrino, and Smith did not do so because they believed they did not meet the criteria under the UFT Award. Id. ¶¶ 422-23, 733, 758. Plaintiff Weber applied for a religious exemption on October 1, 2021 (days after the September 20, 2021 deadline). Id. ¶ 642. His application was nonetheless reviewed and denied, and after his denial, he decided not to appeal. Id. ¶ 652. Plaintiff Grimando initially and repeatedly applied for medical exemptions, and after securing a medical exemption for 45 days, then applied for a religious exemption, although she was "intimidated by the requirements." Id. ¶¶ 660, 663-666. At the time that the ACC was filed, plaintiff Bryan's application was pending before the Citywide panel. Id. ¶¶ 727-28. Based on her declaration filed in support of the motion for a preliminary injunction, ECF No. 123, it appears that her application has been denied. Id. ¶ 13.

[11]     Plaintiff Ruiz-Toro appealed her denial and was subsequently approved for a religious exemption to the Mandate through June 2022. Id. ¶ 488. As a condition of this exemption, Ruiz-Toro is prohibited from entering any school building or classroom. Id. ¶¶ 489-90. She challenges this condition, and maintains a claim that the Mandate violates her constitutional and statutory rights. Id.; see also id. at ¶¶ 920-21.

SPA-11

and Buzaglo (collectively, "the Keil plaintiffs") filed a lawsuit on October 27, 2021. Complaint, Keil et al. v. City of New York, 21 Civ. 8773 (S.D.N.Y. Oct. 27, 2021), ECF No. 10. The Keil plaintiffs' motion for a temporary restraining order and a preliminary injunction were denied on October 28, 2021. Plaintiffs appealed these denials on October 25 and 28, 2021, respectively. ECF No. 67; Notice of Interlocutory Appeal, Keil et al. v. City of New York, 21 Civ. 8773 (S.D.N.Y. Oct. 28, 2021), ECF No. 33.

The Second Circuit considered plaintiffs' appeals in tandem and issued a 48-page opinion addressing the substantive issues in this case. It found that "[t]he Vaccine Mandate, in all its iterations, is neutral and generally applicable." Kane v. De Blasio, 19 F.4th 152, 164 (2d Cir. 2021) (hereinafter "Kane"). It also found that the Mandate's exemptions do not treat secular conduct more favorably than comparable religious conduct. Id. at 166. Accordingly, the Second Circuit found that the plaintiffs were not likely to succeed on their argument that the Mandate was facially unconstitutional. Id.

However, in accordance the City's concession that the procedure used in examining the religious exemption requests may have been "constitutionally suspect" as applied to plaintiffs, the Second Circuit made the "exceedingly narrow" determination that the plaintiffs were likely to succeed on their as applied challenges. Id. at 167. Specifically, the Second Circuit found

that plaintiffs provided evidence that the arbitrators had evaluated their requests in accordance with the UFT Award's standards for a religious exemption, which stated that "requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature." Id. at 168.  Therefore, the Court reasoned that:

> Denying an individual a religious accommodation based on someone else's publicly expressed religious views — even the leader of her faith —runs afoul of the Supreme Court's teaching that "[i]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds."

Id. (quoting Hernandez v. Commissioner, 490 U.S. 680, 699 (1989) (emphasis in original)).

Accordingly, the Second Circuit ordered that plaintiffs' requests receive fresh consideration "by a central citywide panel, which will adhere to the standards of, inter alia, Title VII of the Civil Rights Act of 1964, rather than the challenged criteria set forth in . . . the arbitration award . . . ."  (hereinafter, the "Citywide Panel.")  Id. at 162 (internal citations and quotation marks omitted).  Further, the Circuit also stayed the deadline for plaintiffs to opt into the extended leave program. Id.  It further provided that if a plaintiff's request for religious accommodation is granted by the Citywide Panel, the

plaintiff will receive backpay from the date the plaintiff was placed on leave without pay.  Id.  The case was subsequently stayed pending the conclusions of the proceedings before the Citywide Panel.  ECF No. 80.

**D.  The Citywide Panel Reviews Plaintiffs' Claims**

Subsequently, each of the named plaintiffs who were then a part of this case had their claims reviewed by the Citywide Panel.[12] Plaintiffs allege that the Citywide Panel "rubber-stamped" the denials, although they acknowledge that plaintiff Castro's request for a religious accommodation was granted by the Citywide Panel and that he was reinstated with backpay.  ACC ¶¶ 835, 271. Likewise, plaintiffs concede that in each denial, the Citywide Panel noted that the "it would be an undue hardship" for the DOE to allow unvaccinated teachers to enter school buildings.  Id. ¶ 158.  Plaintiffs filed a letter informing the Court that the Citywide Panel had concluded its review on December 11, 2021.  ECF No. 85.

**E.  Subsequent Procedural History**

During the pendency of the appeal and the stay, the Kane plaintiffs twice attempted to amend their complaint to add class allegations, ECF No. 74, and requested leave to file a motion for class certification, ECF No. 83.  Judge Caproni denied these

---

[12]   Plaintiffs Grimando, Giammarino, LoParrino, Weber, Bryan, and Solon were added to this case in the ACC. ECF No. 102.

requests because the Second Circuit had not yet issued a mandate remanding the case to her and because the Citywide Panel had not yet concluded its decision-making process.  ECF No. 80 at 2, 84 at 2.  On December 11, 2021, after receiving the outcome of their appeals to the Citywide Panel, plaintiffs filed an additional motion for a preliminary injunction and a motion to certify a class.[13]  ECF No. 85.  Judge Caproni denied both motions, reasoning that the plaintiffs had not shown irreparable harm, likelihood of success on the merits, or pled class allegations in the operative complaints.  ECF No. 90.  She further ordered that the Kane and Keil cases be consolidated, as neither party objected to consolidation, and gave the plaintiffs leave to file an amended complaint.  Id.

On December 15, 2021, plaintiffs appealed Judge Caproni's denial.  ECF No. 91.  Subsequently, on December 17, 2021, they again asked Judge Caproni to stay the enforcement of the Vaccine Mandate pending the resolution of their appeal.  ECF No. 92.  Judge Caproni denied the request.  ECF No. 93.  Thereafter, plaintiffs sought a stay from the Second Circuit, which stayed the deadline for plaintiffs in this action to opt-in to the extended leave

---

[13]    Plaintiffs initially received notices that they would be placed on leave without pay within three business days if they did not submit proof of vaccination.  Keil v. City of New York, No. 21-3043-CV, 2022 WL 619694, at *3 (2d Cir. Mar. 3, 2022).  The City thereafter explained that these notices were erroneously sent to plaintiffs, and that plaintiffs had 14 days to opt into the DOE's leave without pay package.  Id.

14

SPA-15

program and ordered that no further steps be taken to terminate the named plaintiffs in this action for noncompliance with the Mandate during the pendency of the appeal. ECF No. 94. Subsequently, the Second Circuit denied plaintiffs' motion for a preliminary injunction, ECF No. 108, and affirmed Judge Caproni's decision in its entirety, ECF No. 116.

Defendants moved to dismiss on February 14, 2022. ECF No. 111. Plaintiffs filed their opposition on March 30, 2022. ECF No. 119 ("Opp."). That motion was fully briefed as of April 22, 2022. See ECF No. 151. During the briefing on the motion to dismiss, on April 12, 2022, plaintiffs moved for a preliminary injunction for the fourth time. ECF No. 121. On April 29, 2022, Judge Caproni informed the parties that she would decide the motion to dismiss and the motion for preliminary injunction in tandem. ECF No. 157. The motion for a preliminary injunction was fully briefed on May 20, 2022. See ECF No. 168.

On June 9, 2022, plaintiffs moved to disqualify Judge Caproni, citing her decisions against them and her ownership of Pfizer stock. ECF No. 171, 172. Although Judge Caproni noted that she doubted there was any actual conflict, as she doubted that the resolution of the merits of the case would have any meaningful impact on Pfizer stock, she decided to recuse herself "out of an abundance of caution and to avoid even the possible appearance of any bias or prejudice." ECF No. 175 at 2-3. The case was

SPA-16

subsequently briefly assigned to Judge Ramos before being assigned to this Court.  Plaintiffs sought to disqualify this Court on June 14, 2022. ECF No. 179.  This Court made clear that there is no disqualifying conflict in responses dated June 15, 2022, ECF No. 180, and June 22, 2022, ECF No. 182.

## II.   Legal Standard

### A. Motion to Dismiss

To withstand a Rule 12(b)(6) motion, the non-movant's pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  While the Court accepts the truth of the allegations as pled, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice and we are not bound to accept as true a legal conclusion couched as a factual allegation." Brown v. Daikin Am., Inc., 756 F.3d 219, 225 (2d Cir. 2014) (citations and internal quotation marks omitted).

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the

SPA-17

pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

**B.   Preliminary Injunction**

"When a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." Kane, 19 F.4th at 163 (citing Agudath Isr. of Am. v. Cuomo, 983 F.3d 620, 631 (2d Cir. 2020).

**III.   Discussion**

Plaintiffs bring no fewer than 30 causes of action, under both federal and state law, challenging the Vaccine Mandate. We first consider their federal claims.

**A.   Free Exercise Challenge**

Plaintiffs first allege that the Vaccine Mandate violates the Free Exercise clause. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ...." U.S. CONST., amend. I; see Cantwell v. Connecticut, 310 U.S. 296, 303 (1940) (incorporating the Free Exercise Clause against the states). "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." Employment Div., Dept. of Human Resources

17

of Oregon v. Smith, 494 U.S. 872, 877 (1990).  "The Free Exercise
Clause thus protects an individual's private right to religious
belief, as well as 'the performance of (or abstention from)
physical acts that constitute the free exercise of religion.'"
Kane, 19 F.4th at 163-64 (quoting Cent. Rabbinical Cong. of U.S.
& Can. v. N.Y.C. Dep't of Health & Mental Hygiene, 763 F.3d 183,
193 (2d Cir. 2014)).  "In order to prevail on a Free Exercise
Clause claim, a plaintiff generally must establish that 'the object
of [the challenged] law is to infringe upon or restrict practices
because of their religious motivation,' or that its 'purpose . .
. is the suppression of religion or religious conduct.'" Okwedy v.
Molinari, 69 Fed. App'x. 482, 484 (2d Cir. 2003) (alterations in
original) (citing Church of the Lukumi Babalu Aye, Inc. v. City of
Hialeah, 508 U.S. 520, 533 (1993)).

Importantly, the protection of the Free Exercise clause "does
not relieve an individual of the obligation to comply with a valid
and neutral law of general applicability."  Smith, 494 U.S. at
879.  "Where the government seeks to enforce a law that is neutral
and of general applicability . . . it need only demonstrate a
rational basis for its enforcement, even if enforcement of the law
incidentally burdens religious practices."  Fifth Ave.
Presbyterian Church v. City of New York, 293 F.3d 570, 574 (2d
Cir. 2002); see Cent. Rabbinical Cong., 763 F.3d at 193 ("[T]he
Free Exercise Clause "does not relieve an individual of the

SPA-19

obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).").  However, laws and government policies that are either non-neutral or not generally applicable are subject to "strict scrutiny," meaning that they must be "narrowly tailored" to serve a "compelling" state interest.  Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 67 (2020); see Fulton v. City of Philadelphia, 141 S. Ct. 1868, 1881 (2021) ("A government policy can survive strict scrutiny under only if it advances interests of the highest order and is narrowly tailored to achieve those interests.") (internal quotation marks and citation omitted).

### 1. The Vaccine Mandate is Facially Neutral and Generally Applicable

The Second Circuit has already found that "[t]he Vaccine Mandate, in all its iterations, is neutral and generally applicable."  Kane, 19 F.4th at 164.  Nevertheless, plaintiffs rehash arguments the Second Circuit has already rejected, and ask us to revisit this conclusion, arguing that the Court should apply strict scrutiny (1) because of a purported animus held by City and State officials and (2) because (contrary to the Second Circuit's view), it is not generally applicable.[14]  Neither argument is meritorious.

---

[14]   Although the Second Circuit's opinions regarding the plaintiffs' prior motions for preliminary injunctions span 53 pages and deliver carefully

SPA-20

### a.   There Is No Evidence of "Animus"

Ignoring the fact that the pandemic has claimed the lives of more than a million people in the United States, plaintiffs take the bold position that the Mandate has the "express purpose of inflicting special disability against minority religious viewpoints," Opp. at 4, rather than its obvious and explicit goals to, inter alia, "potentially save lives, protect public health, and promote public safety." Vaccine Mandate at 2. Plaintiffs argue that this case is analogous to Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520 (1993). There, the Supreme Court found that a series of laws enacted with the purpose of preventing members of a religion from ritualistically sacrificing animals in accordance with their beliefs violated the Free Exercise clause. Id. at 524. The record of animus was clear; for example, the Supreme Court noted that "almost the only conduct subject to [the challenged ordinances] is the religious exercise of Santeria church members. The texts show that they were drafted in tandem to achieve this result." Id. at 535. Here, there is no such record. Instead, the Mandate lays out its reasoning, noting

_____

considered holdings on substantive issues in this case, including on the issue of whether the Mandate is neutral and generally applicable, plaintiffs assert that we should review their claims de novo both in light of the differing standards for a preliminary injunction and a motion to dismiss and in light of the new facts they allege in their consolidated amended complaint. See Opp. at 5. Even assuming arguendo that we should review plaintiffs' claims de novo, we would independently concur with the Second Circuit's reasoning and reach the same conclusion: namely, that plaintiffs' facial challenge to the Mandate fails.

SPA-21

that the CDC has found that "vaccination is an effective tool to prevent the spread of COVID-19 and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated," and is "the most critical strategy to help schools safely resume full operations [and] is the leading public health prevention strategy to end the COVID-19 pandemic." Vaccine Mandate at 1 (alteration in original). This Court, like the other Courts which have considered this Mandate, find that the clear object of the Mandate is to reduce the spread of COVID-19 in New York's schools and permit them to open. See, e.g., Kane, 19 F.4th at 172 (holding "[t]he Vaccine Mandate . . . is designed to further the compelling objective of permitting schools fully to reopen[.]"); Maniscalco v. New York City Dep't of Educ., 563 F. Supp. 3d 33, 39 (E.D.N.Y. 2021) ("[E]ven if plaintiffs disagree with it, the [Mandate] at issue represents a rational policy decision surrounding how best to protect children during a global pandemic."), aff'd, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021), cert. denied, 142 S. Ct. 1668 (2022); Broecker v. New York City Dep't of Educ., 573 F. Supp. 3d 878, 891 (E.D.N.Y. 2021) (holding Vaccine Mandate served a "obvious, significant governmental interest in preventing transmission of the COVID-19 virus and protecting students"); New York City Mun. Lab. Comm. v. City of New York, 73 Misc. 3d 621, 628 (N.Y. Sup. Ct., N.Y. Cty.

21

2021) (noting Mandate represents "the reasoned views and directives of public health officials seeking to best protect the health and welfare of children").

Plaintiffs assert that statements made by City and State officials and the existence of the prior arbitration scheme are evidence of animus. The Second Circuit has already rejected the argument that Mayor De Blasio's and Governor Hochul's statements reflect animus. Kane, 19 F.4th at 165 ("[T]hese statements reflect nothing more than the Mayor's personal belief that religious accommodations will be rare, as well as general support for religious principles that [he] believes guide community members to care for one another by receiving the COVID-19 vaccine.") (internal quotation marks and citation omitted); We The Patriots, 17 F.4th at 283 ("Governor Hochul's expression of her own religious belief as a moral imperative to become vaccinated cannot reasonably be understood to imply an intent on the part of the State to target those with religious beliefs contrary to hers; otherwise, politicians' frequent use of religious rhetoric to support their positions would render many government actions non-neutral . . . ."). Similarly, Mayor Adams's statements committing to keeping schools open reflect a policy decision, not animus towards any religious group. Moreover, statements made by DOE officials in applying the overturned UFT Award standards have no

bearing on the current standards, which are applied by a different panel using different criteria.

### b.   The Mandate Is Generally Applicable

Plaintiffs' arguments that the Vaccine Mandate is not generally applicable again rely on arguments that the Second Circuit already rejected.   Plaintiffs ask us to reconsider the Second Circuit's conclusion in light of the number of vaccination mandates the City has imposed and the fact that the Mayor has carved out certain exceptions to the private employer vaccination mandate (a mandate not at issue in this case) through Emergency Executive Order 62 ("EEO 62").   Opp. at 7-8.   The number of vaccination mandates is plainly irrelevant.   At most, the numerous mandates demonstrate the deep concern of the City to stem the coronavirus pandemic.   As to the second point, plaintiffs' counsel seem to have forgotten that, as they conceded at oral argument before the Second Circuit on the initial preliminary injunction motions, "a law can be generally applicable when, as here, it applies to an entire class of people."   Kane, 19 F.4th at 166. The Vaccine Mandate applies to the class of people who work in the New York City public schools.   The fact that it does not apply to professional athletes is of no significance here.   Indeed, if a distinction were even needed, it is obvious that New Yorkers may choose whether to attend a sporting event with unvaccinated athletes and accept whatever risk those athletes pose.   In

contrast, school attendance is not a similar choice, and the risk posed by unvaccinated teachers is obvious.[15]  Further, plaintiffs' argument that these policies demonstrate that strict scrutiny is required here because the polices "single out secular but not religious activities for favored treatment," Opp. at 9, is confusing and false.  Working in a public school is not a religious activity.  See U.S. CONST., amend. I.

Finally, plaintiffs argue that because the DOE provides a process for applying for religious exemptions, strict scrutiny must apply because the Citywide Panel considers each request for a religious exemption individually.  In support of this position, plaintiffs rely on the Supreme Court's holding in Fulton v. City of Philadelphia that "[t]he creation of a formal mechanism for granting exceptions renders a policy not generally applicable . . . because it invites the government to decide which reasons for not complying with the policy are worthy of solicitude[.]"  141 S. Ct. 1868 at 1879 (quotation marks, citation, and alterations omitted); Opp. at 8.  This position does not withstand cursory analysis.  In rejecting a similar argument that the Supreme Court's decision in Fulton required strict scrutiny for every religious

---

[15]    The Second Circuit has already rejected plaintiffs' former argument about an exempt group (emergency responders), finding that "[v]iewed through the lens of the City's asserted interest in stemming the spread of COVID-19, these groups are not comparable to the categories of people that the Mandate embraces.  While the exempt groups do not come into prolonged daily contact with large groups of students (most of whom are unvaccinated), the covered groups (for example, teachers) inevitably do."  Kane, 19 F.4th at 166.

SPA-25

exception, a recent decision noted that "such an interpretation would create a perverse incentive for government entities to provide no religious exemption process in order to avoid strict scrutiny." Ferrelli v. Unified Ct. Sys., No. 22 Civ. 0068 (LEK) (CFH), 2022 WL 673863, at *7 (N.D.N.Y. Mar. 7, 2022). Here, the City's exemptions were provided in accordance with Title VII, which requires employers to offer reasonable religious accommodations in certain circumstances, as the Second Circuit provided in its order requiring the City to establish the Citywide Panel.[16] Kane, 19 F.4th at 175. Indeed, as discussed infra, the record shows that the City only inquired as to whether each plaintiff's belief was sincere, and where it determined it was, then proceeded to determine if a reasonable accommodation could be provided. Further, we remind plaintiffs that the government faces different burdens when it, as here, acts as an employer as opposed to a lawmaker. Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 598 (2008) ("We have long held the view that there is a crucial

---

[16] Plaintiffs also cite to Bear Creek Bible Church v. Equal Emp. Opportunity Comm'n, 571 F. Supp. 3d 571, 613 (N.D. Tex. 2021), which is currently on appeal, for the proposition that "[b]ecause Title VII is not a generally applicable due to the existence of individualized exemptions, the Court finds that strict scrutiny applies." Id.; Opp. at 11. Bear Creek is an outlier case. Title VII, which was passed in 1964, has been routinely analyzed and applied by courts for over half a century. Moreover, the Second Circuit and Supreme Court do not apply strict scrutiny in considering Title VII claims. See e.g., Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68 (1986) ("We find no basis in either [Title VII] or its legislative history for requiring an employer to choose any particular reasonable accommodation."); Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002) ("Nevertheless, to avoid Title VII liability, the employer need not offer the accommodation the employee prefers. Instead, when any reasonable accommodation is provided, the statutory inquiry ends.").

SPA-26

difference, with respect to constitutional analysis, between the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage [its] internal operation.") (internal quotation marks and citation omitted).[17]

Similarly, we also reject plaintiffs' argument that because they have articulated a "hybrid rights" claim, strict scrutiny applies. The Second Circuit has repeatedly refused to apply strict scrutiny merely because plaintiffs claim a hybrid rights violation, reasoning that "[t]he allegation that a state action that regulates public conduct infringes more than one of a public employee's constitutional rights does not warrant more heightened scrutiny than each claim would warrant when viewed separately." Knight v. Connecticut Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001); see also Leebaert v. Harrington, 332 F.3d 134, 144 (2d Cir. 2003) ("[A]t least until the Supreme Court holds that legal standards under the Free Exercise Clause vary depending on whether other constitutional rights are implicated, we will not use a stricter legal standard to evaluate hybrid claims.") (internal

---

[17]   Plaintiffs claim in a footnote that Engquist is not applicable because the Mandate is a regulatory action, "extending beyond government employees and imposing requirements on patrons and private sector employees." Opp. at 21 n. 8.  Plaintiffs, however, are employees of the DOE and do not have standing to challenge the aspects of the Vaccine Mandate that apply to contractors or visitors to public schools.

quotation marks and citation omitted).  This precedent binds this
Court.

Thus, we find that rational basis review applies.[18]  In this
context, plaintiffs claim that the City and DOE have no rational
basis for the Mandate because vaccines cannot completely prevent
the spread of COVID-19, and because other groups, like performers,
are not required to be vaccinated.  This argument is not
persuasive.  The DOE clearly explained that "a system of
vaccination for individuals working in school settings, including
DOE buildings and charter school buildings, will potentially save
lives, protect public health, and promote public safety."  Vaccine
Mandate at 2.  This is an articulated rational, and indeed,
compelling basis.  See Kane, 19 F.4th at 172 ("[t]he Vaccine
Mandate . . . is designed to further the compelling objective of
permitting schools fully to reopen[.]"); Roman Cath. Diocese of
Brooklyn, 141 S. Ct. at 67 ("Stemming the spread of COVID-19 is
unquestionably a compelling interest . . . .").[19]

---

[18]    Plaintiffs argue that the court cannot deviate from strict scrutiny simply
because the case involves public health.  Opp. at 18-19.  We agree.  But
plaintiffs are not correct that strict scrutiny must apply to an immunization
mandate.  As the Second Circuit recently stated, "no court appears ever to have
held that Jacobson requires that strict scrutiny be applied to immunization
mandates. To be sure, courts have consistently rejected substantive due process
challenges to vaccination requirements without applying strict scrutiny."  Goe
v. Zucker, No. 21-0537-CV, 2022 WL 3007919, at *8 (2d Cir. July 29, 2022)
(citations omitted).
[19]    Plaintiffs object that the vaccines are ineffective and that their
"natural immunity" from having contracted the coronavirus would protect them
equally as well as receiving a federally approved and tested vaccine.  We
consider the facts set forth in the Mandate as an explanation of the decision-
making of the City and DOE.  See Goe, 2022 WL 3007919, at *5 ("[T]o the extent
that the district court relied on facts from the extrinsic materials that were

27

SPA-28

Because the City had a rational basis for mandating vaccinations, namely, in order to allow schools to continue in person safely, plaintiffs' Free Exercise Claim fails.

**B. Establishment Clause**

Plaintiffs claim that the Vaccine Mandate also violates the Establishment Clause because it creates a denominational preference, in that certain "unorthodox religious denominations" are more burdened than mainstream denominations.[20]  Opp. at 15. This is nothing more than a repackaging of plaintiffs' free exercise claims.  Plaintiffs point to no case law requiring that government action impact all religions equally.  Indeed, the Supreme Court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate.  On the contrary, the record of more than a century of our free exercise jurisprudence contradicts that proposition."  Smith, 494 U.S. at 878-79.[21]

---

in dispute, it did not rule on the factual accuracy of those materials; instead, it cited those materials to explain the decision-making of state authorities."). Even if plaintiffs' claims regarding "natural immunity" were true, they would not be significant as many of the plaintiffs do not allege that they have ever contracted the coronavirus or have any "natural immunity."

[20]   Plaintiffs also mischaracterize the statements of City and State officials to claim that "the government openly stated that their purpose was to target certain religious denominations for discriminatory treatment in implementing the Mandate against religious objectors."  Opp. at 15 (emphasis in original). For the reasons stated above, see supra at pp. 20-22, this argument fails.

[21]   Plaintiffs' citations to the amended consolidated complaint for the proposition that the DOE is still applying the standards set forth in the UFT Award are unavailing.  See Opp. at 15 (citing ACC 102 ¶ 808, ¶¶ 134-145). Paragraph 808 states a legal conclusion unrelated to the Establishment Clause claim: "The DOE violates the Free Exercise Clause every time it applies the

Moreover, the Supreme Court's recent decision <u>Kennedy v.
Bremerton Sch. Dist.</u> instructs courts "that the Establishment
Clause must be interpreted by reference to historical practices
and understandings." 142 S. Ct. 2407, 2428 (2022) (internal
quotation marks and citation omitted). We note that there is a
long history of vaccination requirements in this country and in
this Circuit. <u>See, e.g.</u>, <u>Jacobson v. Commonwealth of
Massachusetts</u>, 197 U.S. 11, 38 (1905) (upholding smallpox
vaccination mandate); <u>see also</u> <u>Prince v. Massachusetts</u>, 321 U.S.
158, 166-67 (1944) ("[A parent] cannot claim freedom from
compulsory vaccination for the child more than for himself on
religious grounds. The right to practice religion freely does not
include liberty to expose the community or the child to
communicable disease . . . ."); <u>Phillips v. City of New York</u>, 775
F.3d 538, 543 (2d Cir. 2015) (per curiam) (holding that "New York
could constitutionally require that all children be vaccinated in

---

terms of the Exemption Standards to deny an individual request for religious
exemption."). "Even under the liberal pleading standard of Federal Rule of Civil
Procedure 8, courts need not credit conclusory allegations, or legal conclusions
without factual allegations." <u>Glob. View Ltd. Venture Cap. v. Great Cent. Basin
Expl., L.L.C.</u>, 288 F. Supp. 2d 482, 484 (S.D.N.Y. 2003). Plaintiffs'
allegations in paragraphs 134-45 similarly either recite legal conclusions or
conclusory allegations (e.g., ¶¶ 140, 144), do not support the proposition
plaintiffs cite them for (e.g., ¶ 139), or do not refer to process applied to
plaintiffs' requests, but to the process applied to the requests of other
individuals (e.g., ¶ 137-38). Plaintiffs lack standing to challenge procedures
that do not apply to them. <u>See Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560,
112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (holding the "irreducible
constitutional minimum of standing" requires that a plaintiff must have suffered
an "injury in fact.").

order to attend public school" and that "New York law goes beyond
what the Constitution requires by allowing an exemption for parents
with genuine and sincere religious beliefs").

### C. Equal Protection

Similarly, plaintiffs claim that the Vaccine Mandate violates
the equal protection clause because the mandate is "facially
discriminatory" and impacts unorthodox religious minorities
disproportionately. Opp. at 19-21. As we have already stated,
the Mandate is facially neutral and generally applicable.
Moreover, the fact that certain individuals have religious
objections to the Mandate does not, contrary to plaintiffs'
opposition brief, provide plaintiffs with a "per se victory", id.
at 19-20. "[I]t is axiomatic that [to establish an equal
protection violation] a plaintiff must allege that similarly
situated persons have been treated differently." Gagliardi v.
Village of Pawling, 18 F.3d 188, 193 (2d Cir. 1994). Plaintiffs
point to no similarly situated persons who have been treated
differently - indeed, they do not point to any DOE employee who
has been granted a religious exemption to the Vaccine Mandate and
been permitted to work in person. Since there is no claim of
differential treatment, plaintiffs' equal protection claim fails.

SPA-31

**D. Due Process**

Plaintiffs also claim that their substantive and procedural due process rights were violated by the Vaccine Mandate.  Both arguments fail.

### 1. Substantive Due Process

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). To analyze a claim under substantive due process, courts perform a two-step analysis. Hurd v. Fredenburgh, 984 F.3d 1075, 1087-89 (2d Cir. 2021).

"The first step in substantive due process analysis is to identify the constitutional right at stake." Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995). Here, plaintiffs cite to the "basic, and sacred, natural right to control one's own body, and care for it as one best sees fit, in accordance with one's creed and religious beliefs, as well as one's best judgment in independent consultation with one's doctor." Opp. at 17.[22] But "[b]oth [the Second Circuit] and the Supreme Court have consistently recognized that the Constitution embodies no

---

[22]    The Supreme Court's recent decision in Dobbs v. Jackson Women's Health Org., 142 S. Ct. 2228 (2022) makes clear that to the extent this right exists, it is not absolute.

31

fundamental right that in and of itself would render vaccine
requirements imposed in the public interest, in the face of a
public health emergency, unconstitutional." We The Patriots USA,
17 F.4th at 293; id. at n. 35 ("This Court cannot find an overriding
privacy right when doing so would conflict with Jacobson [which]
for over 100 years [] has stood firmly for the proposition that
the urgent public health needs of the community can outweigh the
rights of an individual to refuse vaccination."). Moreover, the
Second Circuit has also held that the "[p]laintiffs are not
required [by the Vaccine Mandate] to perform or abstain from any
action that violates their religious beliefs." Kane, 19 F.4th at
172; id. at 171 ("The City is not threatening to vaccinate
Plaintiffs against their will and despite their religious
beliefs[.]"). Indeed, all but one plaintiff remain unvaccinated.[23]

Moreover, plaintiffs have no constitutional right to work
in person with children in the New York City public schools. See
Maniscalco, 563 F. Supp. 3d at 39 (holding no fundamental
constitutional right is infringed by the Vaccine Mandate because,
inter alia, "plaintiffs may pursue teaching or paraprofessional
jobs at private schools in New York City, public and private
schools outside of New York City, daycares or early childhood

---

[23]   Plaintiff Solon appears to have chosen to be vaccinated. See ECF No. 166
¶ 9.

SPA-33

education centers, tutoring centers, adult or continuing education centers, virtual institutions, or within home settings").

Even if a fundamental right were at issue, plaintiffs' arguments fail at the second step of the analysis.  At the second step, plaintiffs "must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" such that the Due Process Clause "would not countenance it even were it accompanied by full procedural protection." Hurd, 984 F.3d at 1087 (internal quotation marks and citation omitted).  As discussed, supra, there is a long history of mandatory vaccination laws in this country.  As the Maniscalo court found, "Requiring that DOE employees take a dose of ivermectin as a condition of employment might qualify as 'a plain, palpable invasion' of such rights, not having any real relation to the public health crisis.  However, mandating a vaccine approved by the FDA does not." Maniscalco, 563 F. Supp. 3d at 39.[24]

---

[24]    Plaintiffs assert that the COVID-19 vaccines available in New York City are "experimental," and that this disputed issue of fact precludes a motion to dismiss.  Opp. at 25-27.  While at one time, the COVID-19 vaccines were only authorized for emergency use, that is no longer the case, and as explained above, the Vaccine Mandate was only promulgated after the FDA had fully approved a COVID-19 vaccine.  The Court takes judicial notice of the fact that both the Pfizer-BioNTech (COMIRNATY) COVID-19 vaccine and the Moderna (Spikevax) COVID-19 vaccine have been fully approved by the FDA for use in people 16 years and older and found by the FDA to meet high standards for safety, effectiveness, and manufacturing quality.  See Developing COVID-19 Vaccines, Centers for Disease Control,(July 20, 2022), https://www.cdc.gov/coronavirus/2019-ncov/va ccines/distributing/steps-ensure-safety.html?s_cid=11700:covid%20vaccine%20fd a%20approval:sem.ga:p:RG:GM:gen:PTN:FY22 (stating the "FDA has granted full approval for Pfizer-BioNTech (COMIRNATY) COVID-19 Vaccine for people ages 16 years and older and for Moderna (Spikevax) COVID-19 Vaccine for people ages 18 years and older . . . . These vaccines were found to meet the high standards for safety, effectiveness, and manufacturing quality FDA requires of an approved

SPA-34

Accordingly, plaintiffs have not stated a claim for substantive due process.

### 2. Procedural Due Process

Plaintiffs have also failed to state a claim for violations of procedural due process.  "In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest." White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1061-62 (2d Cir. 1993).  For the reasons already set out, there is no protected liberty interest.  Further, plaintiffs do not dispute that teachers who do not have a tenure do not have a property interest in their employment.  See Biehner v. City of New York, No. 19 Civ. 9646 (JGK), 2021 WL 878476, at *4 (S.D.N.Y. Mar. 9, 2021).  As such, only plaintiffs Kane, Smith, Keil, Delgado, and Strk even have a property interest at stake.  Am. Compl. ¶¶ 227, 445, 495, 540, 574.

Moreover, the Second Circuit has "held on several occasions that there is no due process violation where, as here, pre-

---

product.").  Further, the Court takes judicial notice of the fact that these vaccines are widely available in New York City.  See COVID-19 Vaccine Locations, Vaccines.gov, https://www.vaccines.gov/results/?zipcode=10007&medicationGuids= 6e9b0945-9b98-4df4-8d10-c42f526eed14,cd62a2bb-1e1e-4252-b441-68cf1fe734e9,784 db609-dc1f-45a5-bad6-db02e79d44f&medicationKeys=pfizer_comirnaty_covid_19_va ccine,moderna_spikevax_covid_19_vaccine,j%26j_janssen_covid_19_vaccine&appoin tments=true (displaying numerous locations where fully approved vaccines are available)(last visited Aug. 25, 2022).  As such, the Court rejects the plaintiffs' arguments premised on the assertion that the vaccines fully approved by the FDA are not available in New York.  See Opp. at 25-27 (arguing that the Mandate is unconstitutional because the COVID-19 vaccines available in New York are only approved under an Emergency Use Authorization).

deprivation notice is provided and the deprivation at issue can be
fully remedied through the grievance procedures provided for in a
collective bargaining agreement."  See Adams v. Suozzi, 517 F.3d
124, 128 (2d Cir. 2008).  "Pre-deprivation processes need not be
elaborate, and the Constitution mandates only that such process
include, at a minimum, notice and the opportunity to respond."
Garland v. New York City Fire Dep't, No. 21 Civ. 6586 (KAM) (CLP),
2021 WL 5771687, at *7 (E.D.N.Y. Dec. 6, 2021).  Here, that notice
and opportunity were plainly given.  The amended consolidated
complaint describes in detail how plaintiffs received notice of
the Citywide Panel and the standards it would apply, that they had
an opportunity to submit materials in support of their
accommodation requests to the Citywide Panel, and the Citywide
Panel issued written explanations for each of the named plaintiffs,
clearly spelling out how it reached its conclusions.[25]  See, e.g.,
ACC ¶¶ 235-36, 263-65, 271, 292, 293, 297-98, 314-20, 328, 335,
338, 362, 367-68, 382-83, 408-09, 426-28, 483-88, 498, 500-12,
522-36, 553-69, 582-92, 613-26, 669, 680, 693-95, 726-28, 750,
769-73, 778-79; see also ECF No. 122-2 (setting forth the Citywide
Panel's reasoning in reaching its decision regarding each
plaintiff).  Moreover, plaintiffs have the ability to challenge

_____

[25]   This Court, having found that strict scrutiny does not apply in this case,
finds plaintiffs' assertion that the Citywide Panel had to provide plaintiffs
with a response that could survive strict scrutiny in order to avoid violating
plaintiffs' constitutional rights, Opp. at 23-24, without foundation.

**SPA-36**

any decision terminating their employment through their collective bargaining agreement, or through an Article 78 proceeding.[26] Sindone v. Kelly, 439 F. Supp. 2d 268, 278 (S.D.N.Y. 2006) ("[T]he Second Circuit has gone to considerable lengths to recognize the adequacy of Article 78 procedures as affording adequate safeguards to satisfy federal procedural due process standards.").

### E.   Plaintiffs Have Not Pled As-Applied Claims

Further, the Mandate is not unconstitutional as applied to the plaintiffs.  As a threshold matter, two of plaintiffs (Ruiz-Toro and Castro) have had their requests for religious accommodation granted.[27]  ACC ¶¶ 271, 488.  While these plaintiffs may have preferred a different accommodation, "where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end.  The employer need not further show that each of the employee's alternative accommodations would result in undue hardship."  Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68 (1986); see also We The Patriots USA, 17 F.4th at 292 ("Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated.").

---

[26]    Indeed, plaintiff Giammarino appears to have filed an Article 78 proceeding.  See Giammarino v. Board of Education et al., Index No. 160829/2021 (N.Y. Sup. Ct., N.Y. Cty. Jan. 18, 2021).
[27]    Specifically, these plaintiffs were given permission to work remotely, but cannot enter DOE school buildings.  ACC ¶¶ 281, 488-89.

SPA-37

Likewise, plaintiffs Grimando, Giammarino, LoParrino, Weber, and Smith did not avail themselves of the process for seeking a religious exemption set out by the DOE, and so have not stated a due process claim.[28]  "Plaintiffs are not entitled to circumvent established due process protections and then claim they were never afforded such protections."  Capul v. City of N.Y., No. 19 Civ. 4313 (KPF), 2020 WL 2748274, at *13 (S.D.N.Y. May 27, 2020), aff'd 832 F. App'x. 766 (2d Cir. 2021); see also Garland, 574 F. Supp. 3d at 130 (finding no due process violation where plaintiffs chose not to participate in the process of requesting vaccination waivers by the deadline).  As such, these plaintiffs have failed to state a claim.[29]

The remainder of the plaintiffs had their claims reviewed by the Citywide Panel.  While plaintiffs have pled that the Citywide Panel just "rubber-stamped" the plaintiffs' previous denials in "bad faith," ACC ¶¶ 140, 835, these assertions are insufficient to state a claim.  Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006) (holding that in opposing a motion to dismiss, "bald assertions and conclusions of law will not suffice").  Moreover, these conclusory allegations are

---

[28]   Specifically, plaintiff Grimando did not submit a timely religious exemption, although she did submit a timely medical exemption.  ACC ¶¶ 668-69.  Plaintiffs Giammarino and LoParrino opted not to submit a request for an exemption through the SOLAS portal, as required, but instead sent separate letters to DOE.  Id. ¶¶ 733-34, 769.  Plaintiff Weber chose not to appeal his denial of a religious exemption.  Id. ¶ 652.

[29]   Plaintiff Solon has apparently decided to be vaccinated, and as such, her claims are moot.  See ECF No. 166 ¶ 9.

contradicted by the fact that the Citywide Panel reversed the arbitrators' denial of plaintiff Castro's religious accommodation. ACC ¶¶ 269, 271.

Further, while plaintiffs criticize the process by which the Citywide Panel evaluated their applications as improperly disregarding their religious beliefs, only one of the Citywide Panel's decisions turned on whether the plaintiffs had a sincere religious belief.[30]  In all other circumstances in which it denied a plaintiff's request for a religious accommodation, the Citywide Panel found that the plaintiff's request presented an "undue hardship" because the plaintiff "is a classroom teacher who, under the present circumstances, cannot physically be in the classroom while unvaccinated without presenting a risk to the vulnerable and still primarily unvaccinated student population."[31] See, e.g., ACC ¶¶ 158, 512 (denying Keil's appeal), 536 (denying De Luca's appeal), 569 (denying Delgado's appeal), 592 (denying Strk's appeal), 626 (denying Buzaglo's appeal), see also ECF No. 122-2 (setting forth Citywide Panel's reasoning regarding each

---

[30]    Plaintiff Clark's appeal was denied because the panel found that her decision to not receive a vaccination was not based on her religious belief, but rather, on non-religious sources. ECF No. 122-2 at 2.  This is entirely proper – under Title VII, an employer may inquire into whether an employee has "a genuine religious practice that conflicts with a requirement of employment." Bind v. City of New York, No. 08 Civ. 11105 (RJH), 2011 WL 4542897, at *10 (S.D.N.Y. Sept. 30, 2011) (holding "[a]n employer asked to grant a religious accommodation is permitted to examine whether the employee's beliefs regarding the accommodation are sincerely held" and collecting cases).

[31]    Plaintiffs' argument that they can work remotely as they did when the City's schools were remote fails, because the City and DOE have decided to return to in-person learning.

plaintiff's appeal). These findings satisfied the requirements of Title VII.   Under Title VII "when an employee has a genuine religious practice that conflicts with a requirement of employment, his or her employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002).   "An accommodation is said to cause an undue hardship whenever it results in 'more than a de minimis cost' to the employer." Baker v. The Home Depot, 445 F.3d 541, 548 (2d Cir. 2006) (quoting Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977)).   Plaintiffs' inability to teach their students safely in person presents more than a de minimis cost.

Further, we note that the Second Circuit and other courts in have repeatedly found that vaccination against COVID-19 is a proper condition of employment.   See, e.g., We the Patriots, 17 F.4d at 294 (holding vaccination was a condition of employment for healthcare workers); Garland, 574 F. Supp. 3d at 129 (concluding that vaccination was a condition of employment under a Health Commissioner Order applicable to City employees); Broecker v. New York Dept. of Educ., No. 21 Civ. 6387 (KAM) (LRM), 2022 WL 426113, at *8 (E.D.N.Y. Feb. 11, 2022) (holding vaccination was a condition of employment for NYC DOE employees); O'Reilly v. The Bd. of Educ. of the City School Dist. of the City of New York, No. 161040/2021,

2022 WL 180957, at *3 (N.Y. Sup. Ct., N.Y. Cty. Jan. 20, 2022)
(same).  Thus, "[t]he termination of NYC DOE employees who failed
to comply with the COVID-19 vaccination condition of employment is
not disciplinary. Rather, [p]laintiffs' separation is [be]cause of
their failure to avail themselves of existing processes or comply
with a lawful job condition."  Broecker, 2022 WL 426113, at *11.
As the DOE has provided notice and processes that comport with
Constitutional due process before and after termination, see supra
pp. 35-36, no additional process is required.  Broecker, 2022 WL
426113, at *11.

> ### F.   The State Law Claims Are Dismissed for Lack of Supplemental Jurisdiction

As there are no remaining federal claims, this Court declines
to exercise supplemental jurisdiction over the state law claims.[32]
Pursuant to 28 U.S.C. § 1367(c)(3), a district court "may decline
to exercise supplemental jurisdiction over a claim" where "the
district court has dismissed all claims over which it has original
jurisdiction."  28 U.S.C. § 1367(c)(3); see also Carnegie-Mellon
Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual
case in which all federal-law claims are eliminated before trial,
the balance of factors to be considered under the pendent

---

[32]    While plaintiffs have also pled a claim for a violation of Section 1983,
"Section 1983 does not create any independent substantive right, but rather is
a vehicle to 'redress . . . the deprivation of [federal] rights established
elsewhere.'" Laface v. Eastern Suffolk BOCES, 349 F. Supp. 3d 126, 153 (E.D.N.Y.
2018) (quoting Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999)).  As such,
this claim is dismissed.

SPA-41

jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."). We therefore do not address the arguments regarding state law claims.

**G. The Preliminary Injunction is Denied**

Plaintiffs have also moved again for a preliminary injunction. "When a preliminary injunction will affect government action taken in the public interest pursuant to a statute or regulatory scheme, the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." Kane, 19 F.4th at 163. As Judge Caproni and the Second Circuit have held, having found no violation of a Constitutional right, "the only alleged harm is economic, and it can be remedied by money damages, were the [p]laintiffs to prevail on the merits of the litigation." Kane v. de Blasio, 575 F. Supp. 3d 435, 441 (S.D.N.Y. 2021), aff'd sub nom. Keil v. City of New York, No. 21-3043-CV, 2022 WL 619694 (2d Cir. Mar. 3, 2022). Moreover, for the foregoing reasons, plaintiffs have not stated a claim and therefore have not demonstrated a likelihood of success on the merits. Finally, plaintiffs have not demonstrated that the public interest weighs in their favor. There is a strong public interest in vaccination to support the City's schools safe reopening and to allow the children who attend daily to learn with

SPA-42

as little risk as possible to them and their families.  As such, the preliminary injunction is denied.[33]

## IV.  Conclusion

For the foregoing reasons, this Court denies the motion for a preliminary injunction and dismisses plaintiffs' complaint in its entirety with prejudice.  The Clerk of Court is respectfully directed to terminate the open motions and close this case.

**SO ORDERED.**

Dated:    New York, New York
          August 26, 2022

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[33]    Plaintiffs' request to supplement the preliminary injunction record with the May 24, 2022 deposition transcript of Eric Eichenholtz, ECF No. 167, is denied because the request is procedurally improper and because consideration of the transcript would not alter our decision.  First, we note that plaintiffs have already filed the transcript, despite the fact that they are purporting to request leave to do so.  This filing violates the Individual Practices of Judge Caproni, who was presiding at the time the transcript was filed, which explicitly state "[t]he Court will not search through the record in support of facts relevant to a party's claim or defense."  Individual Practices in Civil Cases of Judge Caproni, 4.H.ii.e.  Second, as noted supra at pp. 24-25, we find plaintiffs' argument that the individual consideration that plaintiffs asked for and were granted by the Citywide Panel triggered strict scrutiny under Fulton unpersuasive.  But even if we accepted plaintiffs' argument, it would not alter the result, as we would still deny the preliminary injunction because plaintiffs have failed to meet each and every prong of the preliminary injunction analysis.

42

SPA-43

UNITED STATES DISTRICT COURT         Civil Conference
EASTERN DISTRICT OF NEW YORK      Minute Order

Before: Diane Gujarati                 Date:    <u>8/11/2022</u>
        U.S. District Judge             Time:    <u>3:00 p.m.</u>

Court Deputy: <u>Kelly Almonte</u>
Court Reporter/Tape No: <u>Stacy Mace</u>

*New Yorkers For Religious Liberty, Inc. et al v. The City Of New York et al*
22-CV-0752 (DG)(VMS)

Type of Conference: <u>Oral Argument</u>

Appearances:  Plaintiff      <u>Barry Black, Sarah Child</u>

              Defendants   <u>Lora Minicucci</u>

Summary Minute Order for proceedings held before Judge Diane Gujarati: Oral argument on Plaintiffs' [85] Motion for a Preliminary Injunction held before Judge Diane Gujarati on August 11, 2022.  Barry Black and Sarah Elizabeth Child appeared on behalf of Plaintiffs.  Lora Minicucci appeared on behalf of the City Defendants.  The parties were heard on the motion.  For the reasons stated on the record, Plaintiffs' [85] Motion for a Preliminary Injunction was denied.  The parties were directed to Magistrate Judge Vera M. Scanlon for discovery management.

SO ORDERED.

*/s/ Diane Gujarati*
DIANE GUJARATI
United States District Judge

SPA-44

U.S. Const. amend. I

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.