

February 7, 2023

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for Second Circuit
40 Foley Square
New York, NY 20007

> RE: *New Yorkers for Religious Liberty v. The City of New York*
> Case No. 22-1801
> Request to address mootness given City's decision to
> end its vaccine mandate two days before oral argument

Dear Ms. O'Hagan Wolfe:

I write in response to the Court's February 6, 2023 Order directing the parties to address "which issues in these consolidated actions, if any, have been mooted, and which issues subsist" as a result of "the City of New York's announcement"—two days before oral argument—"that it will discontinue its vaccine mandate for municipal workers." 2/6/2023 Order. As explained below, the City's 11th-hour action does not moot any issues in this case.

First, the *Kane* and *Keil* Plaintiffs' appeals from the district court's improper dismissal of their cases are not moot because Plaintiffs have claims for damages in the form of lost compensation, lost healthcare coverage, and emotional and consequential damages resulting from the City's violation of Plaintiffs' constitutional rights. By awarding Plaintiffs these damages as compensation for their losses, the courts can provide Plaintiffs with "effectual relief," which means the case is not moot. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021).

As explained in Plaintiffs' merits briefs, Defendants have violated Plaintiffs' rights in multiple ways. The starting point is this Court's previous decision in these cases, *Kane v. De Blasio*, 19 F.4th 152 (2d Cir. 2021) (per curiam). There, this Court held that Plaintiffs were likely to succeed on their Free Exercise challenge because the Department of Education ("DOE") adopted and enforced a facially unconstitutional religious exemption policy ("Accommodation Standards") *Id.* at 167–69. This Court held that the Accommodation Standards were "not neutral" because the policy discriminated against unorthodox religious beliefs, granting or denying religious accommodations based on whether a leader of a particular applicant's denomination had spoken publicly in favor of the vaccine. *Id.* at 168. And the Court held that the Accommodation Standards "were not generally applicable" because the arbitrators "had substantial discretion over whether to grant those requests." *Id.* at 169. This policy failed strict scrutiny because the City's criteria were "not narrowly tailored to serve the government's interest in preventing the spread of COVID-19." *Id.*

After this Court remanded, the City not only continued to apply these Stricken Standards, it *expanded* them—to most City departments. The City argues that maintaining a facially discriminatory policy is acceptable, because it offered a separate review process for applicants who are not Christian Scientists or members of another denomination that has no recognized leader who has spoken publicly in favor of the vaccine. But those individuals had to overcome an additional hurdle for an exemption: they had to persuade the Citywide Panel that granting them a religious accommodation would not be an "undue hardship" to the City. App.273–77, 299. Maintaining a "separate but equal" policy for different religions is not constitutional, and here, the policies are not even equal. Those accepted under the discriminatory criteria receive an automatic accommodation, whereas the Citywide Panel denied all DOE applicants except one on the unsubstantiated basis of "undue hardship" (among other reasons). The record also shows that the Citywide Panel continued many of the discriminatory policies, routinely denying those with religious beliefs derived from personal prayer rather than official church orthodoxy. As in *Kane*, this two-track approach was not "neutral" and results in strict scrutiny, which the City cannot satisfy.

In addition, the Citywide Panel's architect, Mr. Eichenholtz, conceded that Panel members made "individualized" determinations, App.474, reaching their own "reasonable conclusion[s]," App.440, based on "no" objective criteria, App.455. That discretion explains why three-member panels sometimes could not agree as to the proper resolution of religious accommodation requests. *E.g.*, App.274 (Heather Clark), 276 (William Castro). As in *Kane*, this discretion means that the City's policy was "not generally applicable" and subjects the City's accommodations policy to strict scrutiny, which the City cannot satisfy.

The district court also improperly dismissed Plaintiffs' Establishment Clause claims. The "clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another," and that the government may "effect no favoritism among sects." *Larson v. Valente*, 456 U.S. 228, 244-246 (1982). By adopting the facially discriminatory Accommodation Standards, Defendants violated this command, expressing denominational preferences, "lend[ing] its power to one or the other side in controversies over religious authority," and "punish[ing] the expression of religious doctrines it believes to be false," also triggering strict scrutiny. *Emp. Div. v. Smith*, 494 U.S. 872, 877 (1990).

Nor was it proper to dismiss Plaintiffs' Equal Protection claims. Plaintiffs asserted a prima facie case of discrimination and provided direct evidence of discrimination in the form of a written policy setting forth discriminatory criteria. Plaintiffs' claims are likely entitled to summary judgment and should certainly at least survive a motion to dismiss. *TWA v. Thurston*, 469 U.S. 111, 121 (1985).

In sum, none of Plaintiffs' merits claims and damages remedies are moot, the *Kane* and *Keil* matters should be reinstated, and all the consolidated matters remanded for merits proceedings.

Second, Plaintiffs have also pled nominal damages as a remedy for the City's constitutional violations. Under *Uzuegbunam*, an award of nominal damages, by itself, redresses a completed injury. 141 S. Ct. at 796. Again, Plaintiffs' constitutional challenges are not mooted by the City's termination of an unconstitutional policy. *Id.* at 797, 802.

Third, Plaintiffs' claims for injunctive relief are not moot. Litigants entitled to emergency injunctive relief remain so if they "remain under a constant threat" that the condition could be reinstated. *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam). In other words, "[t]here is no justification for" dismissing constitutional claims as moot because of a change in Covid-19 policy where "the applicants remain under a constant threat that" the policy may be re-imposed. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (per curiam) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). This danger is particularly acute when judicial proceedings move too slowly to keep up with rapid changes in government policy, as here. *Id.* Plaintiffs "have made the showing needed to obtain relief, and there is no reason why they should bear the risk of suffering further irreparable harm in the event" that the City reimposes an unlawful vaccine mandate. *Id.* at 68–69.

Here, the Mayor has issued over 150 versions of his vaccine mandates, with no checks to his unfettered discretion, and there is nothing to prevent him from readopting a mandate. Since the public interest will not be harmed by injunctive relief, and Plaintiffs have shown they are likely to succeed, the Court should grant them an injunction to protect them from further irreparable harm.

Fourth, Plaintiffs' claims for injunctive relief are not moot because many of them now have an adverse reference in their personnel files that is likely to cause severe, ongoing harm when Plaintiffs re-apply for positions with the City or even for private-sector positions. For example, as discussed at pages 71–72 of Plaintiff's opening brief, Natasha Solon was an Assistant Principal in the Bronx who was wrongfully denied a religious accommodation and suspended by the City without pay on October 4, 2021. While suspended, she applied to over 60 jobs, and though eminently qualified, she barely received a callback, much less an offer. Finally, an interviewer explained that while she would love to hire her, she could not, because the DOE attached a problem code to Solon's file indicating that she was ineligible for work due to "misconduct." This is a code typically attached to former employees who committed serious crimes—like child abuse—and will remain a problem for many Plaintiffs. The courts' power to order the City to remove such ref-

erences from Plaintiffs' file is also "effectual relief" that renders this case not moot. *Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 448 (D. Del. 2006) (plaintiff had standing to seek injunction directing former employer to remove all adverse material from the plaintiff's personnel file).

Fifth, a number of the Plaintiff teachers have recently received notice that their teaching licenses will be revoked by the end of March because they have not been actively teaching on account of the City's unconstitutional policies. It is also not clear how quickly the DOE would be willing to rehire them and place them in a classroom to prevent the licensing revocation. This is an ongoing harm such that this case is not moot. It also demonstrates the need for this Court to issue an expedited decision to prevent further harm to Plaintiffs.

Finally, it is well settled that "voluntary cessation of allegedly illegal conduct … does not make [a] case moot." *R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 106 (2d Cir. 1989) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)), particularly when done "for the deliberate purpose of evading a possible adverse decision by th[e] court." *E.I. Dupont De Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 47 (2d Cir. 2006) (quoting *R.C. Bigelow*, 867 F.2d at 106). When, as here, "abandonment of challenged conduct seems timed to head off an adverse determination on the merits—particularly when supported by … disclaimers only of present intention to resume allegedly unlawful activity—it cannot be said that the possibility of repetition of such activity is merely abstractly conceivable." *R.C. Bigelow*, 867 F.2d at 106–07 (citations omitted). Because "there is more than a 'mere possibility'" that the City may impose a future vaccine mandate without adequate religious accommodations, "and because of the significant public interest involved in having the legality of practices challenged in this case finally settled," this "case is not moot." *Id.* at 107 (citations omitted).

For all these reasons, the City's 11th-hour revocation of its unconstitutional policies does not moot any of the merits or injunctive issues presented for this Court's resolution.

New Yorkers for Religious Liberty
February 7, 2023
Page 6

                Respectfully Submitted,

                */s/ John J. Bursch*
                John J. Bursch
                Counsel for Plaintiffs-Appellants

cc:    All counsel via ECF